Kurt A. Kappes (SBN 146384)
Ashley Farrell Pickett (SBN 271825)
Bryan W. Patton (SBN 294910)
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Email: kappesk@gtlaw.com
farrellpicketta@gtlaw.com
pattonbw@gtlaw.com
TEL:   310-586-7700
FAX:   310-586-7800
Attorneys for Defendant
MAGNIT, LLC F/K/A/PRO UNLIMITED, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGUEZ, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TWITTER, INC. and PRO UNLIMITED, INC., <br><br> Defendants. | CASE NO. 3:22-cv-07222-TLT <br><br> Assigned to The Honorable Trina L. Thompson <br><br> **DEFENDANT MAGNIT, LLC F/K/A PRO UNLIMITED, INC.'S  NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> Date:   March 14, 2023 <br> Time:   2:00 p.m. <br> Dept:   9 |

1 **TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

2       **PLEASE TAKE NOTICE THAT** on March 14, 2023 at 2:00 p.m., or as soon thereafter as the

3 matter may be heard, in Courtroom 9 of the United States District Court, Northern District of California,

4 located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Magnit, LLC f/k/a Pro

5 Unlimited, Inc. (herein, "Magnit") will and hereby does move the Court for an order compelling Plaintiff

6 Francisco Rodriguez to arbitrate the claims in his Complaint on an individual basis and to dismiss the

7 balance of this action, or alternatively strike and/or dismiss Plaintiff's putative class allegations.

8       Good cause exists to compel these claims to arbitration pursuant to the Federal Arbitration Act

9 ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies to workers engaged in interstate commerce. On November

10 17, 2021, Plaintiff signed an "Arbitration Policy and Agreement" in which he expressly agreed in writing

11 to resolve his employment-related claims exclusively in arbitration before the American Arbitration

12 Association ("AAA") on an individual basis, and specifically agreed that the arbitrator shall not have the

13 power or jurisdiction to hear those claims as a class action.

14       This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and

15 Authorities, the Declaration of Rose Arruda, all pleadings in this action, and such other written and oral

16 argument as the Court may entertain on this Motion.

17                       Respectfully submitted,

18 Dated:  January 11, 2023               GREENBERG TRAURIG, LLP

19

20             By    */s/ Ashley Farrell Pickett*_____
                        Ashley Farrell Pickett

21                         Attorneys for Defendant
                        MAGNIT, LLC F/K/A/ PRO UNLIMITED, INC.

22

23

24

25

26

27

28

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................................... 1

III.    THE COURT SHOULD COMPEL PLAINTIFF'S CLAIMS TO INDIVIDUAL
        ARBITRATION UNDER 9 U.S.C. § 2. ..................................................................... 2

        A.      There is a Valid Arbitration Agreement Between the Parties ........................... 3

                1.      The Parties Arbitration Agreement is Governed by the FAA ................ 3
                2.      Plaintiff and Defendant Entered Into a Valid Arbitration Agreement. ................... 3

        B.      The Agreement Requires Arbitration of All of Plaintiff's Claims ..................... 5
        C.      Though It is Not Defendant's Burden to Address Here, Plaintiff in Fact Has No
                Defense to Enforcement of the Arbitration Agreement ...................................... 5

                1.      The Agreement is Not Procedurally Unconscionable ............................. 6
                2.      The Agreement is Not Substantively Unconscionable. ........................... 7

        D.      In Light of the Valid Class Action Waiver, Plaintiff Should Be Compelled to
                Arbitration on an Individual Basis Only, and the Balance of This Action Should
                Be Dismissed ..................................................................................................... 9

IV.     CONCLUSION ....................................................................................................... 10

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ........................................................................................................ 2

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ..................................................................................................... 2, 8

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ..................................................................................... 1, 3

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .......................................................................................... 3

*Epic Sys. Corp. v. Lewis*,
  200 L. Ed. 2d 889 (U.S. 2018) ..................................................................................... 2, 9

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013) ............................................................................................ 5

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) .......................................................................................................... 3

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ........................................................................................................ 1, 3

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) .......................................................................................... 9

*Lacour v. Marshalls of CA, LLC*,
  No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ....................... 10

*Lewis v. UBS Fin. Servs. Inc.*,
  818 F. Supp. 2d 1161 (N.D. Cal. 2011) ............................................................................ 9

