MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendant
TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCISCO RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TWITTER, INC. and PRO UNLIMITED, INC.,<br><br>Defendants. | Case No. 3:22-cv-07222-TLT<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      March 14, 2023<br>Time:     2:00 p.m.<br>Judge:    Honorable Trina L. Thompson |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Tuesday, March 14, 2023, at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 9 of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Twitter, Inc. ("Twitter"), will and hereby does move this Court for an Order compelling Plaintiff Francisco Rodriguez to arbitrate the claims alleged in this action on an individual basis and to strike and dismiss Plaintiff's alleged putative class action claims.  Plaintiff clearly and unequivocally agreed to arbitrate any employment-related disputes with Twitter (and his employer Pro Unlimited, Inc. dba Magnit) on an individual basis only.  In contravention of his agreement, Plaintiff has alleged employment-related claims in a putative class action against Pro Unlimited dba Magnit and Twitter.  Because Plaintiff has refused to abide by the clear terms of his arbitration agreement, Twitter must seek relief from the Court.  The arbitration agreement, including its class action waiver provision, is valid, binding, and legally enforceable under the Federal Arbitration Act ("FAA").  9 U.S.C. §§ 1 *et seq.*; *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1616, 1632 (2018).  As a result, the Court should compel Plaintiff to arbitrate his claims on an individual basis, and the Court should strike and/or dismiss his class claims.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Rose Arruda, and all exhibits attached thereto, the evidence to which the Court may take judicial notice, the record in this action, and any other evidence as may be presented by Twitter and Pro Unlimited dba Magnit at or before the hearing on this Motion.

Dated: January 11, 2023                         MORGAN, LEWIS & BOCKIUS LLP

By   /s/ Eric Meckley
                                                        Eric Meckley
                                                        Brian D. Berry
                                                        Ashlee N. Cherry
                                                        Kassia Stephenson

                                                        Attorneys for Defendant
                                                        TWITTER, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ........................................................ 1

    A.  Defendant Magnit Provides Contract Workforce Management Services to Twitter. ............................................................................................................ 1

    B.  Plaintiff Francisco Rodriguez Signs an Arbitration Agreement with Magnit. ........ 2

    C.  Despite Agreeing to Arbitrate Claims on an Individual Basis Only, Plaintiff Filed a Putative Class Action Two Days After Twitter Terminated his Contract. ..................................................................................................... 3

III. ARGUMENT ..................................................................................................... 3

    A.  The Court Must Compel Plaintiff to Arbitration on an Individual Basis ............... 4

        1.  Plaintiff Assented to the Agreement Both by Signing It and By Accepting Employment with Magnit. ......................................................... 4

        2.  The Agreement Encompasses the Claims Alleged in the Complaint. ........ 6

        3.  Twitter May Enforce the Terms of the Arbitration Agreement. ................. 7

            a.  Twitter is an Express and Intended Third-Party Beneficiary of the Arbitration Agreement. ......................................................... 7

            b.  Twitter May Enforce the Agreement Under the Equitable Estoppel Theory. ................................................................................. 8

            c.  Twitter Can Enforce the Agreement Under a Theory of Agency. ............................................................................................ 9

        4.  The Class Action Waiver is Enforceable. ................................................. 10

    B.  The Agreement Is Enforceable Under California Law. ........................................ 12

        1.  The Agreement Is Not Procedurally Unconscionable. .............................. 12

        2.  The Agreement Is Not Substantively Unconscionable. ............................ 13

IV. CONCLUSION ................................................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*,
  66 Cal.App.4th 1199 (1998) ............................................................................................ 12

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
  513 U.S. 265 (1995) ......................................................................................................... 4

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ....................................................................................................... 10

*Armendariz v. Foundation Health Psychare Services, Inc.*,
  24 Cal. 4th 83 (2000) .................................................................................. 12, 13, 14, 15

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ....................................................................................................... 10

*Balsam v. Tucows, Inc.*,
  627 F.3d 1158 (9th Cir. 2010) .......................................................................................... 7

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ................................................................................................. 12

*Beckman v. Zuffa LLC*,
  No. CV215570MWFAGRX, 2021 WL 5445464 (C.D. Cal. Nov. 15, 2021) ..................... 5, 6

*Boucher v. Alliance Title Co., Inc.*,
  127 Cal. App. 4th 262 (2005) ........................................................................................... 8

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) .......................................................................................... 3

*Carbajal v. Rentokil N. Am., Inc.*,
  No. 17-CV-06651-YGR, 2018 WL 3304635 (N.D. Cal. July 5, 2018) .......................... 12, 13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ....................................................................................... 4, 6

*Circuit City Stores, Inc. v. Adams*,
  279 F.3d 889 (9th Cir. 2002) ......................................................................................... 12

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003) ........................................................................................................... 4

*Collins v. Diamond Pet Food Processors of California, LLC*,
  No. 2:13-CV-00113-MCE, 2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) ....................... 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014)............................................................................................. 5

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)............................................................................................................ 4

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)........................................................................................................ 4

*Espejo v. S. California Permanente Med. Grp.*,
   246 Cal.App.4th 1047 (2016).............................................................................................. 5

*Ferguson v. Countrywide Credit Industries, Inc.*,
   298 F.3d 778 (9th Cir. 2002)............................................................................................. 12

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)............................................................................................................ 5

