SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
THOMAS FOWLER (*pro hac vice* forthcoming)
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

*Attorneys for Plaintiff Francisco Rodriguez,*
*on behalf of himself and all others similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCISCO RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.  and PRO UNLIMITED, INC.<br><br>Defendants | Case No. 3:22-cv-7222<br><br>**PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS** |

1

2

**TABLE OF CONTENTS**

3

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND .............................................. 2

III. ARGUMENT ........................................................................................................... 4

      A.      Plaintiff's PAGA Claim Cannot be Compelled to Arbitration .............................. 4

      B.      Twitter's Conduct Demonstrates that it does not Actually Intend to Arbitrate
These Claims ........................................................................................................ 7

IV. CONCLUSION ........................................................................................................ 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

1

**TABLE OF AUTHORITIES**

**Cases**

Abernathy v. DoorDash, Inc.,

  438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................................... 9

Adolph v. Uber Technologies,

  S274671, Order Granting Review (Cal. Aug. 1, 2022) ................................................. 6, 7

Borodaenko v. Twitter, Inc.,

  Civ. Act. No. 4:22-cv-07226-HSG (N.D. Cal.) ............................................................. 8

Brown v. Dillard's, Inc.,

  430 F.3d 1004 (9th Cir. 2005) .................................................................................... 2, 10

Chiron v. Ortho Diagnostic Sys., Inc.,

  207 F.3d 1126 (9th Cir. 2000) ......................................................................................... 4

Cornet et al. v. Twitter, Inc.,

  Civ. Act. No. 3:22-cv-06857 (N.D. Cal.) .............................................................. 1, 7, 9

Cornet v. Twitter, Inc.,

  2023 WL 187498 (N.D. Cal. Jan. 13, 2023) ................................................................... 7

Esparza v. SmartPay Leasing, Inc.,

  2017 WL 4390182 (N.D. Cal. Oct. 3, 2017) ................................................................... 4

Garcia v. Mason Contract Prod., LLC,

  2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) .............................................................. 10

Gilmer v. Interstate/Johnson Lane Corp.,

  500 U.S. 20 (1991) ........................................................................................................... 9

In re Citigroup, Inc.,

  376 F.3d 23 (1st Cir. 2004) ........................................................................................... 10

Iskanian v. CLS Transp. Los Angeles, LLC,

  59 Cal. 4th 348 (2014) ................................................................................................. 5, 6

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

Marlyn Nutraceuticals, Inc. v. lmprovita Health Products, Inc.,

   2008 WL 5068935 (D. Ariz. Nov. 25, 2008) ............................................................... 10

Martinez-Gonzalez v. Elkhorn Packing Co., LLC,

   --- F. Supp. 3d ---, 2022 WL 10585178 (N.D. Cal. Oct. 18, 2022) ........................................ 6, 7

Nadeau v. Equity Residential Props. Mgmt. Corp.,

   2017 WL 1842686 (S.D.N.Y. May 5, 2017) ............................................................... 10

Ohan v. AmeriFirst Financial, Inc.,

   2015 WL 13757759 (C.D. Cal. Jan. 20, 2015) ............................................................ 4

Perez v. DirecTV Group Holdings, LLC,

   740 Fed. App'x. 560 (9th Cir. 2018) ................................................................... 4

Pre-Paid Legal Servs., Inc. v. Cahill,

   786 F.3d 1287 (10th Cir 2015.) ....................................................................... 10

Sakkab v. Luxottica Retail North America, Inc.,

   803 F.3d 425 (9th Cir. 2015) .......................................................................... 5

Spano v. V & J Nat'l Enterprises, LLC,

   2017 WL 3738555 (W.D.N.Y. Aug. 30, 2017) ............................................................ 10

Stanley v. A Better Way Wholesale Autos, Inc.,

   20189 WL 3872156 (D. Conn. Aug. 15, 2018) ........................................................... 10

Viking River Cruises, Inc. v. Moriana,

   142 S. Ct. 1906 (2022) ............................................................................. 5, 6


**Statutes**

9 U.S.C. §§ 1 *et seq.* ................................................................................ 4, 6

Cal. Lab. Code §§ 201 ................................................................................ 2

