Kurt A. Kappes (SBN 146384)
Ashley Farrell Pickett (SBN 271825)
Bryan W. Patton (SBN 294910)
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Email: kappesk@gtlaw.com
farrellpicketta@gtlaw.com
pattonbw@gtlaw.com
TEL:   310-586-7700
FAX:   310-586-7800

Attorneys for Defendant
MAGNIT, LLC F/K/A/PRO UNLIMITED, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGUEZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC. and PRO UNLIMITED, INC.,<br><br>Defendants. | CASE NO. 3:22-cv-7222-JD<br><br>Assigned to The Honorable James Donato<br><br>**DEFENDANT MAGNIT, LLC F/K/A PRO UNLIMITED, INC.'S  NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   April 6, 2023<br>Time:  10:00 a.m.<br>Dept:   Courtroom 11 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on April 6, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Magnit, LLC f/k/a Pro Unlimited, Inc. (herein, "Magnit") will and hereby does move the Court for an order compelling Plaintiff Francisco Rodriguez to arbitrate his individual claim under the Private Attorneys General Act ("PAGA") and to dismiss the balance of this action.

Good cause exists to compel Plaintiff's individual PAGA claim to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which applies to workers engaged in interstate commerce. On November 17, 2021, Plaintiff signed an "Arbitration Policy and Agreement" in which he expressly agreed in writing to resolve his employment-related claims exclusively in arbitration before the American Arbitration Association ("AAA") on an individual basis, and specifically agreed that the arbitrator shall not have the power or jurisdiction to hear those claims as a class action.

Moreover, once Plaintiff's individual PAGA claim is compelled to arbitration, the U.S. Supreme Court has explained that Plaintiff lacks statutory standing to pursue a representative claim for violations allegedly experienced by other aggrieved employees. *See Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1925 (2022). As such, the remainder of this action should be dismissed.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Rose Arruda, all pleadings in this action, and such other written and oral argument as the Court may entertain on this Motion.

Respectfully submitted,

Dated: March 7, 2023                GREENBERG TAURIG, LLP

By      */s/ Ashley Farrell Pickett*
        Ashley Farrell Pickett
        Attorneys for Defendant
        MAGNIT, LLC F/K/A/ PRO UNLIMITED, INC.

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................................ 2

III. PLAINTIFF'S INDIVIDUAL PAGA CLAIM IS DIVISIBLE AND MUST BE ORDERED TO INDIVIDUAL ARBITRATION. ................................................................ 2

    A. The Parties' Arbitration Agreement is Governed by the FAA. ............................. 3
    B. Plaintiff and Defendant Entered Into a Valid Arbitration Agreement. ................. 4
    C. Plaintiff is Legally Required to Arbitrate His Individual PAGA Claim. .............. 5

        1. The FAA Requires that PAGA Claims are Divisible, Individual and Arbitrable ............................................................................................... 5
        2. Plaintiff's Individual PAGA Claim Falls within the Scope of the Agreement. ............................................................................................ 8

    D. Though It is Not Defendant's Burden to Address Here, Plaintiff in Fact Has No Defense to Enforcement of the Arbitration Agreement. ....................................... 9

        1. The Agreement is Not Procedurally Unconscionable. ............................. 9
        2. The Agreement is Not Substantively Unconscionable. ......................... 10

    E. Once Plaintiff's Individual PAGA Claim is Compelled to Arbitration, the Balance of This Action Should Be Dismissed. ................................................................. 12

IV. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allen v. McCurry*,
   449 U.S. 90 (1980) .................................................................................................................. 12, 13

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ........................................................................................................................ 3

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 3, 6, 11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .................................................................................................... 1, 3

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ........................................................................................................ 3

*Epic Sys. Corp. v. Lewis*,
   200 L. Ed. 2d 889 (U.S. 2018) ....................................................................................................... 3