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983), *superseded by statute on other grounds* ..................................... 2, 5

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) .......................................................................................... 5

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .......................................................................................... 6

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................................................ 2

*Romo v. Cbre Grp., Inc.*,
  No. 8:18-cv-00237-JLS-KES, 2018 U.S. Dist. LEXIS 173692 (C.D. Cal. Oct. 3, 2018) .................. 10

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
  559 U.S. 662 (2010) .......................................................................................................... 9

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

*U.S. v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) ............................................................................................ 3

**State Cases**

*Armendariz v. Found. Health Psychcare Services, Inc.*,
   24 Cal. 4th 83 (2000) ............................................................................................... 6, 7, 8

*Cronus Invs., Inc. v. Concierge Servs.*,
   35 Cal. 4th 376 (2005) .................................................................................................... 3

*Franco v. Arakelian Enterprises, Inc.*,
   234 Cal. App. 4th 947 (2015), *as modified* (Mar. 11, 2015) ....................................... 9

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
   74 Cal. App. 4th 1105 (1999) ........................................................................................ 6

*Macaulay v. Norlander*,
   12 Cal. App. 4th 1 (1992), *opinion modified* (Jan. 5, 1993) ....................................... 4

*Metters v. Ralphs Grocery Co.*,
   161 Cal. App. 4th 696 (2008) ........................................................................................ 4

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (2012) ................................................................................................... 6

*Roman v. Super. Ct.*,
   172 Cal. App. 4th 1462 (2009) ...................................................................................... 6

*Roman v. Super. Ct.*,
   172 Cal. App. 4th at 1470–71 ....................................................................................... 6

*Stewart v. Preston Pipeline Inc.*,
   134 Cal. App. 4th 1565 (2005) ..................................................................................... 3

**Federal Statutes**

9 U.S.C. § 2 ........................................................................................................................ 3

15 U.S.C. § 7001 ............................................................................................................... 4

15 U.S.C. § 7001(a) .......................................................................................................... 5

**State Statutes**

Cal. Civ. Code § 1633.7(a) ............................................................................................... 5

Cal. Lab. Code § 201 ........................................................................................................ 2

Cal. Lab. Code § 203 ........................................................................................................ 2

Cal. Lab. Code § 227.3 ..................................................................................................... 2

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

The instant motion seeks straightforward mandatory relief. Plaintiff Francisco Rodriguez ("Plaintiff") was formerly an employee of Defendant Magnit, LLC f/k/a Pro Unlimited, Inc. ( hereinafter, "Magnit"). Plaintiff agreed to arbitrate each claim he is asserting in this action on an individual basis via his "Arbitration Policy and Agreement" (the "Agreement"). [*See* Declaration of Rose Arruda ("Arruda Decl."), ¶ 7; Ex. A.] Plaintiff also specifically agreed that the arbitrator shall not have the power or jurisdiction to hear those claims as a class action.

On November 16, 2022, Plaintiff filed a Class Action Complaint against Magnit and Defendant Twitter, Inc. ("Twitter"), alleging violation of the federal WARN Act, the California WARN Act, and various California Labor Code Provisions. Under the Federal Arbitration Act ("FAA"), the Court must compel arbitration where (1) "there is an agreement to arbitrate between the parties" and (2) "the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Both elements are met here.

All of Plaintiff's claims arise out of his employment with Magnit and the services he provided for Magnit's client, Twitter[1]. The Agreement requires Plaintiff to submit those clams to binding, individual arbitration. As such, these claims should be compelled to arbitration under the Federal Arbitration Act ("FAA").

Further, Plaintiff's class allegations—prohibited by the Agreement's valid class waiver, should be dismissed and/or stricken.

**II.      FACTUAL BACKGROUND**

Plaintiff was employed by Magnit and provided services to Magnit's client, Twitter. [Arruda Decl., ¶ 7.]  As part of his onboarding process, Magnit provided Plaintiff with the Agreement and asked him to review and sign the Agreement within 10 days of receipt. [Arruda Decl., Ex. A. at 1.]

The Agreement expressly covers "all claims or causes of action that the Employee may have

---

[1] The Agreement encompasses claims that Plaintiff may have against Magnit "or any of its clients for whom [Plaintiff] performed work." [Arruda Decl., Ex. A § 2.]  This includes any claims Plaintiff may have relating to services he provided to Twitter.