*Franklin v. Community Regional Medical Center*,
   998 F.3d 867 (9th Cir. 2021).......................................................................................... 8, 9

*Garcia v. Pexco, LLC*,
   11 Cal. App. 5th 782 (2017).......................................................................................... 9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)........................................................................................................ 12, 13

*Jacobson v. Snap-on Tools Company*,
   No. 15-CV-02141-JD, 2015 WL 8293164 (N.D. Cal. Dec. 9, 2015) .................................. 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014)........................................................................................... 11

*Jones-Mixon v. Bloomingdale's, Inc.*,
   No. 14-cv-01103-JCS, 2014 WL 2736020 (N.D. Cal. June 11, 2014) ................................. 5

*Kim v. Tinder, Inc.*,
   2018 WL 6694923 (C.D. Cal. July 12, 2018) ...................................................................... 3

*Kinney v. United HealthCare Servs., Inc.*,
   70 Cal. App. 4th 1322 (1999) ............................................................................................ 13

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013).......................................................................................... 7, 8

*Lacour v. Marshalls of CA, LLC*,
   No. 20-CV-07641-WHO, 2021 WL 1700204 (N.D. Cal. Apr. 29, 2021) ........................... 11

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
   74 Cal. App. 4th 1105 (1999)............................................................................................. 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

*Lang v. Skytap, Inc.*,
   347 F.Supp.3d 420 (N.D. Cal. 2018) ................................................................. 12

*Lewis v. UBS Fin. Servs. Inc.*,
   818 F. Supp. 2d 1161 (N.D. Cal. 2011) .............................................................. 11

*Louis v. Healthsource Global Staffing, Inc.*,
   No. 22-CV-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022)..................... 11

*Marchese v. Shearson Hayden Stone, Inc.*,
   734 F.2d 414 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987) ....................................... 6

*Martinez v. Ross Stores, Inc.*,
   No. 18-CV-04636-JD, 2019 WL 4221704 (N.D. Cal. Sept. 5, 2019).................... 11

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*,
   No. 18-CV-05226-EMC, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022)................. 8

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
   109 Cal.App.4th 1705 (2003).................................................................................. 8

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983) ................................................................................................... 6

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013)............................................................................ 7, 9

*Nanavati v. Adecco USA, Inc.*,
   99 F.Supp.3d 1072 (N.D. Cal. 2015) ..................................................................... 5

*Nguyen v. Tran*,
   157 Cal.App.4th 1032 (2007).................................................................................. 7

*Ortiz v. Volt Management Corp.*,
   No. 16-CV-07096-YGR, 2017 WL 2404977 (N.D. Cal. June 2, 2017) ................... 8

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
   55 Cal. 4th 223 (2012) .......................................................................................... 12

*Rodriguez v. American Technologies, Inc.*,
   136 Cal.App.4th 1110 (2006)................................................................................... 3

*Romo v. Cbre Grp., Inc.*,
   No. 8:18-cv-00237-JLS-KES, 2018 U.S. Dist. LEXIS 173692 (C.D. Cal. Oct.
   3, 2018) ................................................................................................................. 11

*Ruiz v. Moss Bros. Auto Grp., Inc.*,
   232 Cal.App.4th 836 (2014)..................................................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

*Smith v. Rent-A-Center, Inc.*,
No. 118CV01351LJOJLT, 2019 WL 1294443 (E.D. Cal. Mar. 21, 2019)...............................5

*Tagliabue v. J.C. Penney Corp., Inc.*,
No. 1:15-CV-01443-SAB, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015) ...............................6

*U.S. v. Sutcliffe*,
505 F.3d 944 (9th Cir. 2007)............................................................................................4

*United States v. Trotter*,
478 F.3d 918 (8th Cir. 2007)............................................................................................4

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
871 F.3d 791 (9th Cir. 2017)............................................................................................6

*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*,
129 Cal.App.4th 759 (2005)............................................................................................9

**Statutes**

9 U.S.C. § 1 ...............................................................................................................2, 3

9 U.S.C. § 2 ..........................................................................................................2, 4, 8

9 U.S.C. § 4 ...............................................................................................................2, 3

9 U.S.C. § 7 ....................................................................................................................3

9 U.S.C. § 10 .............................................................................................................2, 3

15 U.S.C. § 7001(a) .......................................................................................................5

29 U.S.C. § 2101 ............................................................................................................3

Cal. Civ. Code § 1559 ....................................................................................................7

Cal. Civ. Code § 1633.1 .................................................................................................5

Cal. Civ. Code § 1633.7(a) .............................................................................................5

Cal. Civ. Code § 1633.9 .................................................................................................5

Cal. Lab. Code § 201 ......................................................................................................3

Cal. Lab. Code § 203 ......................................................................................................3

Cal. Lab. Code § 227.3 ...................................................................................................3

Cal. Lab. Code § 1400 ....................................................................................................3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

**Rules**

Fed. R. Evid. 901(a) ................................................................................................................ 5

Fed. R. Evid. 901(b)(4) ........................................................................................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1

## I.    INTRODUCTION

Plaintiff Francisco Rodriguez was employed by Defendant PRO Unlimited, Inc. dba Magnit ("Magnit").  He performed services as a contract worker for Defendant Twitter, Inc. ("Twitter"), which was one of Magnit's clients.  As a condition of his employment with Magnit, Plaintiff signed a valid and enforceable arbitration agreement with a class action waiver requiring him to arbitrate all disputes against Magnit and any of its clients for whom Plaintiff performed services on an individual basis only.  Despite his contractual arbitration commitments, Plaintiff filed this putative class action lawsuit against Magnit and Twitter.