Cal. Lab. Code §§ 203 ................................................................................ 2

Cal. Lab. Code §§ 227.3 .............................................................................. 2

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

Cal. Lab. Code 2698 §§ *et seq.* ................................................................................................ *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Plaintiff Francisco Rodriguez submits this brief in opposition to both Defendant Twitter, Inc.'s Motion to Compel Arbitration and Strike and/or Dismiss Class Claims (Dkt. 27) and (2) Defendant Magnit, LLC F/K/A/ Pro Unlimited, Inc.'s ("Magnit") Motion to Compel Arbitration of Plaintiff's Individual Claims and Strike and/or Dismiss Class Claims (Dkt. 26). As will be explained below, in seeking to compel arbitration, Defendants both rely on an arbitration agreement entered into between Magnit and Plaintiff and Magnit. See Arbitration Agreement, Ex. A to Arruda Decl., Dkt. 26-1. The Court should deny Defendants' motions to compel arbitration for two reasons.

First, Plaintiff has moved to amend his Complaint (Dkt. 34) in order to assert a claim for penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code 2698 §§ *et seq.* The arbitration agreement explicitly excludes PAGA claims from its scope. See Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 26-1. Thus, regardless of whether Plaintiff's class and individual claims can be compelled to arbitration, the case as a whole should not be dismissed, as the PAGA claim must be permitted to proceed in court.

Second, it is clear that Twitter's request to move the case to arbitration is simply a ruse to try to avoid these claims altogether.  Despite contending that it wanted to arbitrate the claims brought before this Court in Cornet et al. v. Twitter, Inc., Civ. Act. No. 3:22-cv-06857 (N.D. Cal.), after the Court granted its motion to compel arbitration, 2023 WL 187498, at *1-3 (N.D. Cal. Jan. 13, 2023), Twitter has not participated in or cooperated with the plaintiffs' efforts to begin their arbitration cases.  Although Plaintiff's counsel have attempted to begin arbitration cases for those original named plaintiffs in that case, and more than 1,000 other former Twitter employees, Twitter has simply avoided facing those claims.  Despite having demanded in court that employees must pursue any claims they have in arbitration based on an agreement it had them sign, once those claims began being filed, Twitter argued that it should not have to participate if the employees did not themselves produce their own signed arbitration agreements. Then, once signed arbitration agreements began being submitted to the arbitration provider

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

(JAMS), Twitter rejected JAMS' order that it must now pay its share of filing fees.  For employees whose arbitration agreements do not specify an arbitration provider, but instead simply provide that the parties are to agree on an arbitrator, Twitter has not cooperated with Plaintiffs' counsel in attempting to agree on arbitrators.

Twitter's conduct to date demonstrates that it does not genuinely intend to arbitrate the claims brought against it by its former employees.  In similar circumstances, courts have held that such conduct waives the ability to compel arbitration. See Brown v. Dillard's, Inc., 430 F.3d 1004, 1010, 1012 (9th Cir. 2005). The writing is on the wall – Twitter (and presumably Magnit, which is acting in concert with Twitter, and served as the payroll company for many of Twitter's employees) is attempting to use arbitration to keep this case out of court, but does not intend to participate in arbitration with its employees in good faith. Twitter should not be permitted to use arbitration as a game-playing device to avoid facing these serious claims.  Defendants' motions to compel arbitration should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this class action lawsuit on November 16, 2022 (Dkt. 1). In his Complaint, Plaintiff alleged that Defendants had violated the federal WARN Act and (for employees who worked in California) the California WARN, as well as provisions of the California Labor Code, Cal. Lab. Code §§ 201, 203, and 227.3, which require the payment of full pay, benefits, and expense reimbursement immediately upon an employee's termination.  On February 7, 2023, Plaintiff moved to amend his Complaint (Dkt. 34) in order to add a PAGA claim seeking penalties for Defendants' violations of the California WARN Act and the California Labor Code.