*Ferguson v. Corinthian Colleges, Inc.*,
   733 F.3d 928 (9th Cir. 2013) .......................................................................................................... 8

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ........................................................................................................................ 4

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ...................................................................................................................... 1, 3

*Montana v. United States*,
   440 U.S. 147 (1979) .................................................................................................................. 12, 13

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983), *superseded by statute on other grounds* ........................................................ 2, 8

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ........................................................................................................ 8

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) .................................................................................................. 9, 13

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .......................................................................................................................... 3

*Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*,
   559 U.S. 662 (2010) ............................................................................................................... 5, 6, 7

*U.S. v. Sutcliffe*,
   505 F.3d 944 (9th Cir. 2007) .......................................................................................................... 3

*Urbino v. Orkin Servs. of Cal., Inc.*,
   726 F.3d 1118 (9th Cir. 2013) ........................................................................................................ 5

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022) .................................................................................. 1, 5, 6, 7, 13

**State Cases**

*Armendariz v. Found. Health Psychcare Services, Inc.*,
    24 Cal. 4th 83 (2000) ........................................................................................ 9, 10, 11

*Cronus Invs., Inc. v. Concierge Servs.*,
    35 Cal. 4th 376 (2005) ................................................................................................. 3

*Lagatree v. Luce, Forward, Hamilton & Scripps*,
    74 Cal. App. 4th 1105 (1999) ..................................................................................... 10

*Macaulay v. Norlander*,
    12 Cal. App. 4th 1 (1992), *opinion modified* (Jan. 5, 1993) ........................................ 4

*Metters v. Ralphs Grocery Co.*,
    161 Cal. App. 4th 696 (2008) ....................................................................................... 4

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ................................................................................................. 9

*Robinson v. S. Counties Oil Co.*,
    53 Cal. App. 5th 476 (2020) ....................................................................................... 12

*Roman v. Super. Ct.*,
    172 Cal. App. 4th 1462 (2009) ..................................................................................... 9

*Roman v. Super. Ct.*,
    172 Cal. App. 4th at 1470–71 ..................................................................................... 10

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ..................................................................................... 4

*Villacres v. ABM Industries Inc.*
    189 Cal. App. 4th 562 (2010) ............................................................................... 12, 13

**Federal Statutes**

9 U.S.C. § 2 ........................................................................................................................ 3

15 U.S.C. § 7001 ................................................................................................................ 4

15 U.S.C. § 7001(a) ........................................................................................................... 5

**State Statutes**

Cal. Civ. Code § 1633.7(a) ................................................................................................ 5

Cal. Lab. Code § 2699(a) ................................................................................................. 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff Francisco Rodriguez ("Plaintiff") was formerly an employee of Defendant Magnit, LLC f/k/a Pro Unlimited, Inc. ( hereinafter, "Magnit"). Plaintiff agreed to arbitrate each claim[1] he is asserting in this action on an individual basis via his "Arbitration Policy and Agreement" (the "Agreement"), including his individual claim under the Private Attorney General Act ("PAGA"). [*See* Declaration of Rose Arruda ("Arruda Decl."), ¶ 7; Ex. A.]

Under the Federal Arbitration Act ("FAA"), the Court must compel arbitration where (1) "there is an agreement to arbitrate between the parties" and (2) "the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Both elements are met here.

Plaintiff's PAGA claim arises out of his employment with Magnit and the services he provided for Magnit's client, Twitter.[2] The Agreement requires Plaintiff to submit those clams to binding, individual arbitration. As such, these claims should be compelled to arbitration under the Federal Arbitration Act ("FAA").