1

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

1  against the Company or any of its clients for whom Employee performed work" including, but not limited

2  to "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the

3  California Labor Code[.]" [*Id.* § 2.]  The Agreement also contains a class action waiver and makes clear

4  that Plaintiff may only arbitrate his claims on an individual basis:

5  > [N]either the Employee nor the Company shall have a right to . . . (d) file or participate in

6  > a representative or collective capacity or as a member of any class of claimants in an action

7  > in a court of law pertaining to any claims encompassed by this Agreement. . . There will

8  > be no right or authority for any dispute to be brought, heard or arbitrated as a class or

9  > collective action, or as a member in any such class or collective proceeding ("Class Action

10 > Waiver").

11 [*Id.* § 4.]

12 On November 16, 2022, and in direct contravention of the Agreement, Plaintiff filed a putative

13 class action in the Northern District of California asserting claims for (i) violation of the federal WARN

14 Act; (ii) violation of the California WARN Act; and (iii) failure to provide all final pay and accrued

15 benefits upon termination in violation of California Labor Code §§ 201, 203, 227.3. [Dkt. 1 at 6-7.]  Each

16 of Plaintiff's claims is premised solely on allegations relating to Plaintiff's termination from Magnit

17 and/or its client, Twitter. [Dkt. 1 ¶¶1-22.]

18 **III.   THE   COURT   SHOULD   COMPEL   PLAINTIFF'S   CLAIMS   TO   INDIVIDUAL**

19 **ARBITRATION UNDER 9 U.S.C. § 2.**

20 Plaintiff's claims must be referred to individual arbitration. The liberal federal policy favoring

21 arbitration agreements creates a strong presumption in favor of enforcement, and "any doubts concerning

22 the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v.*

23 *Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*. "[T]he

24 Arbitration Act requires courts 'rigorously' to 'enforce arbitration' agreements according to their terms,

25 including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under

26 which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 200 L. Ed. 2d 889, 899 (U.S. 2018)

27 (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility LLC v.*

28 *Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

1    In ruling on a motion to compel arbitration, the Court's role is to determine "(1) whether there is

2    an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*

3    *v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537

4    U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the [FAA] requires the court to

5    enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.,*

6    *Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a

7    district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

8    issues as to which an arbitration agreement has been signed." *Id*. (citation omitted).

9    **A.      There is a Valid Arbitration Agreement Between the Parties**.

10                **1.      The Parties Arbitration Agreement is Governed by the FAA.**

11                As an initial matter, the FAA governs the parties' Agreement.  The first step to determining

12    whether or not an arbitration agreement is governed by the FAA is to review the plain language of the

13    arbitration agreement; only if the arbitration agreement is silent on the issue should we examine whether

14    or not the contract involves interstate commerce.  *See, e.g. Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal.

15    4th 376, 394 (2005) (finding that parties may designate the application of the FAA in their arbitration

16    agreement.). Therefore, this Court's analysis can (and should) end after reviewing the plain language of

17    the Agreement as it specifically cites that it is governed by the FAA. [Arruda Decl., Ex. A § 9.]

18                Moreover, even if the Agreement were silent on governing law, the FAA would still apply because

19    the Agreement implicates interstate commerce.  *See* 9 U.S.C. § 2.  The Agreement governs Plaintiff's

20    rendering of services to Magnit's client, Twitter, a platform for internet content reaching individuals

21    across the United States.  *See U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("the Internet is an

22    instrumentality and channel of interstate commerce.").  For this independent reason, the FAA governs the

23    Agreement.

24                **2.      Plaintiff and Defendant Entered Into a Valid Arbitration Agreement.**

25                Whether the parties have agreed to arbitrate is governed by state-law principles of contract

26    formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A party's signature on a

27    contract is a manifestation of assent to its terms. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th

28    1565, 1588–89 (2005) (finding a party's signing a contract manifests assent to its terms, and that a party's

3

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

1    failure to actually read the contract's provisions is not a defense to enforcement of its terms); *Macaulay*

2    *v. Norlander*, 12 Cal. App. 4th 1, 6 (1992), *opinion modified* (Jan. 5, 1993) (finding respondents "were

3    bound by the provisions of the client agreement regardless of whether they read it or were aware of the

4    arbitration clause when they signed the document").