As this Court is aware, the Federal Arbitration Act ("FAA") and applicable United States Supreme Court precedent dictate that where, as here, a plaintiff has entered into an arbitration agreement with a class action waiver, their individual claims must be compelled to arbitration and the putative class claims dismissed.  Plaintiff cannot prosecute his claims before this Court because he agreed to binding arbitration, on an individual basis, as the exclusive means to resolve any employment-related disputes against Magnit and Twitter.  The Court should compel Plaintiff to arbitrate his individual claims, strike and/or dismiss his putative class action claims and dismiss this action in its entirety.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    **Defendant Magnit Provides Contract Workforce Management Services to Twitter.**

Twitter is a client of Magnit.  Declaration of Rose Arruda ("Arruda Decl."), ECF No. 26-1, ¶ 2.  Magnit employs workers such as Plaintiff Francisco Rodriguez who perform services for clients like Twitter at the client's job site.  *Id.*, ¶ 7.  As part of its onboarding process, Magnit provides its new hires with an "Arbitration Policy and Agreement" ("Agreement").  *Id.*, ¶ 7.  The Agreement is a condition of every Magnit new hire's employment; the new hire must sign the Agreement within 10 days of receipt.  *Id.*  If the new hire fails to do so, but nonetheless accepts employment with the company, the new hire will be deemed to have accepted the terms of the Agreement.  *Id.*

/ / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

**B.**     **Plaintiff Francisco Rodriguez Signs an Arbitration Agreement with Magnit.**

In or around November 2021, Magnit hired Plaintiff Francisco Rodriguez. *Id.*, ¶ 7; *see also* Complaint, ¶ 1.  As part of its standard onboarding process, Magnit presented Plaintiff with a copy of the Agreement.  Plaintiff electronically signed the Agreement on November 17, 2021. *Id.*, ¶ 7, Ex. A.  In addition to the date and time stamp, Plaintiff's electronic signature includes a unique identification number as well as the IP address of the location where Plaintiff signed the Agreement. *Id.*

The Agreement contains the following material terms:

- Introductory Paragraph. The Agreement includes a prefatory paragraph advising employees to "**READ THIS AGREEMENT CAREFULLY BECAUSE YOUR SIGNATURE BELOW CONFIRMS THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT**."  (Emphasis in original.)

- Governing Law.  The Agreement expressly states that "the interpretation and enforceability of this Agreement shall be governed by the Federal Arbitration Act." *Id.* § 9; *see also* § 4 (same).

- Covered Claims.  The Agreement applies to "all claims or causes of action that the Employee may have against the Company or any of its clients for whom Employee performed work" including, but not limited to "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the California Labor Code[.]" *Id.* § 2.

- Commitment to Arbitrate Claims. The Agreement states that Plaintiff and Magnit "agree to the resolution by binding arbitration of all claims or causes of action . . . which could be brought in a court of law." *Id.*  Further, the Agreement states: "The Parties understand and fully agree that by entering into this Agreement providing for binding arbitration, they are giving up their right to have a trial by jury." *Id.* § 10.

- Arbitration a Condition of Employment.  In its introductory paragraph, the Agreement states that "the Company has adopted this Arbitration Policy and Agreement ("Agreement") as a condition of employment." *Id.*  The Agreement requires employees to execute the Agreement within 10 days of receipt. *Id.*  Further, if an employee fails to timely

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1   execute the acknowledgement but "nonetheless accept[s] employment . . . [the employee] will be

2   deemed to have accepted this Agreement."  *Id.*

3           • <u>Third-Party Beneficiary</u>.  The Agreement explicitly states that it "is intended to

4   also inure to the benefit of the Company's clients for whom Employee performed work to the

5   extent an employment dispute arises between Employee and such client and involves claims

6   covered by this Agreement."  *Id.* § 7.  Further, the Agreement defines the "Parties" to the

7   Agreement to include Magnit, Inc.'s "affiliated entities."  *Id.* § 1.

8           • <u>Class Action Waiver</u>.  The Agreement contains a class and collective

9   action waiver:

10          [N]either the Employee nor the Company shall have a right to . . . (d) file or
            participate in a representative or collective capacity or as a member of any class of
11          claimants in an action in a court of law pertaining to any claims encompassed by
            this Agreement. . . There will be no right or authority for any dispute to be
12          brought, heard or arbitrated as a class or collective action, or as a member in any
            such class or collective proceeding ("Class Action Waiver").
13

14   *Id.* § 4.

15          **C.      Despite Agreeing to Arbitrate Claims on an Individual Basis Only, Plaintiff
                      Filed a Putative Class Action Two Days After Twitter Terminated his
16                    Contract.**

17          Magnit placed Plaintiff at Twitter's Santa Monica, California office to provide services as

18   a "Gaming Partnership Coordinator" in November 2021.  Complaint, ¶ 1.  Plaintiff remained in

19   this position until on or about November 14, 2022.  Complaint, ¶ 15.