Plaintiff, along with thousands of other similarly situated employees, were employed by Twitter through Magnit, a payroll administration company. (Compl. ¶¶ 2, 10, Dkt. 1.) While these employees were classified as employees of Magnit, the duties that they performed were indistinguishable from the employees who were employed directly by Twitter and were directly supervised by Twitter managers. (Compl. ¶¶ 2, 10, Dkt. 1.) As Plaintiff has alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce.

(Compl. ¶¶ 12-13, Dkt. 1.) Beginning on November 12, 2022, Twitter began laying off its employees who were paid through Magnit. (Compl. ¶ 14, Dkt. 1.) Plaintiff received an email on November 12, 2022, stating that he was being laid off, effective November 14, 2022. (Compl. ¶ 15, Dkt. 1.)

Plaintiff alleges that Twitter did not give 60 days' advance written notice to the employees paid through Magnit who Twitter laid off, as required by the federal WARN Act, and for employees in California, the California WARN Act. (Compl. ¶ 16, Dkt. 1.) Nor were the affected employees given pay in substitution for federal or California WARN Act Notice. (Compl. ¶ 16, Dkt. 1.) In addition, neither Twitter nor Magnit provided full final pay, benefits, and expense reimbursement to these employees on their last day of employment, as required by the California Labor Code. (Compl. ¶ 18, Dkt. 1.)

At the beginning of Plaintiff's employment by Defendants, he was required as a condition of his employment to enter into an arbitration agreement with Magnit. (Arbitration Agreement, Ex. A to Arruda Decl., Dkt. 26-1.) The arbitration agreement includes a provision entitled "Claims Not Covered by the Policy and Agreement," which states:

> This Agreement does not cover claims Employee may have for workers' compensation, unemployment compensation benefits, or any other claims found not subject to a mandatory pre-dispute arbitration agreement by governing law. Such claims include claims brought under California's Private Attorneys General Act, to the extent required by governing law. Additionally, nothing in this Agreement precludes Employee from filing a charge or from participating in an administrative investigation of a charge before an appropriate government agency such as the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, the National Labor Relations Board or similar state agency.

(Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 26-1.)

The arbitration agreement also includes an express delegation of all questions of validity or enforceability of the agreement, as well as any questions as to the arbitrability of claims, to a court of law:

> Any dispute concerning the validity or enforceability of this Agreement shall be resolved by a court of law. Any dispute over the arbitrability of any particular claim shall be resolved by a court of law. The interpretation and enforceability of this Agreement shall be governed by the Federal Arbitration Act.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

(Arbitration Agreement ¶ 9, Ex. A to Arruda Decl., Dkt. 26-1.)

On January 11, 2023, both Magnit and Twitter moved to compel arbitration (Dkts. 26 and 27). Twitter, although not a signatory to the agreement, has argued that it can enforce the arbitration agreement as a third-party beneficiary, under the doctrine of equitable estoppel, and under a theory of agency. (Dkt. 27 at 7-10.)

## III.   ARGUMENT

### A.   Plaintiff's PAGA Claim Cannot be Compelled to Arbitration

Plaintiff's motion seeking to amend his complaint in order to add a PAGA claim is currently pending (Dkt. 34). Pursuant to Cal. Lab. Code § 2699.3, Plaintiff was required to wait sixty-five (65) days after filing written notice of the claim with the California Labor and Workforce Development Agency ("LWDA") and mailing it to Defendants' general counsel. Now, more than 65 days have elapsed since Plaintiff provided this notice on November 16, 2022, and there is no reason that Plaintiff should not now be granted leave to assert the PAGA claim in his amended complaint.[1]