Further, in *Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1925 (2022), the U.S. Supreme Court held that PAGA claims *are* divisible into individual PAGA claims and collective representative PAGA claims, and a party that has agreed to arbitrate all individual employment-related claims may be compelled to arbitrate their individual PAGA claims on an individual basis. The Supreme Court further held that collective representative PAGA claims that are not subject to arbitration, must be dismissed. As

---

[1] Magnit has already filed a motion to compel arbitration of Plaintiff's claims for (i) violation of the federal WARN Act, (ii) violation of the California WARN Act, and (iii) failure to pay all wages at termination. [Dkt. 26.]  The sole change to Plaintiff's First Amended Complaint was the addition of a fourth claim under the Private Attorneys General Act ("PAGA").  As such, the parties have stipulated to keep the prior briefing in place and limit this motion to the arbitrability of Plaintiff's PAGA Claim. [Dkts. 38, 40.]

[2] The Agreement encompasses claims that Plaintiff may have against Magnit "or any of its clients for whom [Plaintiff] performed work." [Arruda Decl., Ex. A § 2.]  This includes any claims Plaintiff may have relating to services he provided to Twitter.

such, once Plaintiff's individual PAGA claim is compelled to arbitration, the balance of his PAGA claim must be dismissed.

## II. FACTUAL BACKGROUND

Plaintiff was employed by Magnit and provided services to Magnit's client, Twitter. [Arruda Decl., ¶ 7.] As part of his onboarding process, Magnit provided Plaintiff with the Agreement and asked him to review and sign the Agreement within 10 days of receipt. [Arruda Decl., Ex. A. at 1.]

The Agreement expressly covers "all claims or causes of action that the Employee may have against the Company or any of its clients for whom Employee performed work" including, but not limited to "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the California Labor Code[.]" [*Id.* § 2.] The Agreement also contains a class action waiver and makes clear that Plaintiff may only arbitrate his claims on an individual basis:

> [N]either the Employee nor the Company shall have a right to . . . (d) file or participate in a representative or collective capacity or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement. . . There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding ("Class Action Waiver").

[*Id.* § 4.]

On February 21, 2023, Plaintiff filed a First Amended Complaint adding a PAGA claim. [Dkt. 41 at 7-8.] Plaintiff PAGA claim is premised solely on allegations relating to Plaintiff's termination from Magnit and/or its client, Twitter. [*Id.*]

## III. PLAINTIFF'S INDIVIDUAL PAGA CLAIM IS DIVISIBLE AND MUST BE ORDERED TO INDIVIDUAL ARBITRATION.

Plaintiff's individual PAGA claims must be referred to arbitration. The liberal federal policy favoring arbitration agreements creates a strong presumption in favor of enforcement, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), *superseded by statute on other grounds*. "[T]he Arbitration Act requires courts 'rigorously' to 'enforce arbitration' agreements according to their terms,

including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 200 L. Ed. 2d 889, 899 (U.S. 2018) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

In ruling on a motion to compel arbitration, the Court's role is to determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id*. (citation omitted).

### A. The Parties' Arbitration Agreement is Governed by the FAA.

As an initial matter, the FAA governs the parties' Agreement. The first step to determining whether or not an arbitration agreement is governed by the FAA is to review the plain language of the arbitration agreement; only if the arbitration agreement is silent on the issue should we examine whether or not the contract involves interstate commerce. *See, e.g. Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005) (finding that parties may designate the application of the FAA in their arbitration agreement.). Therefore, this Court's analysis can (and should) end after reviewing the plain language of the Agreement as it specifically cites that it is governed by the FAA. [Arruda Decl., Ex. A § 9.]

Moreover, even if the Agreement were silent on governing law, the FAA would still apply because the Agreement implicates interstate commerce. *See* 9 U.S.C. § 2. The Agreement governs Plaintiff's rendering of services to Magnit's client, Twitter, a platform for internet content reaching individuals across the United States. *See U.S. v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("the Internet is an instrumentality and channel of interstate commerce."). For this independent reason, the FAA governs the Agreement.