5        Here, as shown, Plaintiff agreed to the terms and conditions of the Agreement, including the

6    binding arbitration provision and class action waiver. [Arruda Decl., Ex. A.] The Agreement was clear on

7    its face—titled "**ARBITRATION POLICY AND AGREEMENT**"—and the very first words of the

8    Agreement are: "**READ THIS AGREEMENT CAREFULLY BECAUSE YOUR SIGNATURE**

9    **BELOW CONFIRMS THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE**

10    **TERMS OF THIS ARBITRATION AGREEMENT**." [*Id.* at 1] Specifically, Plaintiff electronically

11    signed the Agreement which, just prior to his signature, again required Plaintiff to confirm his

12    understanding of the Agreement: "I, the undersigned employee, acknowledge that I have received a copy

13    of PRO Unlimited, Inc.'s Arbitration Policy and Agreement, that I have been provided an opportunity to

14    read the Agreement, and that I agree to its terms." [*Id.* at 5.]

15        By electronically signing the Agreement, Plaintiff entered into a legal agreement to arbitrate his

16    claims. *See Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701 (2008) ("ordinarily one who signs

17    an instrument which on its face is a contract is deemed to assent to all its terms"). The fact that the

18    Agreement was signed electronically and not physically is of no legal consequence, as the law does not

19    distinguish between electronic and physical signatures.

20        Rather, under both federal and California law, one can enter into a valid contract by electronically

21    signing or acknowledging an agreement (*e.g.*, clicking a box or typing one's name) and such electronic

22    signature must be afforded the same weight and effect as a physically written signature. The Electronic

23    Signatures in the Global and National Commerce Act ("E-SIGN"), 15 U.S.C. § 7001 *et seq.*, validates the

24    use of electronic signatures, electronic records, and electronic agents. The statute provides that

25    "notwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or

26    affecting interstate or foreign commerce – (1) a signature, contract, or other record relating to such

27    transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form;

28    and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a). Further, under California Civil Code § 1633.7(a), an electronic signature has the same legal effect as a handwritten signature. Simply, courts do not distinguish between pen-and-ink signatures and electronic signatures of the type at issue here. As such, Plaintiff's electronic signature has the same legal effect as if Plaintiff had physically signed his name.

Thus, by signing the Agreement, Plaintiff plainly and objectively communicated his consent to be bound by its terms.

**B.     The Agreement Requires Arbitration of All of Plaintiff's Claims**.

The agreement to arbitrate covers all of Plaintiff's claims. "[B]ecause the scope of an arbitration agreement is a matter of contract, [the Court] must look to the express terms of the agreements at issue" to determine whether the parties intended the dispute at issue to be arbitrated. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (same).

Here, there can be no doubt that Plaintiff's individual claims are subject to a binding agreement to arbitrate. The Agreement expressly covers "all claims or causes of action that the Employee may have against the Company or any of its clients for whom Employee performed work" including, but not limited to "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the California Labor Code[.]" [Arruda Decl., Ex. A § 2.]  This provision fully encompasses Plaintiff's claims under the Federal WARN Act, California WARN Act, and California Labor Code—each of which is premised on his employment with Magnit, the services that he provided to Magnit's client, Twitter, and the cessation of both of those relationships.  The Agreement requires that Plaintiff arbitrate the claims he brings in this action.

**C.     Though It is Not Defendant's Burden to Address Here, Plaintiff in Fact Has No Defense to Enforcement of the Arbitration Agreement**.

Magnit's burden is to show that Plaintiff entered into an arbitration agreement concerning the claims he pursues.  Magnit has met this burden because Plaintiff plainly and objectively communicated

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

his consent to the Agreement that governs each of Plaintiff's claims.   Should Plaintiff, however, subsequently attempt to establish that the Agreement is unenforceable due to unconscionability, such an argument would fail. "In order to establish [a defense of unconscionability], the party opposing arbitration must demonstrate that the contract . . . is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (emphasis added). The Agreement is neither. As explained further below, the Agreement is bilateral (i.e., requires the arbitration of claims that either side may have against the other), and it goes far beyond the minimum requirements that the courts utilize in assessing unconscionability.