20          Two days later, on November 16, 2022, Plaintiff filed a complaint alleging putative class

21   claims for: (1) violation of WARN Act (29 U.S.C. §§ 2101 *et seq.*); (2) violation of the California

22   WARN Act (Cal. Lab. Code §§ 1400 *et seq.*); and (3) failure to pay all wages and benefits

23   immediately upon termination (Cal. Lab. Code §§ 201, 203, 227.3).  ECF No. 1.  These claims

24   relate to and arise out of Plaintiff ceasing to perform services for Twitter.

25   **III.   ARGUMENT**

26          Where, as here, an arbitration agreement has an express "FAA choice-of-law" provision,

27   the FAA governs the agreement.  *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July

28   12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-1131 (9th Cir. 2015)); *Rodriguez v.*

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

3

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1  *American Technologies, Inc.*, 136 Cal.App.4th 1110, 1122 (2006). However, even if the

2  Agreement did not expressly incorporate the FAA, the FAA still applies because Magnit's (and

3  Twitter's) business plainly "involve[es] commerce." *See* 9 U.S.C. § 2. Indeed, courts broadly

4  construe the FAA's use of the term "involving commerce" to cover any contract affecting

5  interstate commerce to the full extent of Congress's Commerce Clause power. *See Citizens Bank*

6  *v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (citing *Allied–Bruce Terminix Companies, Inc. v.*

7  *Dobson*, 513 U.S. 265, 273–274). As the Ninth Circuit has explained, "the Internet is an

8  instrumentality and channel of interstate commerce." *U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th

9  Cir. 2007) (quoting *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007) (per curiam)). The

10 FAA plainly governs the Agreements at issue here.

11     Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable,

12 save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

13 § 2. The Supreme Court has mandated that arbitration agreements governed by the FAA "must

14 be enforced as written," subject only to generally applicable contract defenses such as fraud,

15 duress, or unconscionability. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). The

16 FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that

17 district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

18 agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

19     In deciding a motion to compel arbitration under the FAA, the Court's role is limited to

20 answering two questions: (1) does a valid agreement to arbitrate exist; and, if so, (2) does the

21 arbitration agreement encompass the dispute or claims at issue? If the answer to both questions is

22 "yes," then the Court must compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

23 F.3d 1126, 1130 (9th Cir. 2000). Here, because the answer to both inquiries is unequivocally

24 "yes," the Court should compel Plaintiff to arbitrate his individual claims.

25     **A.**      **The Court Must Compel Plaintiff to Arbitration on an Individual Basis**

26          **1.**      **Plaintiff Assented to the Agreement Both by Signing It and By**
                        **Accepting Employment with Magnit.**

27

28 Courts generally apply state-law principles of contract formation when deciding whether

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1    parties assented to a contract.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944

2    (1995); *see also Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014).  In California, an

3    agreement to arbitrate may be either express or implied in fact.  *Davis*, 755 F.3d at 1093.  "A

4    defendant may meet its initial burden to show an agreement to arbitrate by attaching a copy of the

5    arbitration agreement purportedly bearing the opposing party's signature to the defendant's

6    motion to compel arbitration."  *Smith v. Rent-A-Center, Inc.*, No. 118CV01351LJOJLT, 2019 WL

7    1294443, at *4 (E.D. Cal. Mar. 21, 2019) (quoting *Espejo v. S. California Permanente Med. Grp.*,

8    246 Cal.App.4th 1047, 1060 (2016)).

9           California enacted the Uniform Electronic Transaction, Cal. Civ. Code § 1633.1 *et seq.*,

10   which provides that a "signature may not be denied legal effect or enforceability solely because it

11   is in electronic form[,]" and specifies that "[a] contract may not be denied legal effect or

12   enforceability solely because an electronic record was used in its formation." Cal. Civ. Code §

13   1633.7(a); *see also* 15 U.S.C. § 7001(a) (federal equivalent).  A defendant must show by a

14   preponderance of the evidence that the electronic signature on an agreement is attributable to a

15   plaintiff (*i.e.*, that it is more likely than not it was the plaintiff's act that caused the signature to be

16   created).  Fed. R. Evid. 901(a); *see, e.g., Beckman v. Zuffa LLC,* No. CV215570MWFAGRX,

17   2021 WL 5445464, at *4 (C.D. Cal. Nov. 15, 2021) (granting motion to compel arbitration in

18   employment case where the employee affixed electronic signature to the agreement).  This "may

19   be shown in any manner," including by circumstantial evidence, and it "is not a difficult

20   evidentiary burden to meet." *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal.App.4th 836, 843-844

21   (2014) (citing Cal. Civ. Code § 1633.9); *see also Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d at

22   1076 (holding that a detailed declaration "easily satisfies Defendant's low burden to authenticate

23   Plaintiff's electronic signature and establish the existence of a valid arbitration agreement").  Fed.

24   R. Evid. 901(b)(4) allows consideration of the "appearance, contents, substance, internal patterns,

25   or other distinctive characteristics of the item, taken together with all the circumstances to

26   authenticate a document."  Declarations from company representatives are sufficient to

27   authenticate electronic signatures. *See Nanavati v. Adecco USA, Inc.*, 99 F.Supp.3d 1072, 1076

28   (N.D. Cal. 2014); *Jones-Mixon v. Bloomingdale's, Inc.*, No. 14-cv-01103-JCS, 2014 WL