The arbitration agreement specifically excludes PAGA claims from the scope of covered claims: "Such [excluded] claims include claims brought under California's Private Attorneys General Act, to the extent required by governing law." Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 26-1. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "requires the resolution of two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Esparza v. SmartPay Leasing, Inc., 2017 WL 4390182, at *1 (N.D. Cal. Oct. 3, 2017) (quoting Chiron v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). Here, it is clear that the arbitration agreement does not encompass PAGA claims. See Perez v. DirecTV Group Holdings, LLC, 740 Fed. App'x. 560, 561 (9th Cir. 2018) (holding that statutory claims fell outside the scope of an

---

[1]     Plaintiff notes that his motion to amend his complaint would, if granted, moot Defendants' motions to compel arbitration. See Ohan v. AmeriFirst Financial, Inc., 2015 WL 13757759, at *1 (C.D. Cal. Jan. 20, 2015).  He has proceeded to make the argument here, nonetheless, of why his Amended Complaint should be permitted to proceed in court.

arbitration agreement where the arbitration agreement specifically exempted them from its coverage).

Defendants may argue that the arbitration agreement nevertheless encompasses Plaintiff's PAGA claim, because it excludes PAGA claims from its scope only "to the extent required by governing law." This phrase does nothing to indicate that the parties actually agreed to arbitrate PAGA claims in the first place. PAGA claims are not listed in Paragraph 2 of the arbitration agreement, which sets forth the "Claims Covered by this Agreement," listing numerous other California statutes specifically. See Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 26-1. Nor is PAGA included in the Class and Collective Action Waiver in Paragraph 4 of the arbitration agreement. See Arbitration Agreement ¶ 4, Ex. A to Arruda Decl., Dkt. 26-1. Literally the only mention of PAGA in the arbitration agreement is in the paragraph listing claims that are **excluded** from the agreement's scope. It would be manifestly wrong for the Court to construe this arbitration agreement to encompass PAGA claims where the only mention of PAGA was in the subsection listing claims NOT covered.

Furthermore, even if the Court were to conclude that the carveout of "to the extent required by governing law" suffices to indicate an implicit agreement to arbitrate PAGA claims (it should not), the Court would still not be permitted to compel the entirety of Plaintiff's PAGA claim to arbitration. The California Supreme Court held in Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 384-88 (2014), that arbitration agreements may not waive PAGA claims wholesale. See also Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425, 435 (9th Cir. 2015) (holding that "pre-dispute agreements to waive PAGA claims are unenforceable under California law," because "allowing employees to waive the right to bring PAGA actions would disable one of the primary mechanisms for enforcing the Labor Code," and that "because such an agreement has as its object, . . . indirectly, to exempt [the employer] from responsibility for [its] own . . . violation of law, it is against public policy") (citing Iskanian, 59 Cal. 4th at 383).

While the United States Supreme Court overruled aspects of Iskanian in its recent decision in Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1924-25 (2022), Viking

1    River does not save Defendants' argument. In <u>Viking River</u>, the Supreme Court held that the

2    FAA preempted <u>Iskanian</u>'s holding that the **individual** aspect of a PAGA claim (*i.e.*, an

3    employee seeking to recover PAGA penalties individually) cannot be compelled to arbitration.

4    <u>Id.</u> <u>Viking River</u> **did not**, however, displace <u>Iskanian</u>'s holding that the **representative** aspect of

5    a PAGA claim (*i.e.*, an employee acting on behalf of the State of California representing other

6    employees) cannot be waived by an arbitration agreement as a matter of California public policy.

7    <u>See</u> <u>id.</u>; <u>see also</u> <u>Martinez-Gonzalez v. Elkhorn Packing Co., LLC</u>, --- F. Supp. 3d ---, 2022 WL

8    10585178, at \*11 (N.D. Cal. Oct. 18, 2022) (summarizing <u>Viking River</u>'s holding). Thus, even if

9    the individual portion of Plaintiff's PAGA claim can be compelled to arbitration, the

10    representative portion of the PAGA claim cannot be.[2] <u>See</u> <u>Martinez-Gonzalez</u>, 2022 WL

11    10585178, at \*11.