### B. Plaintiff and Defendant Entered Into a Valid Arbitration Agreement.

Whether the parties have agreed to arbitrate is governed by state-law principles of contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A party's signature on a contract is a manifestation of assent to its terms. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588–89 (2005) (finding a party's signing a contract manifests assent to its terms, and that a party's failure to actually read the contract's provisions is not a defense to enforcement of its terms); *Macaulay v. Norlander*, 12 Cal. App. 4th 1, 6 (1992), *opinion modified* (Jan. 5, 1993) (finding respondents "were bound by the provisions of the client agreement regardless of whether they read it or were aware of the arbitration clause when they signed the document").

Here, as shown, Plaintiff agreed to the terms and conditions of the Agreement, including the binding arbitration provision and class action waiver. [Arruda Decl., Ex. A.] The Agreement was clear on its face—titled "**ARBITRATION POLICY AND AGREEMENT**"—and the very first words of the Agreement are: "**READ THIS AGREEMENT CAREFULLY BECAUSE YOUR SIGNATURE BELOW CONFIRMS THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT**." [*Id.* at 1] Specifically, Plaintiff electronically signed the Agreement which, just prior to his signature, again required Plaintiff to confirm his understanding of the Agreement: "I, the undersigned employee, acknowledge that I have received a copy of PRO Unlimited, Inc.'s Arbitration Policy and Agreement, that I have been provided an opportunity to read the Agreement, and that I agree to its terms." [*Id.* at 5.]

By electronically signing the Agreement, Plaintiff entered into a legal agreement to arbitrate his claims. *See Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701 (2008) ("ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms"). The fact that the Agreement was signed electronically and not physically is of no legal consequence, as the law does not distinguish between electronic and physical signatures.

Rather, under both federal and California law, one can enter into a valid contract by electronically signing or acknowledging an agreement (*e.g.*, clicking a box or typing one's name) and such electronic signature must be afforded the same weight and effect as a physically written signature. The Electronic Signatures in the Global and National Commerce Act ("E-SIGN"), 15 U.S.C. § 7001 *et seq.*, validates the

use of electronic signatures, electronic records, and electronic agents. The statute provides that "notwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce – (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity or enforceability solely because it is in electronic form; and (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation." 15 U.S.C. § 7001(a). Further, under California Civil Code § 1633.7(a), an electronic signature has the same legal effect as a handwritten signature. Simply, courts do not distinguish between pen-and-ink signatures and electronic signatures of the type at issue here. As such, Plaintiff's electronic signature has the same legal effect as if Plaintiff had physically signed his name.

Thus, by signing the Agreement, Plaintiff plainly and objectively communicated his consent to be bound by its terms.

### C.  Plaintiff is Legally Required to Arbitrate His Individual PAGA Claim.

#### 1.  The FAA Requires that PAGA Claims are Divisible, Individual and Arbitrable

In *Viking River*, the U.S. Supreme Court held that PAGA – passed in 2004 – created <u>individual</u> claims that, in some cases, may be joined with claims concerning other potential "aggrieved employees." *See Viking River Cruises,* 142 S. Ct. at 1912 (rejecting mandatory "claim joinder" as "unduly circumscrib[ing] the freedom of parties to determine 'the issues subject to arbitration' and the 'rules by which they will arbitrate'") (citing *Stolt-Nielsen S. A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 684 (2010)); *id*. at 1913 (rejecting lower courts' conclusions that "PAGA actions cannot be divided into individual actions"); *id.* at 1924 (recognizing parties' ability to "arbitrate 'individual' PAGA claims based on personally sustained violations"); *see also Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (PAGA claims involve "separate and distinct claims" of individual employees addressing "rights . . . held individually" by each person represented on the claim, because a "defendants' [Labor Code] obligation to them is not as a group" but as "individuals severally").

Specifically, applying Section 2 of the FAA and principles of federal preemption, the U.S. Supreme Court held that California state court holdings that a plaintiff's PAGA claims must be joined

with the claims concerning other aggrieved employees are (i) wrong, and, (ii) moreover, impermissibly violate the FAA where a litigant has signed an agreement to arbitrate his or her claims. *Id*. at 1925 ("We hold that the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual actions through an agreement to arbitrate.").