### 1.     The Agreement is Not Procedurally Unconscionable.

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . ... Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1469 (2009) (citations and quotation marks omitted). California courts acknowledge that employer-employee arbitration agreements often have some elements of adhesion due to the unavoidable nature of the employer-employee relationship. Case law, however, makes it clear that this fact—by itself—does not invalidate such arbitration agreements. *See Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000) ("arbitration is favored in this state" even if "[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers ... may be particularly acute ... ."). Thus, courts routinely enforce arbitration agreements that are signed by employees so long as they are clearly set forth in a conspicuous manner. *See, e.g. Roman v. Super. Ct.*, 172 Cal. App. 4th at 1470–71 (arbitration agreement in employment application enforceable where it was conspicuous); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

1   Here, the Agreement was conspicuously titled **"ARBITRATION POLICY AND**

2   **AGREEMENT**." [Arruda Decl. at p. 1.]  The very first words of the Agreement put Plaintiff on additional

3   notice that he needed to review the Agreement closely: "**READ THIS AGREEMENT CAREFULLY**

4   **BECAUSE YOUR SIGNATURE BELOW CONFIRMS THAT YOU HAVE READ,**

5   **UNDERSTAND AND AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT**." [*Id.*]

6   Plaintiff thereafter attested to his understanding of the Agreement just prior to his signature: "I, the

7   undersigned employee, acknowledge that I have received a copy of PRO Unlimited, Inc.'s Arbitration

8   Policy and Agreement, that I have been provided an opportunity to read the Agreement and that I agree

9   to its terms."  [*Id.* at p. 5.]  Magnit also made clear that Plaintiff could have up to 10 days of time for

10  additional review of the Agreement before signing. [*Id.* at p.1.]

11      The Agreement was clear on its face and provided Plaintiff ample time to review. Thus, there is

12  no basis upon which Plaintiff can support a finding of procedural unconscionability.

13                   **2.      The Agreement is Not Substantively Unconscionable.**

14      *Armendariz* remains the leading case on the basic standards for assessing whether an arbitration

15  agreement signed by an employee is unconscionable under California law. In that case, the California

16  Supreme Court explained that the inquiry concerning substantive unconscionability focuses on whether

17  the arbitration agreement is "overly harsh" or leads to "one-sided" results. *Armendariz*, 24 Cal. 4th 83 at

18  114. In analyzing that question, the court confirmed that a "modicum of bilaterality" is required in the

19  employment context.

20      Here, "the Parties mutually agree to the resolution by binding arbitration of all claims or causes of

21  action that the Employee may have against the Company or any of its clients form whom Employee

22  performed work, or the Company against Employee which could be brought in a court of law." [ Arruda

23  Decl., Ex. A, § 2.]  Simply, there is nothing unilateral, illusory or even one-sided about the Agreement. It

24  goes well beyond a mere "modicum of bilaterality," and any attempt to recast language that is addressed

25  to the worker in an effort to explain his/her rights as a one-sided obligation to arbitrate is an obvious

26  misreading of the contract.

27      The *Armendariz* court also confirmed certain minimum requirements for the lawful arbitration of

28  rights pursuant to a mandatory employment arbitration agreement. The court held that such an agreement

7

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

is enforceable if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Armendariz*, 24 Cal. 4th at 102, abrogated in part by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In this case, the Agreement satisfies each of these requirements and contains several *additional* protections for the signing employee as well.

First, it guarantees the neutrality of the arbitration.  The Agreement requires that any arbitration be conducted by "a neutral arbitrator, selected by the agreement of the Parties" or by "the strike and ranking method provided for under AAA rules." [ Arruda Decl., ¶ 7, Ex. A § 6(b).]

Second, the Agreement provides for substantial discovery,  stating: "nothing in this Agreement or in the AAA Rules shall be interpreted to limit the Parties' right to reasonable discovery."  [*Id.* § 6(c).] The Agreement provides at least three depositions, 35 document requests, and 25 interrogatories, but also states that if "the Parties believe this scope of discovery is inadequate . . . the arbitrator shall have discretion to resolve any disagreement concerning the scope of discovery and to allow discovery determined by the arbitrator to be reasonably necessary to the just resolution of the dispute . . ." [*Id.*]

Third, the Agreement states that the arbitrator must "issue a written opinion and award within 30 days of the close of the arbitration hearing, which shall be signed and dated, and which shall generally set forth the reasons for the arbitrator's decision."  [*Id.* § 6(d).]