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

2736020, at *4 (N.D. Cal. June 11, 2014). In *Tagliabue v. J.C. Penney Corp., Inc.*, No. 1:15-CV-01443-SAB, 2015 WL 8780577, at *3 (E.D. Cal. Dec. 15, 2015), the plaintiff disputed the validity of his electronic signature on an arbitration agreement.  The employer submitted evidence regarding its onboarding system and process for new hires to complete designated steps, including electronically signing an arbitration agreement, to complete the hire process.  *Id*.  The court in *Tagliabue* found that this evidence, coupled with the fact the plaintiff's electronic signature appeared on other documents presented to him during onboarding, established that the plaintiff more likely than not had signed the agreement.  *Id.*; *see also Beckman*, 2021 WL 5445464, at *4.

Here, Plaintiff cannot dispute that he electronically signed the Agreement: his electronic signature appears on the Agreement along with his IP address and a unique identification number.  Arruda Decl., ¶ 7, Ex. A.  Plaintiff further manifested his assent to the Agreement by accepting employment with Magnit.  The Agreement explicitly states that it is a condition of employment and further states that by "accept[ing] employment . . . you will be deemed to have accepted this Agreement."  *Id.*  As a result, the Court must find that a valid agreement to arbitrate exists.

## 2.   The Agreement Encompasses the Claims Alleged in the Complaint.

To determine the scope of an arbitration agreement, the Court must look to the express terms of the parties' agreement.  *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (citing *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  "If the text is plain and unambiguous, that is the end of our analysis in this case because we must rigorously enforce arbitration agreements according to their terms." *United States ex rel. Welch*, 871 F.3d at 796 (citations omitted).  A claim is subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984), *aff'd* 822 F.2d 876 (1987).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983).  See Complaint, pp. 6-7.

Here, Plaintiff's Complaint alleges violations of the federal and California WARN Act

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1  and the California Labor Code, all of which are premised on Plaintiff ceasing to perform services

2  for Twitter and allegedly being "terminated".  Each of these claims falls squarely within the scope

3  of the Agreement, which applies to "claims or causes of action that [Plaintiff has] against the

4  Company or any of its clients for whom [Plaintiff] performed work" for the "violation of any law

5  or statute . . . including . . . the California Labor Code."  Arruda Decl., ¶ 7, Ex. A § 2.  Plaintiff

6  cannot dispute that his claims are covered by and subject to arbitration under the plain terms of

7  the Agreement.

8          **3.**      <u>**Twitter May Enforce the Terms of the Arbitration Agreement.**</u>

9            **a.**      <u>**Twitter is an Express and Intended Third-Party Beneficiary of**</u>

10                     <u>**the Arbitration Agreement.**</u>

11     "A litigant who is not a party to an arbitration agreement may invoke arbitration under the

12 FAA if the relevant state contract law allows the litigant to enforce the agreement."  *Kramer v.*

13 *Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citations omitted).  California law

14 permits non-signatories to enforce an arbitration agreement when they are intended third party

15 beneficiaries of an arbitration agreement.  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (quoting

16 *Nguyen v. Tran*, 157 Cal.App.4th 1032, 1036 (2007)) ("Exceptions in which an arbitration

17 agreement may be enforced by or against nonsignatories include where a nonsignatory is a third

18 party beneficiary of the agreement"); *see also* Cal. Civ. Code § 1559 ("a contract, made expressly

19 for the benefit of a third party, may be enforced by him at any time before the parties thereto

20 rescind it").  "A third party qualifies as a beneficiary under a contract if the parties intended to

21 benefit the third party and the terms of the contract make that intent evident."  *Balsam v. Tucows,*

22 *Inc.*, 627 F.3d 1158, 1161 (9th Cir. 2010).  "Whether the third party is an intended beneficiary . . .

23 involves construction of the intention of the parties, gathered from reading the contract as a whole

24 in light of the circumstances under which it was entered."  *Id.*

25     Here, the Agreement is express and unequivocal in its third-party beneficiary provision,

26 which provides that the Agreement shall "inure to the benefit of *the Company's clients for whom*

27 *Employee performed work* to the extent an employment dispute arises between Employee and

28 such client and involves claims covered by this Agreement."  Arruda Decl., ¶ 7, Ex. A § 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1 | (emphasis added).  The claims subject to the Agreement include "all claims or causes of action

2 | that the Employee may have against the Company *or any of its clients for whom Employee*

3 | *performed work*."  *Id.*, § 2 (emphasis added).  This language "evidences the parties' intent to

4 | include claims against third parties . . . within the scope of the arbitration agreement."  *See, e.g.,*

5 | *Collins v. Diamond Pet Food Processors of California, LLC*, No. 2:13-CV-00113-MCE, 2013

6 | WL 1791926, at *9 (E.D. Cal. Apr. 26, 2013) (holding that a non-signatory client of a staffing

7 | agency was an intended third-party beneficiary of an arbitration agreement where the agreement

8 | stated that it applied to disputes against the staffing agency "and/or disputes arising out of or

9 | related to the actions of [the staffing agency's] Clients (or Client's employees)").  As Magnit's

10 | client, Twitter has the authority and contractual right to enforce the arbitration agreement as a

11 | third-party beneficiary.