12         And while <u>Viking River</u> ultimately concluded that the plaintiff did not have standing to

13    advance the representative portion of the PAGA claim in court where the individual portion of

14    the PAGA claim had been compelled arbitration, <u>see</u> <u>Viking River</u>, 142 S. Ct. at 1925, it is now

15    an open question of law in California whether the Supreme Court accurately construed PAGA's

16    standing requirement. In her <u>Viking River</u> concurrence, Justice Sotomayor acknowledged that

17    the <u>Viking River</u> court may have interpreted California law incorrectly on this point, and that the

18    state courts are free to correct this non-binding mischaracterization. <u>See</u> 142 S. Ct. at 1925-26

19    (Sotomayor, J., concurring). As such, this very question (whether a plaintiff can pursue the

20    representative portion of a PAGA claim in court even if the individual portion of the claim has

21    been compelled to arbitration) is currently pending before the California Supreme Court in

22    <u>Adolph v. Uber Technologies</u>, S274671, Order Granting Review (Cal. Aug. 1, 2022). At the very

23    least, this case should be stayed until the California Supreme Court has had the opportunity to

---

[2]      It is especially clear that the representative portion of Plaintiff's PAGA claim may not be compelled to arbitration, because the arbitration agreement states that the "arbitrator may not . . . preside over any form of a class, collective, or representative proceeding . . . ." Arbitration Agreement ¶ 4, Ex. A to Arruda Decl., Dkt. 26-1. Compelling the representative portion of Plaintiff's PAGA claim to arbitration would be tantamount to waiver.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

address the question in <u>Adolph</u>. Indeed, the court in <u>Martinez-Gonzalez</u>, recently took this approach. 2022 WL 10585178, at *12 ("[T]he California Supreme Court has taken up the issue of statutory standing in the pending case <u>Adolph</u> . . . . Accordingly, the Court will stay the representative PAGA claims pending further legal developments.").

At bottom, the arbitration agreement does not purport to encompass PAGA claims. But even if it did, Plaintiff's PAGA claim could not be compelled to arbitration in its entirety. The Court should permit the amendment of the Complaint to assert Plaintiff's PAGA claim, which then can proceed in this forum.

### B.   Twitter's Conduct Demonstrates that it does not Actually Intend to Arbitrate These Claims

As the Court knows, this case was not filed in a vacuum. In addition to this matter, the Court has before it the matter of <u>Cornet et al. v. Twitter, Inc.</u>, Civ. Act. No. 3:22-cv-06857 (N.D. Cal.). The plaintiffs in <u>Cornet</u>, who are represented by the same counsel as Plaintiff here, filed their complaint on November 3, 2022. On January 24, 2023, the Court designated this matter and <u>Cornet</u> as related (Dkt. 30), and on January 25, 2023, this case was reassigned from Judge Thompson to this Court (Dkt. 32).

Twitter's conduct with respect to the <u>Cornet</u> plaintiffs and putative class members makes clear that, while Twitter claimed to prefer the arbitral forum for resolving disputes brought by its former employees, it does not genuinely intend to participate in the arbitration process with its employees in good faith.  Instead, it used arbitration as a ruse, hoping it could avoid facing the claims of so many employees.