Reconfirming long established precedent, the Supreme Court reiterated that claims can be aggregated in arbitration only if there is a clear agreement between the parties to do so. *Id*. at 1912 ("'a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so'") (quoting *Stolt-Nielsen*, 559 U.S. at 684). This requires "an affirmative 'contractual basis for concluding that the party *agreed* to do so.'" *Id*. at 1923 (citing *AT&T Mobility LLC v. Conception*, 563 U.S. 333, 347-48 (2011)).

Relying on its prior authority, the U.S. Supreme Court articulated why the FAA requires this outcome. Absent such express agreement to a collective action:

> [t]he "'shift from bilateral arbitration to class-action arbitration'" mandates procedural changes that are inconsistent with the individualized and informal mode of arbitration contemplated by the FAA. [*AT&T Mobility LLC*, 563 U.S.] at 347 (quoting *Stolt-Nielsen,* 559 U.S., at 686). As a result, class procedures cannot be imposed by state law without presenting unwilling parties with an unacceptable choice between being compelled to arbitrate using procedures at odds with arbitration's traditional form and forgoing arbitration altogether. Putting parties to that choice is inconsistent with the FAA.

*Id.* at 1918. The U.S. Supreme Court made the point again:

> [O]ur cases hold that States cannot coerce individuals into forgoing arbitration by taking the individualized and informal *procedures* characteristic of traditional arbitration off the table. Litigation risks are relevant to that inquiry because one way in which state law may coerce parties into forgoing their right to arbitrate is by conditioning that right on the use of a procedural format that makes arbitration artificially unattractive.

*Id.* at 1912.

Conversely, a *prohibition* on "division of PAGA actions into constituent [individual claims] unduly circumscribes the freedom of parties . . . in a way that violates the fundamental principle that arbitration is a matter of consent." *Id.* at 1923 (quoting *Stolt-Nielsen*, 559 U.S., at 684). "For that reason, state law cannot condition the enforceability of an arbitration agreement on the availability of a procedural mechanism that would permit a party to expand the scope of the arbitration by introducing claims that the parties did not jointly agree to arbitrate. Rules of claim joinder can function in precisely that way." *Id.* Applying that specifically in the context of PAGA, the Court concluded:

> The effect of *Iskanian's* rule mandating this mechanism is to coerce parties into withholding PAGA claims from arbitration…. *Iskanian's* indivisibility rule effectively coerces parties to opt for a judicial forum rather than "forgo[ing] the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution." *Stolt-Nielsen*, 559 U.S., at 685; see also *Concepcion*, 563 U.S., at 350-351. **This result is incompatible with the FAA**.

*Id.* at 1924 (emphasis added); *see also id*. at 1923 ("a conflict between PAGA's procedural structure and the FAA does exist, and … it derives from the statute's built-in mechanism of claim joinder.").

Here, the Parties agreement does not permit arbitration of collective actions. Rather, it provides:

> [N]either the Employee nor the Company shall have a right to . . . (d) file or participate in a representative or collective capacity or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement. . . There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or as a member in any such class or collective proceeding ("Class Action Waiver").

[Arruda Decl., ¶ 7, Ex. A § 4.]

Where, as here, the parties' (A) have agreed to arbitrate employment-related claims, but (B) have not expressly agreed to arbitrate an employment claim – including PAGA – on a collective basis, the claim must be arbitrated on an individual basis only. This is the clear and unambiguous holding of the U.S. Supreme Court. This holding is premised on the PAGA, the FAA, and U.S. Supreme Court precedents relating to federal preemption.

         **2.**       **Plaintiff's Individual PAGA Claim Falls within the Scope of the Agreement.**

The agreement to arbitrate covers all of Plaintiff's claims. "[B]ecause the scope of an arbitration agreement is a matter of contract, [the Court] must look to the express terms of the agreements at issue" to determine whether the parties intended the dispute at issue to be arbitrated. *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937–38 (9th Cir. 2013); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (same).