Fourth, the Agreement explicitly states that "[t]he arbitrator shall be permitted to award those remedies and damages that are available under applicable law and that would otherwise be available in a court of law."[*Id.*]  Thus, it does not curtail any remedies that would be available in court.

And finally, the Agreement protects Plaintiff from any unreasonable costs of accessing arbitration and the arbitrator's fees or expenses by requiring Magnit to "pay all . . . fees and costs that are unique to the arbitration process, including the arbitrator's fees and administrative fees."  [*Id.* § 6(e).]  Thus, the Agreement satisfies each of the five factors outlined by the *Armendariz* court and for all these reasons, the Agreement is not procedurally unconscionable.

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*

1

2

3

**D.** **In Light of the Valid Class Action Waiver, Plaintiff Should Be Compelled to Arbitration on an Individual Basis Only, and the Balance of This Action Should Be Dismissed.**

4

5

6

7

8

9

10

11

12

13

14

15

"In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 200 L. Ed. 2d 889, 897 (U.S. 2018). "Class action waivers – even waivers that are obtained as a condition of employment and that limit employees' ability to vindicate statutory employee protections – are not categorically invalid or unenforceable." *Franco v. Arakelian Enterprises, Inc.*, 234 Cal. App. 4th 947, 956 (2015), *as modified* (Mar. 11, 2015). That is because "the FAA precludes any order requiring class action arbitration of wage and hour claims unless the parties have affirmatively agreed to it." *Id.* (citing *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010)). In other words, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* Plainly, "a contract defense 'conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures' is inconsistent with the [FAA]." *Epic Sys. Corp.* 200 L. Ed. 2d at 910.

16

Here, the Agreement contains a clear and express class waiver:

17

18

19

20

21

22

[N]either the Employee nor the Company shall have a right to . . . (d) file or participate in a representative or collective capacity or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement. . . There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding ("Class Action Waiver").

23

[Arruda Decl., ¶ 7, Ex. A § 4.]

24

25

26

27

28

The parties have agreed to waive their abilities to bring class or collective claims. The Court should compel Plaintiff to arbitrate his claims on an individual basis only. The Court should thereafter dismiss this action in its entirety. *See Johnmohammadi v. Bloomingdale's, Inc.,* 755 F.3d 1072, 1074-75 (9th Cir. 2014) ("a district court may either stay the action or dismiss it out right when . . . the court determines that all of the claims raised in the action are subject to arbitration"); *Lewis v. UBS Fin. Servs.*

MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS

*ACTIVE 683907759v2*

1   *Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (enforcing class action waiver and dismissing lawsuit

2   with prejudice).

3         Should the Court decline to exercise its discretion to dismiss the entire action, it should dismiss or

4   strike Plaintiff's class claims.  *See, e.g.*, *Romo v. Cbre Grp., Inc.*, No. 8:18-cv-00237-JLS-KES, 2018 U.S.

5   Dist. LEXIS 173692, at *22 (C.D. Cal. Oct. 3, 2018) (granting motion to compel arbitration and striking

6   class claims in light of valid class waiver); *Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO,

7   2021 WL 1700204, at *7 (N.D. Cal. Apr. 29, 2021)  (striking class claims and compelling individual

8   arbitration).

9   **IV.    CONCLUSION**

10        For the forgoing reasons, Magnit respectfully request that this Court enter an order compelling

11   individual arbitration of Plaintiff's claims.  Magnit further requests that the Court dismiss this action in

12   its entirety, or alternatively dismiss or strike Plaintiff's class claims.

13

14                                        Respectfully submitted,

15   Dated:  January 11, 2023             GREENBERG TRAURIG, LLP

16

17                          By     */s/ Ashley Farrell Pickett*_____
                                   Ashley Farrell Pickett
18                                 Attorneys for Defendant
                                   MAGNIT, LLC F/K/A PRO UNLIMITED, INC.
19

20

21

22

23

24

25

26

27

28

                                        10
MOTION TO COMPEL ARBITRATION AND STRIKE/DISMISS CLASS CLAIMS
*ACTIVE 683907759v2*