12 |
13 |      **b.**  **<u>Twitter May Enforce the Agreement Under the Equitable Estoppel Theory.</u>**

14 |    The equitable estoppel doctrine "permits a nonsignatory to invoke arbitration  . . . even

15 | when a signatory attempts to avoid arbitration by suing nonsignatory defendants for claims that

16 | are based on the same facts and are inherently inseparable from arbitrable claims against

17 | signatory defendants."  *Franklin v. Community Regional Medical Center*, 998 F.3d 867, 870-871

18 | (9th Cir. 2021) (quoting *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109

19 | Cal.App.4th 1705, 1713); *see also Ortiz v. Volt Management Corp.*, No. 16-CV-07096-YGR,

20 | 2017 WL 2404977, at *2 (N.D. Cal. June 2, 2017) (quoting *Boucher v. Alliance Title Co., Inc.*,

21 | 127 Cal. App. 4th 262, 269 (2005)) ("a nonsignatory defendant may compel arbitration under a

22 | theory of equitable estoppel where claims against the signatory are based on the same facts and

23 | are inherently inseparable"); *see also Kramer*, 705 F.3d at 1128-1129 (citations omitted).  In

24 | evaluating the applicability of the doctrine, courts "look to the relationships of persons, wrongs

25 | and issues, and in particular whether the claims are intimately founded in and intertwined with the

26 | underlying contract obligations."  *Franklin*, 998 F.3d at 871 (citations omitted); *see also*

27 | *Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, No. 18-CV-05226-EMC, 2022 WL 10585178,

28 | at *7 (N.D. Cal. Oct. 18, 2022).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

Here, Plaintiff alleges that Magnit and Twitter were joint employers (*see* Complaint, ¶¶ 2 and 17) and alleges all three of his causes of action against Magnit and Twitter jointly.  *See* Complaint, pp. 6-7.  Specifically, Plaintiff alleges that both Defendants violated the federal and California WARN Acts by allegedly failing to provide the requisite notice when terminating contract workers performing services for Twitter.  *Id.*  Although Plaintiff acknowledges that Magnit paid him (see Complaint, ¶ 10), he accuses both Twitter *and* Magnit of failing to timely remit full and final pay to contract workers performing services for Twitter who claim to have had their contracts terminated.  Twitter and Magnit's alleged misconduct is premised upon the same facts and "inherently inseparable," and therefore Twitter can enforce the Agreement pursuant to the doctrine of equitable estoppel.  *See, e.g., Franklin*, 998 F.3d at 875 (equitably estopping a plaintiff from avoiding arbitrating her claims against the hospital where she worked because her claims against the hospital were "intimately founded in and intertwined with" her employment contract with a staffing agency).

### c. <u>Twitter Can Enforce the Agreement Under a Theory of Agency.</u>

In California, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (quoting *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal.App.4th 759, 765 (2005)); *see also Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782 (2017).  Courts may apply the agency exception when the operative complaint contains factual allegations regarding a joint employment relationship between a staffing agency and its client.  *See, e.g., Garcia*, 11 Cal. App. 5th at 788 (applying the agency exception where a plaintiff alleged that a staffing agency and its client were joint employers).

Here, the Complaint contains numerous allegations that Twitter and Magnit jointly employed Plaintiff.  Plaintiff specifically alleges that "Twitter is a joint employer of the employees who were paid through Magnit."  Complaint, ¶ 17.  Plaintiff accuses both Twitter and Magnit of alleged misconduct.  *See, e.g.,* Complaint, p. 6 ("Defendants are engaged in conducting

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1  mass layoffs but have not provided affected employees with the required notice under the federal

2  WARN Act"); Complaint, p. 7 ("Defendants are engaged in conducting mass layoffs but have not

3  provided affected employees with the required notice under the California WARN Act" and

4  "Defendants have terminated these employees but failed to provide them their full final pay,

5  accrued benefits, and expense reimbursement timely upon termination").  Based on these

6  allegations, Twitter can enforce the Agreement as an alleged agent and joint employer with

7  Magnit, a signatory and party to the Agreement.  *See Garcia* 11 Cal. App. 5th at 788 (applying

8  the agency exception where "the operative complaint alleged workplace violations against Real

9  Time and Pexco as joint employers, referred to both employers collectively as 'defendants'

10  without any distinction, and alleged identical claims and conduct regarding unlawful and

11  improper acts").

### 4.     The Class Action Waiver is Enforceable.

13         Class waivers in arbitration agreements are enforceable under the FAA.  Courts must

14  "rigorously enforce" arbitration agreements according to their terms, including terms that

15  "specify *with whom* [the parties] choose to arbitrate their disputes."  *Am. Express Co. v. Italian*

16  *Colors Rest.*, 570 U.S. 228, 233 (2013) (italics and brackets in original) (citations omitted).  There

17  is no "entitlement to class proceedings for the vindication of statutory rights."  *Id.* at 234.  The

18  Supreme Court overruled prior California law barring enforcement of class action waivers.

19  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-52 (2011).  Recognizing that "[t]he

20  overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements

21  according to their terms so as to facilitate streamlined proceedings," the Supreme Court held that

22  California law restricting class action waivers was "inconsistent with the FAA."  *Id.* at 344.  In

23  *Epic Systems Corp. v. Lewis*, 138 S. Ct. at 1632, the Supreme Court confirmed that arbitration

24  agreements in the employment context are no exception to the rule that class waivers are

25  enforceable under the FAA.