In <u>Cornet</u>, the Court granted Twitter's motion to compel the claims of the original five named plaintiffs to arbitration on January 13, 2023.[3] <u>See</u> <u>Cornet v. Twitter, Inc.</u>, 2023 WL 187498, at *1-3 (N.D. Cal. Jan. 13, 2023). Although those five plaintiffs immediately attempted

---

[3]     The plaintiffs whose claims were compelled to arbitration are Emmanuel Cornet, Justine De Caires, Grae Kindel, Alexis Camacho, and Jessica Pan. <u>Cornet</u>, 2023 WL 187498, at *3. The claims of the added named plaintiffs, Emily Kim, Miguel Barreto, and Brett Menzies Folkins, will remain in court because they opted out of their arbitration agreements with Twitter.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

to initiate arbitrations, Twitter has not participated in the process and has stated that it will not follow the direction of JAMS, the arbitration provider specified in most of the Twitter-drafted arbitration agreements.  And, in addition to those five plaintiffs, the undersigned counsel have filed more than 1,000 other arbitration demands against Twitter, which Twitter is also attempting to avoid.

Despite having demanded that employees who did not opt out of arbitration must pursue any claims against it in arbitration, when these 1,000+ employees filed their demands, Twitter argued that they should not be permitted to proceed with their claims unless they can produce a signed copy of their arbitration agreement.  When Plaintiffs' counsel pointed out that it was Twitter that wanted arbitration, and that Twitter would obviously have better access to those signed agreements, Twitter remained steadfast that no employee should be allowed to arbitrate if they did not produce their signed agreement.[4] (Email Chain, Ex. 1 to Liss-Riordan Decl., Dkt. 36)

For the named plaintiffs in <u>Cornet</u>, as well as Abhijit Mehta (who did not opt out of arbitration and was a named plaintiff in the case <u>Borodaenko v. Twitter, Inc.</u>, Civ. Act. No. 4:22-cv-07226-HSG (N.D. Cal.) (a case raising FMLA and related claims)), Twitter had already produced their arbitration agreements in moving to compel arbitration.  JAMS thus attempted to initiate the cases of those plaintiffs whose arbitration agreement specified JAMS as the arbitration provider (plaintiffs Cornet, De Caires, and Pan).  After receiving the Claimants' initial filing fees, JAMS billed Twitter for its initial filing fees and specified that payment was due upon receipt of the invoice. (JAMS Invoices, Ex. 2 to Liss-Riordan Decl., Dkt. 36.) However, more than two weeks after receiving that invoice, Twitter has not paid the fees and has defiantly stated that it does not intend to follow JAMS' order regarding payment.  (Email Chain, Ex. 3 to

---

[4]    Plaintiffs' counsel have now obtained hundreds of signed agreements from their clients, which have been submitted to JAMS. (Liss-Riordan Decl. ¶ 4, Dkt. 36) They look forward to seeing if Twitter will now engage in the arbitration process for these claimants.  For those clients who do not have their signed agreements, Plaintiffs will file these claims in court if Twitter continues to insist that all employees produce their own signed arbitration agreement in order to access the arbitral process.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS

Liss-Riordan Decl., Dkt. 36.)

For the other plaintiffs whose agreements did not specify JAMS as an arbitration provider, but instead provided that the parties should agree on their own to arbitrators (Cornet plaintiffs Camacho and Kindel and Borodaenko plaintiff Mehta), Twitter has not engaged with Plaintiffs' counsel in trying to agree to arbitrators.  After Twitter noted that JAMS was not included on their agreements to administer the arbitrations and stated that it did not want to use JAMS for their cases, Plaintiffs' counsel promptly proposed arbitrators and asked Twitter to respond to the suggestions the following week. (Liss-Riordan Decl. ¶¶ 9-10, Dkt. 36; Email Chain, Ex. 4 to Liss-Riordan Decl., Dkt. 36.)  Twitter simply ignored Plaintiffs' counsel's communication, has not responded to the proposals, and has not even indicated (as Plaintiffs' counsel requested) when it would respond.  (Liss-Riordan Decl. ¶¶ 9-10, Dkt. 36; Email Chain, Ex. 4 to Liss-Riordan Decl., Dkt. 36.)