Here, there can be no doubt that Plaintiff's individual PAGA claim is subject to a binding agreement to arbitrate. The Agreement expressly covers "all claims or causes of action that the Employee may have against the Company or any of its clients for whom Employee performed work" including, but not limited to "claims for violation of any law, statute, regulation, ordinance or common law, including . . . the California Labor Code[.]" [Arruda Decl., Ex. A § 2.]  This provision fully encompasses Plaintiff's PAGA claim premised on his employment with Magnit, the services that he provided to Magnit's client, Twitter, and the cessation of both of those relationships.  The Agreement requires that Plaintiff arbitrate the claims he brings in this action.

Magnit expects that Plaintiff will argue that PAGA claims are expressly excluded under the Agreement.  Not so.  The Agreement specifically states that it excludes "claims brought under the California's Private Attorneys General Act, to the extent required by governing law." [Arruda Decl., Ex. § 3.]  As outlined in depth previously, the U.S. Supreme Court has explained that governing law (the FAA) requires the divisibility of individual PAGA claim, which must be arbitrated according to the terms of the parties' Agreement. [*See* Section III.B.2]

**D.    Though It is Not Defendant's Burden to Address Here, Plaintiff in Fact Has No Defense to Enforcement of the Arbitration Agreement.**[3] Magnit's burden is to show that Plaintiff entered into an arbitration agreement concerning the claims he pursues. Magnit has met this burden because Plaintiff plainly and objectively communicated his consent to the Agreement that governs each of Plaintiff's claims. Should Plaintiff, however, subsequently attempt to establish that the Agreement is unenforceable due to unconscionability, such an argument would fail. "In order to establish [a defense of unconscionability], the party opposing arbitration must demonstrate that the contract . . . is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (emphasis added). The Agreement is neither. As explained further below, the Agreement is bilateral (i.e., requires the arbitration of claims that either side may have against the other), and it goes far beyond the minimum requirements that the courts utilize in assessing unconscionability.

**1.    The Agreement is Not Procedurally Unconscionable.**

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . ... Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1469 (2009) (citations and quotation marks omitted). California courts acknowledge that employer-employee arbitration agreements often have some elements of adhesion due to the unavoidable nature of the employer-employee relationship. Case

---

[3] We note that Plaintiff already filed an opposition to Magnit's motion to compel arbitration of his other three claims and did not challenge that the Agreement covers all claims arising out of his employment, nor did Plaintiff raise any challenges regarding unconscionability. [Dkt. 35.] This effectively concedes that the Agreement is not unconscionable. *See Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence"); *Carrillo v. Citimortgage, Inc.* No. CV 09-2404 AHM (CWx), 2009 WL 4723616, at *2 (C.D. Cal. Dec. 2, 2009) ("Plaintiffs fail to address the preemption argument in their opposition effectively conceding the point").

law, however, makes it clear that this fact—by itself—does not invalidate such arbitration agreements. *See Armendariz v. Found. Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 115 (2000) ("arbitration is favored in this state" even if "[i]n the case of preemployment arbitration contracts, the economic pressure exerted by employers ... may be particularly acute ... ."). Thus, courts routinely enforce arbitration agreements that are signed by employees so long as they are clearly set forth in a conspicuous manner. *See*, *e.g. Roman v. Super. Ct.*, 172 Cal. App. 4th at 1470–71 (arbitration agreement in employment application enforceable where it was conspicuous); *see also Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("the cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