26         Here, Plaintiff expressly waived his right to file or participate in a class action when he

27  entered into the Agreement.  The Agreement states:

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

> [N]either the Employee nor the Company shall have a right to . . . (d) file or participate in a representative or collective capacity or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement. . . There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding ("Class Action Waiver").

Arruda Decl., ¶ 7, Ex. A § 4.

Because the plain language in the Agreements clearly prohibits arbitration on a class basis, and because such waivers are enforceable as a matter of law, the Court should compel Plaintiff to submit his claims to arbitration on an individual basis only. *See, e.g., Martinez v. Ross Stores, Inc.,* No. 18-CV-04636-JD, 2019 WL 4221704, at *3 (N.D. Cal. Sept. 5, 2019) (acknowledging the validity of class action waiver); *Jacobson v. Snap-on Tools Company*, No. 15-CV-02141-JD, 2015 WL 8293164, at *6 (N.D. Cal. Dec. 9, 2015) (enforcing class action waiver and ordering plaintiff to submit his claims to arbitration on an individual basis); *Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *7 (N.D. Cal. Apr. 29, 2021) (striking class claims and compelling individual arbitration).

Further, the Court should exercise its discretion to dismiss this lawsuit given that Plaintiff's claims are subject to an arbitration agreement. *See Johnmohammadi v. Bloomingdale's, Inc.,* 755 F.3d 1072, 1074-75 (9th Cir. 2014) ("a district court may either stay the action or dismiss it out right when . . . the court determines that all of the claims raised in the action are subject to arbitration"); *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (enforcing class action waiver and dismissing lawsuit with prejudice); *Louis v. Healthsource Global Staffing, Inc.,* No. 22-CV-02436-JD, 2022 WL 4960666, at *3 (N.D. Cal. Oct. 3, 2022) (granting a motion to compel arbitration and dismissing the action). In the event the Court does not dismiss the entire action, then it should dismiss or strike Plaintiff's class claims. *See, e.g., Romo v. Cbre Grp., Inc.*, No. 8:18-cv-00237-JLS-KES, 2018 U.S. Dist. LEXIS 173692, at *22 (C.D. Cal. Oct. 3, 2018) (granting motion to compel arbitration and striking class claims in light of valid class waiver); *Lacour v. Marshalls of CA, LLC*, No. 20-CV-07641-WHO, 2021 WL 1700204, at *7 (N.D. Cal. Apr. 29, 2021) (striking class claims and compelling individual arbitration).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

**B.**     **The Agreement Is Enforceable Under California Law.**

Since Twitter has shown that a valid agreement to arbitrate exists and applies to the claims at issue, Plaintiff bears the burden of proving that the agreement is not valid or enforceable.  *Lang v. Skytap, Inc.*, 347 F.Supp.3d 420, 426 (N.D. Cal. 2018); *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 226 (2012).  An arbitration agreement can be invalidated only if there is a showing that the agreement is both procedurally and substantively unconscionable.  *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 783 (9th Cir. 2002); *see also Armendariz v. Foundation Health Psychare Services, Inc.,* 24 Cal. 4th 83, 114 (2000).  "These two elements, however, need not both be present in the same degree." *Ferguson*, 298 F.3d at 783.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id*. (quoting *Armendariz*, 24 Cal. 4th at 114.)   Here, the Court should find that the Agreement is enforceable as it is neither procedurally nor substantively unconscionable.

**1.**     **The Agreement Is Not Procedurally Unconscionable.**

Procedural unconscionability refers to "oppression" or "surprise" due to unequal bargaining power that results in no real negotiation and an absence of meaningful choice.  *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002) ("When assessing procedural unconscionability, we consider the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms"); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1213 (1998).  The procedural element to unconscionability may arise in connection with adhesion contracts, but the finding of an adhesion contract does not "per se" render an arbitration agreement unenforceable.  *See*, *e.g.*, *Carbajal v. Rentokil N. Am., Inc*., No. 17-CV-06651-YGR, 2018 WL 3304635, at *5 (N.D. Cal. July 5, 2018) ("[A]dhesion alone is not enough to prove procedural unconscionability"); *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245, 1251 (2016) (enforcing arbitration agreement where acceptance was a condition of employment).  Further, the U.S. Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees."  *Gilmer v. Interstate/Johnson Lane Corp.*,

1   500 U.S. 20, 33 (1991).  However, "[m]ere inequality in bargaining power" does not render an

2   employee's arbitration agreement unenforceable.  *Id*.; *see also Armendariz*, 24 Cal. 4th at 115

3   ("arbitration is favored in this state" even if "[i]n the case of preemployment arbitration contracts,

4   the economic pressure exerted by employers ... may be particularly acute…"); *see also Lagatree*

5   *v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly

6   agree that a compulsory predispute arbitration agreement is not rendered unenforceable just

7   because it is required as a condition of employment or offered on a 'take it or leave it' basis").