It is clear from this conduct already that Twitter does not intend to use arbitration as a meaningful substitute for court proceedings for its former employees to pursue their legal claims. The Supreme Court has held that arbitration may be used as an alternative to court for employment claims, but only if employees can actually pursue their claims there. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991). Twitter undoubtedly intends to use arbitration as a game to prevent its more than 1,000 former employees who want to pursue legal claims against it from seeking justice.

Twitter's conduct here echoes that which Judge Alsup admonished in Abernathy v. DoorDash, Inc., 438 F. Supp. 3d 1062, 1067-68 (N.D. Cal. 2020):

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid

9

its duty to arbitrate. This hypocrisy will not be blessed, at least by this order. Id.

It is well established that a defendant can waive arbitration by acting "inconsistently with a right to arbitrate." In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004); see also Marlyn Nutraceuticals, Inc. v. Improvita Health Products, Inc., 2008 WL 5068935 (D. Ariz. Nov. 25, 2008) ("Inconsistency usually is found when one party engages in *conduct preventing arbitration*...") (emphasis added). Thus, courts have held that where a party seeks to frustrate the arbitration process after succeeding in compelling arbitration, that party has waived its right to arbitrate and cannot then move to enforce the underlying arbitration agreement. See Brown, 430 F.3d at 1012 (stating in dicta that court "would have no difficulty finding that [defendant] waived its right to arbitrate" where defendant "did not respond to . . . AAA letters, nor did it pay its share of the filing fee"). This situation usually arises where a defendant refuses to pay for arbitration after compelling it. See Pre-Paid Legal Servs., Inc. v. Cahill, 786 F.3d 1287, 1288–89, 1299 (10th Cir 2015.), cert. denied, 136 S. Ct. 373 (2015) (court did not abuse its discretion in allowing claims to proceed in court where the defendant compelled arbitration and then refused to pay AAA fees); Stanley v. A Better Way Wholesale Autos, Inc., 20189 WL 3872156, at *7 (D. Conn. Aug. 15, 2018) (finding waiver of arbitration where defendants failed to pay AAA fees or respond to AAA notices); Garcia v. Mason Contract Prod., LLC, 2010 WL 3259922, at *1 (S.D. Fla. Aug. 18, 2010) (granting Rule 60(b) motion to reopen case where defendant compelled arbitration but then failed to pay the required fees); Spano v. V & J Nat'l Enterprises, LLC, 2017 WL 3738555, at *12 (W.D.N.Y. Aug. 30, 2017); Nadeau v. Equity Residential Props. Mgmt. Corp., 2017 WL 1842686 (S.D.N.Y. May 5, 2017) (where defendant did not pay its filing fee and the AAA administratively terminated the case, plaintiff was permitted to pursue a subsequently filed class action suit in court).

This Court should likewise not countenance Twitter's ploy to use arbitration, not as an alternative to court, but as a ruse to try thwart its former employees' claims from proceeding in any forum.  At least as long as Twitter does not cooperate in arbitrating the claims of the 1,000+

Twitter employees who have already attempted to vindicate their rights in arbitration, the Court should not grant this request to compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to compel arbitration.  There is no question that Plaintiff's PAGA claim would need to proceed in court. And, given Twitter's clear intent to use arbitration as a method of avoiding facing claims such as the ones Plaintiff has brought here, the Court should not play along with that game by allowing Plaintiff's non-PAGA claims to be compelled to arbitration as well.


Respectfully submitted,


FRANCISCO RODRIGUEZ, on behalf of himself
and all others similarly situated,

By his attorneys,

 /s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; tfowler@llrlaw.com


Dated:        February 8, 2023

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Pro Unlimited, Inc. and Twitter, Inc. via the CM/ECF system on February 8, 2023.

Dated: February 8, 2023

By:     /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S MOTION TO COMPEL ARBITRATION AND STRIKE
AND/OR DISMISS CLASS CLAIMS; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF
PLAINTIFF'S INDIVIDUAL CLAIMS AND STRIKE AND/OR DISMISS CLASS CLAIMS