Here, the Agreement was conspicuously titled **"ARBITRATION POLICY AND AGREEMENT."** [Arruda Decl. at p. 1.] The very first words of the Agreement put Plaintiff on additional notice that he needed to review the Agreement closely: "**READ THIS AGREEMENT CAREFULLY BECAUSE YOUR SIGNATURE BELOW CONFIRMS THAT YOU HAVE READ, UNDERSTAND AND AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT.**" [*Id.*] Plaintiff thereafter attested to his understanding of the Agreement just prior to his signature: "I, the undersigned employee, acknowledge that I have received a copy of PRO Unlimited, Inc.'s Arbitration Policy and Agreement, that I have been provided an opportunity to read the Agreement and that I agree to its terms." [*Id.* at p. 5.] Magnit also made clear that Plaintiff could have up to 10 days of time for additional review of the Agreement before signing. [*Id.* at p.1.]

The Agreement was clear on its face and provided Plaintiff ample time to review. Thus, there is no basis upon which Plaintiff can support a finding of procedural unconscionability.

### 2. The Agreement is Not Substantively Unconscionable.

*Armendariz* remains the leading case on the basic standards for assessing whether an arbitration agreement signed by an employee is unconscionable under California law. In that case, the California Supreme Court explained that the inquiry concerning substantive unconscionability focuses on whether the arbitration agreement is "overly harsh" or leads to "one-sided" results. *Armendariz*, 24 Cal. 4th 83 at 114. In analyzing that question, the court confirmed that a "modicum of bilaterality" is required in the

employment context.

Here, "the Parties mutually agree to the resolution by binding arbitration of all claims or causes of action that the Employee may have against the Company or any of its clients form whom Employee performed work, or the Company against Employee which could be brought in a court of law." [ Arruda Decl., Ex. A, § 2.] Simply, there is nothing unilateral, illusory or even one-sided about the Agreement. It goes well beyond a mere "modicum of bilaterality," and any attempt to recast language that is addressed to the worker in an effort to explain his/her rights as a one-sided obligation to arbitrate is an obvious misreading of the contract.

The *Armendariz* court also confirmed certain minimum requirements for the lawful arbitration of rights pursuant to a mandatory employment arbitration agreement. The court held that such an agreement is enforceable if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Armendariz*, 24 Cal. 4th at 102, abrogated in part by *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). In this case, the Agreement satisfies each of these requirements and contains several *additional* protections for the signing employee as well.

First, it guarantees the neutrality of the arbitration. The Agreement requires that any arbitration be conducted by "a neutral arbitrator, selected by the agreement of the Parties" or by "the strike and ranking method provided for under AAA rules." [ Arruda Decl., ¶ 7, Ex. A § 6(b).]

Second, the Agreement provides for substantial discovery, stating: "nothing in this Agreement or in the AAA Rules shall be interpreted to limit the Parties' right to reasonable discovery." [*Id.* § 6(c).] The Agreement provides at least three depositions, 35 document requests, and 25 interrogatories, but also states that if "the Parties believe this scope of discovery is inadequate . . . the arbitrator shall have discretion to resolve any disagreement concerning the scope of discovery and to allow discovery determined by the arbitrator to be reasonably necessary to the just resolution of the dispute . . ." [*Id.*]

Third, the Agreement states that the arbitrator must "issue a written opinion and award within 30 days of the close of the arbitration hearing, which shall be signed and dated, and which shall generally set forth the reasons for the arbitrator's decision." [*Id.* § 6(d).]

Fourth, the Agreement explicitly states that "[t]he arbitrator shall be permitted to award those remedies and damages that are available under applicable law and that would otherwise be available in a court of law."[*Id.*] Thus, it does not curtail any remedies that would be available in court.

And finally, the Agreement protects Plaintiff from any unreasonable costs of accessing arbitration and the arbitrator's fees or expenses by requiring Magnit to "pay all . . . fees and costs that are unique to the arbitration process, including the arbitrator's fees and administrative fees." [*Id.* § 6(e).] Thus, the Agreement satisfies each of the five factors outlined by the *Armendariz* court and for all these reasons, the Agreement is not procedurally unconscionable.