8          Here, the Agreement is not procedurally unconscionable.  Though the Agreement was

9   presented to Plaintiff as a condition of his employment, this fact is insufficient on its own to

10  warrant a finding that the Agreement is procedurally unconscionable.  *See Carbajal* 2018 WL

11  3304635, at *5-6 (finding that "[f]ailure to permit a reasonable opportunity to opt-out indicates

12  procedural unconscionability" but ultimately holding that "other factors cut against a finding of

13  procedural unconscionability," including the fact that the agreement was written in clear and

14  straightforward language and clearly labeled as an arbitration agreement).  The Agreement is a

15  standalone document conspicuously entitled "**ARBITRATION POLICY AND**

16  **AGREEMENT**."  Arruda Decl., ¶ 7, Ex. A.  The very first words of the Agreement put Plaintiff

17  on additional notice that he needed to review the Agreement closely: "**READ THIS**

18  **AGREEMENT CAREFULLY BECAUSE YOUR SIGNATURE BELOW CONFIRMS**

19  **THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS OF THIS**

20  **ARBITRATION AGREEMENT**." *Id.*  It uses plain language to explain the arbitration process

21  and the rights an applicant is waiving by entering into the Agreement.  Further, Magnit made

22  clear that Plaintiff could have up to 10 days of time to review the Agreement before signing.  *Id.*

23  at p. 1.  Thus, there is no evidence of surprise and any limited oppression, alone, does not render

24  the Agreement procedurally unconscionable.

25          **2.      The Agreement Is Not Substantively Unconscionable.**

26          Substantive unconscionability "focuses on the terms of the agreement and whether those

27  terms are so one-sided as to shock the conscience."  *Kinney v. United HealthCare Servs., Inc.*, 70

28  Cal. App. 4th 1322, 1330 (1999).  The California Supreme Court in *Armendariz* set forth criteria

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

1   for assessing whether an agreement may be substantively unconscionable.  An employment

2   arbitration agreement must provide for the following: (1) a neutral arbitrator, (2) adequate

3   discovery, (3) a written award, (4) the availability of all the types of relief that would otherwise

4   be available in court, (5) payment by the employer of any arbitration fees beyond what the

5   employee would have to pay in court, and (6) include a "modicum of bilaterality."  *Armendariz*,

6   24 Cal. 4th at 102-14, 117-18.  Here, the Agreement satisfies each of these criteria.

7         First, the Agreement provides for "a neutral arbitrator, selected by the agreement of the

8   Parties" or by "the strike and ranking method provided for under AAA rules."  Arruda Decl., ¶ 7,

9   Ex. A § 6(b).

10        Second, the Agreement provides for discovery sufficient to vindicate Plaintiff's claims,

11  stating: "[N]othing in this Agreement or in the AAA Rules shall be interpreted to limit the

12  Parties' right to reasonable discovery."  *Id.* § 6(c).  The Agreement defines "reasonable

13  discovery" as three depositions, 35 document requests, and 25 interrogatories.  *Id*.  However, the

14  Agreement states that if "the Parties believe this scope of discovery is inadequate . . . the

15  arbitrator shall have discretion to resolve any disagreement concerning the scope of discovery and

16  to allow discovery determined by the arbitrator to be reasonably necessary to the just resolution of

17  the dispute . . ."  *Id.*

18        Third, the Agreement specifically provides for a written, reasoned award.  The Agreement

19  requires the arbitrator to "issue a written opinion and award within 30 days of the close of the

20  arbitration hearing, which shall be signed and dated, and which shall generally set forth the

21  reasons for the arbitrator's decision."  *Id.* § 6(d).

22        Fourth, nothing in the Agreement limits the legal rights, remedies, or defenses that would

23  be available in court and provide for all types of relief that otherwise would be available in court.

24  *Id.* ("The arbitrator shall be permitted to award those remedies and damages that are available

25  under applicable law and that would otherwise be available in a court of law.")

26        Fifth, the Agreement requires Magnit to "pay all . . . fees and costs that are unique to the

27  arbitration process, including the arbitrator's fees and administrative fees."  *Id.* § 6(e).

28  / / /

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT

Finally, the Agreement provides that all parties are mutually required to submit their claims to arbitration: "[T]he Parties mutually agree to the resolution by binding arbitration of all claims or causes of action that the Employee may have against the Company or any of its clients for whom Employee performed work, or the Company against Employee which could be brought in a court of [] law. . ." *Id.* § 2.  The Agreement is binding on both Plaintiff and Twitter, thereby satisfying the final *Armendariz* requirement of a "modicum of bilaterality."

## IV.    CONCLUSION

Plaintiff signed a valid and enforceable arbitration agreement with his employer, Magnit, requiring Plaintiff to arbitrate any disputes with Magnit or "any of its clients for whom [Plaintiff] performed work" on an individual basis.  Twitter is a Magnit client for whom Plaintiff performed services.  The Agreement encompasses the claims at issue in Plaintiff's Complaint.  Accordingly, the Court should compel arbitration of Plaintiff's claim on an individual basis, dismiss Plaintiff's class claims, and dismiss this action in its entirety.

Dated: January 11, 2023                           MORGAN, LEWIS & BOCKIUS LLP


                                                  By   */s/ Eric Meckley*
                                                       Eric Meckley
                                                       Brian D. Berry
                                                       Ashlee Cherry
                                                       Kassia Stephenson

                                                       Attorneys for Defendant
                                                       TWITTER, INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER'S MTC ARBITRATION AND
STRIKE CLASS CLAIMS
CASE NO. 3:22-cv-07222-TLT