### E. Once Plaintiff's Individual PAGA Claim is Compelled to Arbitration, the Balance of This Action Should Be Dismissed.

With the *Viking River* Plaintiff's individual PAGA claim ordered to arbitration, the Supreme Court had to grapple with what to do with the would-be joined PAGA claims pertaining to others (the aggrieved employees) that could not be a part of the arbitration forum to which the named plaintiff's individual claims were being sent (given the absence of express consent to collective arbitration).

As a starting point, and as is well-established, a plaintiff cannot pursue the same claim in two fora. Indeed, any attempt to allow a plaintiff to pursue the same claim in two fora would be a fundamental violation of the Constitutional requirement of Due Process of law. *See Montana v. United States*, 440 U.S. 147, 153-154 (1979) ("a right, question or fact distinctly put in issue and directly determined. . . cannot be disputed in a subsequent suit between the same parties or their privies.... To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.") (citations omitted); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"). *See also Villacres v. ABM Industries Inc*. 189 Cal. App. 4th 562, 575 (2010) ("Under the doctrine of [claim preclusion], a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action"; applying this doctrine to PAGA claims); *Robinson v. S. Counties Oil Co.*, 53 Cal. App. 5th 476, 481 (2020) ("The claim preclusion doctrine, formerly called res judicata, prohibits a second suit

between the same parties on the same cause of action.") (quotations omitted).

Further, with the Plaintiff's individual PAGA claim ordered to arbitration, and even putting aside the foregoing Constitutional principles, PAGA itself would not permit maintenance of any suit that attempted to end run these Constitutional principles by first suing/arbitrating on his/her own behalf, and then seeking to sue again, but without actually suing on his/her behalf and instead suing only on behalf of others. In this regard, PAGA's Section 2699(a) articulates the standing requirements of a PAGA action as "a civil action brought by an aggrieved employee **on behalf of himself or herself** ...." Cal. Lab. Code § 2699(a) (emphasis added).[4] But with the individual PAGA action in arbitration, this requirement cannot be fulfilled. And, as noted, any attempt to allow a plaintiff to pursue the same claim in two fora would be a fundamental violation of the Constitutional requirement of Due Process of law. *See e.g., Montana, supra*; *Allen, supra*; *Villacres, supra*; *Robinson, supra.* Thus, the Court held that:

> "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims **once an individual claim has been committed to a separate proceeding**. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action *only by virtue of* **also maintaining an individual claim in that action**. See Cal. Lab. Code Ann. §§2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit."

*Viking River Cruises*, 142 S. Ct. at 1925. Thus, because Plaintiff's individual PAGA claim must be ordered to arbitration, the balance of Plaintiff's PAGA claim must be dismissed as a matter of law.

## IV. CONCLUSION

For the forgoing reasons, Magnit respectfully request that this Court enter an order compelling individual arbitration of Plaintiff's claims. Magnit further requests that the Court dismiss the balance of Plaintiff's PAGA claim its entirety.

---

[4] Though plaintiffs sometimes argue that PAGA's subsection (c) defines its standing requirement, it is actually is a mere definition, which definition is half of PAGA's standing requirement (found in subsection (a)). Subsection (c) defines an "aggrieved employee" concerning which recovery may be had. In contrast, subsection (a) sets forth the standing requirement, and states that a plaintiff must (i) be *both* an "aggrieved employee" (as defined by subsection (c)) *and* (ii) bring the claim "on behalf of himself". Cal. Lab. Code Ann. §§2699(a).

|   |   |   |
|---|---|---|
| 1 |  | Respectfully submitted, |
| 2 | Dated: March 7, 2023 | GREENBERG TRAURIG, LLP |
| 4 | By | /s/ Ashley Farrell Pickett |
|   |  | Ashley Farrell Pickett |
|   |  | Attorneys for Defendant |
| 5 |  | MAGNIT, LLC F/K/A PRO UNLIMITED, INC. |