1  SHANNON LISS-RIORDAN (SBN 310719)
   (sliss@llrlaw.com)
2  THOMAS FOWLER (*pro hac vice* forthcoming)
   (tfowler@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
4  729 Boylston Street, Suite 2000
   Boston, MA 02116
5  Telephone:    (617) 994-5800
6  Facsimile:    (617) 994-5801

7  *Attorneys for Plaintiff Francisco Rodriguez,*
   *on behalf of himself and all others similarly situated*
8

9

                    UNITED STATES DISTRICT COURT
10                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
11

12                                          Case No. 3:22-cv-7222-JD

13  FRANCISCO RODRIGUEZ, on behalf of
    himself and all others similarly situated,
14
                                            **PLAINTIFF'S OPPOSITION TO (1)**
15                 Plaintiff,               **TWITTER'S SUPPLEMENTAL MOTION**
                                            **TO COMPEL ARBITRATION OF**
16          v.                              **PLAINTIFF'S INDIVIDUAL PAGA**
                                            **CLAIM AND DISMISS PLAINTIFF'S**
17  TWITTER, INC. and PRO UNLIMITED, INC.   **REPRESENTATIVE PAGA CLAIM; AND**
                                            **(2) MAGNIT'S MOTION TO COMPEL**
18                 Defendants               **ARBITRATION OF PLAINTIFF'S**
                                            **INDIVIDUAL PAGA CLAIM AND**
19                                          **DISMISS REPRESENTATIVE PAGA**
                                            **CLAIM**
20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

III. ARGUMENT ...................................................................................................... 5

    A.   The Arbitration Agreement Specifically Excludes PAGA Claims from its
        Scope....................................................................................................... 5

    B.   In Any Event, the Representative Portion of Plaintiff's PAGA Claim
        Cannot be Waived by Contract or Compelled to Arbitration and Thus
        Should be Permitted to Proceed in Court................................................ 6

    C.   Twitter Should Not Be Permitted to Compel Arbitration of Plaintiff's
        Claims if It is Does Not Actually Intend to Arbitrate These Claims .................. 13

IV.  CONCLUSION................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

Adolph v. Uber Technologies,
    S274671, Order Granting Review (Cal. Aug. 1, 2022) .................................................. 10, 11

Allen v. McCurry,
    449 U.S. 90 (1980)........................................................................................................ 12

Beal v. Missouri P.R. Corp.,
    312 U.S. 45 (1941)........................................................................................................... 9

Cal. Labor and Workforce Dev. Agency, ex rel. Raymond v. Compucom Sys., Inc.,
    2023 WL 2466236 (E.D. Cal. Mar. 10, 2023) .......................................................... 10

Callahan v. Paychex North America Inc.,
    2022 WL 11902205 (N.D. Cal. Oct. 20, 2022)......................................................... 11

Chiron v. Ortho Diagnostic Sys., Inc.,
    207 F.3d 1126 (9th Cir. 2000) ...................................................................................... 5

Crowley v. Katleman,
    8 Cal. 4th 666 (1994) .................................................................................................. 12

Dominguez v. Sonesta International Hotels Corp.,
    --- F. Supp. 3d ---, 2023 WL 25707 (N.D. Cal. Jan. 3, 2023)................................. 11

Esparza v. SmartPay Leasing, Inc.,
    2017 WL 4390182 (N.D. Cal. Oct. 3, 2017)................................................................ 5

Galarsa v. Dolgen California, LLC,
    --- Cal. Rptr. 3d ---, 2023 WL 2212196 (Feb. 24, 2023) ................................... passim

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991)....................................................................................................... 13

Hansber v. Ulta Beauty Cosmetics, LLC,
    --- F. Supp. 3d ---, 2022 WL 16836627 (E.D. Cal. Nov. 9, 2022) ......................... 11

Hill v. Xerox Business Services, LLC,
    59 F.4th 457 (9th Cir. 2023) ....................................................................................... 13

Huell v. Bevmo Holdings, LLC,
    2023 WL 1823611 (E.D. Cal. Feb. 8, 2023)............................................................. 11

Iskanian v. CLS Transp. Los Angeles, LLC,
    59 Cal. 4th 348 (2014) ............................................................................................. 6, 7

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION
OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA
CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA
CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

Johnson v. Lowe's Home Centers, LLC,
   --- F. Supp. 3d ---, 2022 WL 4387796 (E.D. Cal. Sept. 22, 2022) ........................................ 11

Kim v. Reins International California, Inc.,
   9 Cal. 5th 73 (2020) ...................................................................................................... 8, 9, 12

Magadia v. Wal-Mart Associates, Inc.,
   999 F.3d 668 (9th Cir. 2021) ................................................................................................ 10

Martinez-Gonzalez v. Elkhorn Packing Co., LLC,
   2022 WL 10585178 (N.D. Cal. Oct. 18, 2022)............................................................. 7, 10, 11

Mills v. Facility Solutions Group, Inc.,
   84 Cal. App. 5th 1035 (Nov. 1, 2022) .................................................................................... 9

Montana v. U.S.,
   440 U.S. 147 (1979).............................................................................................................. 12

Perez v. DirecTV Group Holdings, LLC,
   740 Fed. App'x. 560 (9th Cir. 2018) ....................................................................................... 5

Piplack v. In-N-Out Burgers,
   --- Cal. Rptr. 3d ---, 2023 WL 2384502 (March 7, 2023).......................................... 8, 9, 10, 11

Radcliff v. San Diego Gas & Electric Co.,
   --- F. Supp. 3d ---, 2022 WL 4229305 (S.D. Cal. Sept. 12, 2022) ........................................ 11

Robinson v. S. Counties Oil Co.,
   53 Cal. App. 5th 476 (2020) ........................................................................................... 12, 13

Sakkab v. Luxottica Retail North America, Inc.,
   803 F.3d 425 (9th Cir. 2015) .................................................................................................. 6

Shams v. Revature LLC,
   --- F. Supp. 3d ---, 2022 WL 3453068 (N.D. Cal. Aug. 17, 2022) ................................... passim

Thistlewaite v. United Parcel Service, Inc.,
   2022 WL 17578868 (C.D. Cal. Dec. 7, 2022) ...................................................................... 11

Viking River Cruises, Inc. v. Moriana,
   142 S. Ct. 1906 (2022)................................................................................................... passim

Villacres v. ABM Industries Inc.,
   189 Cal. App. 4th 562 (2010) .............................................................................................. 13

**Statutes**

Federal Arbitration Act ("FAA"),
9 U.S.C. §§ 1 *et seq.*........................................................................................... 5, 7

Worker Adjustment and Retraining Notification Act ("WARN Act"),
29 U.S.C. §§ 2101 *et seq.*.......................................................................................... 2

**Other Authorities**

Bennet et al.,
<u>Divide & Concur: Separate Opinions & Legal Change</u>, 103 Cornell L. Rev. 817
(2020) ........................................................................................................................ 9

**Rules**

Cal. Lab. Code §201 ........................................................................................................ 2

Cal. Lab. Code §203 ........................................................................................................ 2

Cal. Lab. Code §227.3 ..................................................................................................... 2

California WARN Act,
Cal. Lab. Code §§ 1400 *et seq.* ................................................................................. 2

Private Attorneys General Act ("PAGA"),
Cal. Lab. Code §§ 2698 *et seq.* ........................................................................ passim

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION
OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA
CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA
CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

# I.      INTRODUCTION

Plaintiff Francisco Rodriguez submits this brief in opposition to both Defendant Twitter, Inc.'s Supplemental Motion to Compel Arbitration and Strike of Plaintiff's Individual PAGA Claim and Dismiss Plaintiff's Representative PAGA Claim (Dkt. 43) and Defendant Magnit, LLC F/K/A/ Pro Unlimited, Inc.'s ("Magnit") Motion to Compel Arbitration of Plaintiff's Individual PAGA Claim and Dismiss Representative PAGA Claim (Dkt. 42).

After Defendants submitted their initial motions to compel arbitration (Dkts. 26 and 27), Plaintiff amended his Complaint in order to assert a claim seeking penalties under the California Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, (Dkt. 41). Defendants have now submitted supplemental motions to compel Plaintiff's PAGA claim to arbitration. As described below, these motions should be denied.

As an initial matter, the arbitration agreement at issue here (which was presented to Plaintiff by Magnit, and upon which Twitter relies as a non-signatory) explicitly excludes PAGA claims from the scope of arbitral claims. <u>See</u> Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 42-1. For this reason alone, the Court can deny Defendants' motions in their entirety.

In any event, even if the arbitration agreement were held to encompass PAGA claims, the representative aspect of Plaintiff's PAGA claim must be allowed to proceed before this Court, even if the individual portion of the claim is compelled to arbitration. As discussed below, courts have agreed since the Supreme Court last year decided <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906, 1924-25 (2022), that California law continues to prohibit the waiver of representative PAGA claims through the use of an arbitration agreement.

Finally, as Plaintiff set forth in his opposition to Defendants' initial motions to compel arbitration (Dkt. 35 at pp. 7-11), Twitter should not be able to avoid litigation in court, only to play games in arbitration and block employees' ability to pursue claims there as well. Plaintiff's counsel have now filed more than 1,600 individual arbitration demands against Twitter related to their layoffs from the company. Twitter has dragged its feet with those arbitrations, refusing to

engage in arbitration with any employees who cannot themselves produce a copy of their signed arbitration agreement. And, for those employees whose arbitration agreement does not specify an arbitration provider, but instead requires the parties to agree on an arbitrator, Twitter has yet to agree on any arbitrators, despite Plaintiff's counsel having begun to propose arbitrators nearly two months ago. Twitter should not be permitted to compel claims to arbitration if it is not actually interested in resolving claims in that forum, but is instead trying to compel employees to use that forum so that it can simply avoid responding to their cases.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In his First Amended Complaint (Dkt. 41), Plaintiff alleges that Defendants have violated the federal Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.* (Count I), and (for employees who worked in California) the California WARN Act, Cal. Lab. Code §§ 1400 *et seq.* (Count II), as well as provisions of the California Labor Code, Cal. Lab. Code §§ 201, 203, and 227.3, which require the payment of full pay, benefits, and expense reimbursement immediately upon an employee's termination (Count III). Plaintiff also seeks PAGA penalties for Defendants' violations of the California Labor Code (Count IV).

Plaintiff, along with thousands of other similarly situated employees, were employed by Twitter through Magnit, a payroll administration company. (First Am. Compl. ¶¶ 2, 13, Dkt. 41.) While these employees were classified as employees of Magnit, the duties that they performed were indistinguishable from the employees who were employed directly by Twitter and were directly supervised by Twitter managers. (First Am. Compl. ¶¶ 2, 13, Dkt. 41.) Plaintiff contends that Twitter and Magnit were his (and the putative class's) joint employers.

As Plaintiff has alleged, Elon Musk recently purchased Twitter and immediately began laying off more than half of its workforce. (First Am. Compl. ¶¶ 14-16, Dkt. 41.) Beginning on November 12, 2022, Twitter began laying off its employees who were paid through Magnit. (First Am. Compl. ¶ 17, Dkt. 41.) Plaintiff received an email on November 12, 2022, stating that

he was being laid off, effective two days later, on November 14, 2022. (First Am. Compl. ¶ 18, Dkt. 41.)

Plaintiff alleges that Twitter employees paid through Magnit did not receive the 60 days' advance written notice of their layoffs, as required by the federal WARN Act, and for employees in California, the California WARN Act. (First Am. Compl. ¶ 19, Dkt. 41.) Nor were the affected employees given pay in substitution for federal or California WARN Act notice. (First Am. Compl. ¶ 19, Dkt. 41.) In addition, neither Twitter nor Magnit provided full final pay, benefits, and expense reimbursement to these employees on their last day of employment, as required by the California Labor Code. (First Am. Compl. ¶ 21, Dkt. 41.)

At the beginning of Plaintiff's employment by Defendants, he was required as a condition of his employment to enter into an arbitration agreement with Magnit. (Arbitration Agreement, Ex. A to Arruda Decl., Dkt. 42-1.) The arbitration agreement includes a provision entitled "Claims Not Covered by the Policy and Agreement," which states:

> **This Agreement does not cover** claims Employee may have for workers' compensation, unemployment compensation benefits, or **any other claims found not subject to a mandatory pre-dispute arbitration agreement by governing law. Such claims include claims brought under California's Private Attorneys General Act, to the extent required by governing law**. Additionally, nothing in this Agreement precludes Employee from filing a charge or from participating in an administrative investigation of a charge before an appropriate government agency such as the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, the National Labor Relations Board or similar state agency.

(Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 42-1) (emphasis added).

Further, the agreement contains a "Class and Collective Action Waiver" that states as follows:

> This Agreement affects the Employees ability to participate in class or collective actions. To the full extent permitted by law, **neither the Employee nor the Company shall have a right to**: (a) arbitrate any claim on a class or collective basis on behalf of any of the Company's workers, employees, independent contractors, applicant or other persons similarly situated; (b) join or consolidate in any arbitration claims brought by or against another worker, employee, independent contractor, applicant or the Company, unless agreed to in writing by all parties; (c) litigate any claims in court or to have a jury trial on any claims covered by this Agreement; and/or (d) **file or participate in a representative or collective capacity** or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement. There will be no right or

> authority for any dispute to be brought, heard or arbitrated as a class or collective action or as a member in any such class or collective proceeding ("Class Action Waiver"). Notwithstanding any other provision of this Agreement or the AAA Rules, dispute in court or arbitration regarding the validity, enforceability or breach of the Class Action Waiver may be resolved only by a court and not by an arbitrator.

(Arbitration Agreement ¶ 4, Ex. A to Arruda Decl., Dkt. 42-1) (emphasis added).

The arbitration agreement also includes an express delegation of all questions of validity or enforceability of the agreement, as well as any questions as to the arbitrability of claims, to a court of law:

> Any dispute concerning the validity or enforceability of this Agreement shall be resolved by a court of law. Any dispute over the arbitrability of any particular claim shall be resolved by a court of law. The interpretation and enforceability of this Agreement shall be governed by the Federal Arbitration Act.

(Arbitration Agreement ¶ 9, Ex. A to Arruda Decl., Dkt. 42-1.)

On January 11, 2023, both Magnit and Twitter moved to compel arbitration (Dkts. 26 and 27) of the claims asserted in Plaintiff's original Complaint. Twitter, although not a signatory to the agreement, argued that it can enforce the arbitration agreement as a third-party beneficiary, under the doctrine of equitable estoppel, and under a theory of agency. (Dkt. 27 at 7-10.)

On February 7, 2023, Plaintiff submitted a motion for leave to amend his Complaint in order to assert a PAGA claim (Dkt. 34). Plaintiff then submitted an opposition to Defendants' motions to compel arbitration on February 8, 2023 (Dkt. 35), arguing in part that his anticipated PAGA claim was outside the scope of the arbitration agreement, and that the very least, the representative aspect of his PAGA claim could not be compelled to arbitration. Plaintiff's opposition also argued that the Court should deny Defendants' motions to compel arbitration even with respect to the non-PAGA claims, because Twitter has demonstrated through its conduct with respect to more than 1,000 arbitration demands filed by its former employees that it is using arbitration as a ruse to avoid the claims of many of its former employees.

Pursuant to a joint stipulation that the parties filed on February 16, 2023 (Dkt. 38), and which the Court granted on February 21, 2023 (Dkt. 40), Plaintiff filed his First Amended Complaint on February 21, 2023 (Dkt. 41). The parties also stipulated (Dkt. 40) that the briefing

on Defendants' initial motions to consideration would apply to Plaintiff's First Amended Complaint, and that Defendants would be permitted to submit supplemental motions to compel arbitration with respect to Plaintiff's PAGA claim. Defendants submitted their supplemental motions to compel arbitration on March 7, 2023 (Dkts. 42 and 43). Plaintiff now opposes those supplemental motions.

## III.    ARGUMENT

### A.    The Arbitration Agreement Specifically Excludes PAGA Claims from its Scope

Defendants' motion to compel arbitration of Plaintiff's PAGA claim should be denied. To begin, the arbitration agreement does not list PAGA claims in the section describing what claims are covered. See Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 42-1. And the agreement even specifically *excludes* PAGA claims from the scope of covered claims: "This Agreement does not cover … any [] claims found not subject to a mandatory pre-dispute arbitration agreement by governing law. Such [excluded] claims include claims brought under California's Private Attorneys General Act, to the extent required by governing law." Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 42-1. Thus, by its very terms, the arbitration agreement does not provide for Plaintiff's PAGA claim to be submitted to arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "requires the resolution of two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Esparza v. SmartPay Leasing, Inc., 2017 WL 4390182, at *1 (N.D. Cal. Oct. 3, 2017) (quoting Chiron v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)). Here, it is clear that the arbitration agreement does not encompass representative PAGA claims. See Perez v. DirecTV Group Holdings, LLC, 740 Fed. App'x. 560, 561 (9th Cir. 2018) (holding that statutory claims fell outside the scope of an arbitration agreement where the arbitration agreement specifically exempted them from its coverage).

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

Defendants argue that the arbitration agreement encompasses Plaintiff's PAGA claim, because it excludes PAGA claims from its scope only "to the extent required by governing law." This phrase does nothing to indicate that the parties actually affirmatively agreed to arbitrate PAGA claims in the first place. PAGA claims are not listed in Paragraph 2 of the arbitration agreement, which sets forth the "Claims Covered by this Agreement," listing numerous other California statutes specifically. <u>See</u> Arbitration Agreement ¶ 3, Ex. A to Arruda Decl., Dkt. 42-1. Nor is PAGA explicitly included in the Class and Collective Action Waiver in Paragraph 4 of the arbitration agreement. <u>See</u> Arbitration Agreement ¶ 4, Ex. A to Arruda Decl., Dkt. 42-1. Indeed, the only mention of PAGA in the arbitration agreement is in the paragraph listing claims that are **<u>excluded</u>** from the agreement's scope. Thus, the Court cannot construe the arbitration agreement to encompass PAGA claims where the only mention of PAGA was in the subsection listing claims NOT covered.

### B. In Any Event, the Representative Portion of Plaintiff's PAGA Claim Cannot be Waived by Contract or Compelled to Arbitration and Thus Should be Permitted to Proceed in Court

Plaintiff's representative PAGA claim also cannot be compelled to arbitration because that would not be allowed by governing law. The arbitration agreement does not permit PAGA representative claims to be heard in arbitration: the "arbitrator may not . . . preside over any form of a class, collective, or representative proceeding . . . ." Arbitration Agreement ¶ 4, Ex. A to Arruda Decl., Dkt. 42-1. Thus, compelling the representative portion of Plaintiff's PAGA claim to arbitration would be tantamount to waiver. The California Supreme Court held in <u>Iskanian v. CLS Transp. Los Angeles, LLC</u>, 59 Cal. 4th 348, 384-88 (2014), that arbitration agreements may not waive PAGA claims wholesale. <u>See also</u> <u>Sakkab v. Luxottica Retail North America, Inc.</u>, 803 F.3d 425, 435 (9th Cir. 2015) (holding that "pre-dispute agreements to waive PAGA claims are unenforceable under California law," because "allowing employees to waive the right to bring PAGA actions would disable one of the primary mechanisms for enforcing the Labor Code," and that "because such an agreement has as its object, . . . indirectly, to exempt [the

employer] from responsibility for [its] own . . . violation of law, it is against public policy")

(citing <u>Iskanian</u>, 59 Cal. 4th at 383).

While the United States Supreme Court overruled aspects of <u>Iskanian</u> in its recent

decision in <u>Viking River</u>, 142 S. Ct. at 1924-25, <u>Viking River</u> does not save Defendants'

argument. In <u>Viking River</u>, the Supreme Court held that the FAA preempted <u>Iskanian</u>'s holding

that the **individual** aspect of a PAGA claim (*i.e.*, an employee seeking to recover PAGA

penalties individually) cannot be compelled to arbitration. <u>Id.</u>[1] <u>Viking River</u> **did not**, however,

displace <u>Iskanian</u>'s holding that the **representative** aspect of a PAGA claim (*i.e.*, an employee

acting on behalf of the State of California representing other employees) cannot be waived by an

arbitration agreement as a matter of California public policy. <u>See id.</u>; <u>see also Martinez-Gonzalez</u>

<u>v. Elkhorn Packing Co., LLC</u>, 2022 WL 10585178, at *11 (N.D. Cal. Oct. 18, 2022)

(summarizing <u>Viking River</u>'s holding). Addressing California state law, the Court in <u>Viking</u>

<u>River</u> went on to opine that the plaintiff did not have standing under California law to advance

the representative portion of the PAGA claim in court where the individual portion of the PAGA

claim had been compelled arbitration. <u>See Viking River</u>, 142 S. Ct. at 1925.

However, since <u>Viking River</u> was decided, a number of courts have concluded that the

justices erred in construing California law and have reiterated that plaintiffs retain the ability to

pursue the representative portion of their PAGA claims in court (even where the individual

portion has been compelled to arbitration)[2]; these courts have also reaffirmed that California law

does not permit the waiver of representative PAGA claims through arbitration agreements.

<u>Shams v. Revature LLC</u>, --- F. Supp. 3d ---, 2022 WL 3453068, at *3 (N.D. Cal. Aug. 17, 2022);

---

[1]     More specifically, in <u>Viking River</u>, the Supreme Court held that the Iskanian rule
mandating the "unitary" (non-divisible) nature of a PAGA claim is preempted by the FAA. <u>See</u>
<u>Viking River</u>, 142 S. Ct. at 1924-25.

[2]     Indeed, in <u>Viking River</u>, eight Supreme Court justices recognized that this is a state law
question. <u>See Viking River</u>, 142 S. Ct. at 1925. One of those justices, Justice Sotomayor, who
wrote the pivotal concurrence, expressly noted that the California state courts or legislature
would have the final word on this question. <u>See id.</u> at 1925 (Sotomayor, J. concurring). Thus, the
majority was simply guessing at what California law said on the issue, and they only gained the
majority by the vote of Justice Sotomayor who made clear that their guess could be wrong.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION
OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA
CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA
CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

1    Piplack v. In-N-Out Burgers, --- Cal. Rptr. 3d ---, 2023 WL 2384502, at *6-7 (March 7, 2023);

2    Galarsa v. Dolgen California, LLC, --- Cal. Rptr. 3d ---, 2023 WL 2212196, at *7-8 (Feb. 24,

3    2023).

4        In Shams, 2022 WL 3453068, at *3, the court explained that, while the majority in

5    Viking River had stated that a plaintiff lost standing to pursue representative PAGA claims in

6    court when individual PAGA claims were compelled to arbitration, this conclusion was a

7    misunderstanding of California law. Relying on the California Supreme Court's decision in Kim

8    v. Reins International California, Inc., 9 Cal. 5th 73, 83-84 (2020), the court explained that

9    "because the California Supreme Court is the final arbiter of California law, this Court applies

10   Kim's interpretation of PAGA standing to this case." Shams, 2022 WL 3453068, at *3. Both

11   PAGA's plain language and Kim's construction of that language make clear that an "aggrieved

12   employee" bringing claims on behalf of the LWDA does not lose statutory standing when some

13   portion of the claim is compelled to arbitration. Rather, PAGA imposes only two requirements

14   for PAGA standing – (1) that plaintiff was an employee; and (2) against whom the defendant has

15   committed one or more Labor Code violations – and neither turns on whether the employee is

16   forced to adjudicate the claim in court or in arbitration. See Kim, 9 Cal. 5th at 83-84. The court

17   concluded that the fact that Viking River now requires certain employees who have signed

18   arbitration agreements to pursue their PAGA claims in two different forums should have no

19   effect on a plaintiff's statutory standing as an "aggrieved employee."

20       The California Court of Appeal reached the same conclusion in Galarsa, 2023 WL

21   2212196, at *7-8, where the court likewise followed Kim and held that "PAGA standing does

22   not evaporate when an employer chooses to enforce an arbitration agreement." Id. at *8. To hold

23   otherwise would "'severely curtail [] PAGA's availability to police Labor Code violations,'"

24   which would be contrary to the remedial purpose of PAGA "which PAGA achieves by

25   deputizing employees to pursue civil penalties on the state's behalf." Id. (quoting Kim, 9 Cal. 5th

26   at 86-87, 91)

27

28

8

Even more recently, the Court of Appeal held in <u>Piplack</u>, 2023 WL 2384502, at *6-7, that <u>Viking River</u> incorrectly interpreted California law with respect to standing under PAGA, explaining that even where a plaintiff's individual claims are "forced into a separate forum (or pared away), [plaintiffs] satisfy the test for standing described by the California Supreme Court, which binds us." <u>Id.</u> at *6. The court in <u>Piplack</u> noted that, although the court affords "the United States Supreme Court deep deference . . . ," <u>Viking River</u> and <u>Kim</u> were incompatible. <u>Id.</u> at *7 "[A]bsent some means of harmonizing <u>Viking River</u> with <u>Kim</u>, we must follow <u>Kim</u>." <u>Id.</u>

Similarly, the court in <u>Mills v. Facility Solutions Group, Inc.</u>, 84 Cal. App. 5th 1035, 1064 (Nov. 1, 2022), described the <u>Viking River</u> majority's discussion of standing as mere <u>dicta</u>.

Indeed, the <u>Viking River</u> Court itself recognized the possibility that it was wrong on California law. In her pivotal concurrence, Justice Sotomayor correctly recognized that PAGA standing is a state law issue that ultimately must be decided by the California courts.[3] Justice Sotomayor explained that the court grounded its standing analysis "on available guidance from California courts . . . ," and that if the Supreme Court's "understanding of state law is wrong, California courts, in an appropriate case, will have the last word." <u>See</u> <u>Viking River</u>, 142 S. Ct. at 1925 (Sotomayor, J. concurring). The California Court of Appeal in <u>Piplack</u> and <u>Galarsa</u> have now made clear that the Supreme Court's understanding of California law was indeed mistaken. <u>See</u> <u>Piplack</u>, 2023 WL 2384502, at *6-7; <u>Galarsa</u>, 2023 WL 2212196, at *7-8. And, of course on a question of state law, this federal court must follow the state appellate authorities. <u>See</u> <u>Shams</u>, 2022 WL 3453068, at *3 (citing <u>Beal v. Missouri P.R. Corp.</u>, 312 U.S. 45, 50 (1941), for the proposition that "state courts are 'final arbiters' of the meaning and application of state statutes).[4]

---

[3]    Lower courts frequently look to so-called "pivotal" concurrences, which "occur when one or more members of a court majority also choose to write separately, undercutting the majority's rule in the case," in interpreting and fashioning new law. Bennet et al., <u>Divide & Concur: Separate Opinions & Legal Change</u>, 103 Cornell L. Rev. 817, 820 (2020) (explaining the weight to be given to "pivotal" concurrences). Justice Sotomayor's vote was "pivotal" to reaching a five-member majority in <u>Viking River</u>.

[4]    This question (whether a plaintiff can pursue the representative portion of a PAGA claim in court even if the individual portion of the claim has been compelled to arbitration) is now pending before the California Supreme Court in <u>Adolph v. Uber Technologies</u>, S274671, Order

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

Twitter wrongly argues that this Court should ignore decisions such as <u>Galarsa</u>,[5] because the standing question is grounded in federal law rather than state law. However, there is no question that the Supreme Court understood that it was weighing in on state law issues of contract construction and statutory standing. Indeed, in <u>Viking River</u>, eight of the Justices agreed that standing under PAGA was a question of state law. <u>See</u> <u>Viking River</u>, 142 S. Ct. at 1925 (asking whether, in light of "PAGA's standing requirement," "PAGA provides [a] mechanism" to address "the non-individual PAGA claims"); <u>id.</u> at 1925 (Sotomayor, J., concurring) ("Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word."); <u>id.</u> at 1926 (Barrett, J., joined by Justice Kavanaugh and the Chief Justice, concurring in part and in the judgment) (declining to join Part IV, which "addresses disputed state-law questions.").[6]

Twitter relies on <u>Magadia v. Wal-Mart Associates, Inc.</u>, 999 F.3d 668, 679 (9th Cir. 2021), where the Ninth Circuit opined that standing under PAGA was an issue of federal law rather than state law. However, that aspect of <u>Magadia</u> has been effectively overruled by the Supreme Court's approach in <u>Viking River</u>. In the wake of <u>Viking River</u>, other federal courts have recognized that ultimately California courts have final say on the issue of whether this state

---

Granting Review (Cal. Aug. 1, 2022). Regardless of the fact that this issue is now at the Supreme Court, the courts in the cases cited above were confident enough in the outcome of California law on this issue that they declined to stay the matters and simply denied the requests to dismiss the representative aspect of the PAGA claims. <u>See</u> <u>Shams</u>, 2022 WL 3453068, at *3; <u>Piplack</u>, 2023 WL 2384502, at *6-7; and <u>Galarsa</u>, 2023 WL 2212196, at *7-8. Other courts have stayed their decisions, pending the Supreme Court's decision in <u>Adolph</u> (which has not yet been argued and thus could take another year for a decision to be issued). <u>See</u> <u>Martinez-Gonzalez</u>, recently took this approach. 2022 WL 10585178, at *12 ("[T]he California Supreme Court has taken up the issue of statutory standing in the pending case <u>Adolph</u> . . . . Accordingly, the Court will stay the representative PAGA claims pending further legal developments."); <u>see also</u> <u>Cal. Labor and Workforce Dev. Agency, ex rel. Raymond v. Compucom Sys., Inc.</u>, 2023 WL 2466236, at *3 (E.D. Cal. Mar. 10, 2023) ("After careful consideration of the parties' briefing and oral arguments, and the many other district court decisions, this court is persuaded the best course in this case is to stay the non-individual PAGA claim pending a decision in <u>Adolph</u>.").

[5]      Twitter does not address the <u>Piplack</u> decision, and Magnit does not address this argument at all.

[6]      Justice Thomas expressed no view on the issue. <u>See</u> <u>Viking River</u>, 142 S. Ct. at 1926 (Thomas, J. dissenting).

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

statute allows plaintiffs to pursue the representative portion of their PAGA claims in court. See Martinez-Gonzalez, 2022 WL 10585178, at *12 ("However, as Justice Sotomayor notes in her [Viking River] concurrence, the issue of statutory standing under PAGA is subject to clarification under state law."); Shams, 2022 WL 3453068, at *3 ("Although the Supreme Court suggests that under PAGA, Moriana lost standing to pursue her non-individual PAGA claims, because the California Supreme Court is the final arbiter of California law, this Court applies *Kim*'s interpretation of PAGA standing to this case."); see also Dominguez v. Sonesta International Hotels Corp., --- F. Supp. 3d ---, 2023 WL 25707, at *8 (N.D. Cal. Jan. 3, 2023) (adopting the reasoning of Martinez-Gonalez).

Twitter also relies on federal cases that followed the (erroneous) majority conclusion from Viking River. However, even these cases recognized that the California state courts would have final authority over this question.[7] Those cases followed the Viking River majority's guess at California law "absent intervening California authority". Johnson, 2022 WL 4387796, at *4. However, since the time those cases were decided, the California Court of Appeal have now decided Piplack, 2023 WL 2384502, at *6-7, and Galarsa, 2023 WL 2212196, at *7-8, which established "intervening California authority". Thus, the decisions that Twitter relies on are no longer good law.

---

[7]      For example, in Callahan v. Paychex North America Inc., 2022 WL 11902205, at *4 (N.D. Cal. Oct. 20, 2022), the court dismissed the representative portion of the PAGA claim for standing reasons following Viking River, but acknowledged this result was reached "in the absence of any superseding holding by a California court on statutory standing . . . ." Likewise in Hansber v. Ulta Beauty Cosmetics, LLC, --- F. Supp. 3d ---, 2022 WL 16836627, at *7 (E.D. Cal. Nov. 9, 2022), and Radcliff v. San Diego Gas & Electric Co., --- F. Supp. 3d ---, 2022 WL 4229305, at *4 (S.D. Cal. Sept. 12, 2022), the courts acknowledged that the California Supreme Court's consideration of Adolph could alter the result but declined to stay the cases simply because there was no assurances of when Adolph would be decided. In Johnson v. Lowe's Home Centers, LLC, --- F. Supp. 3d ---, 2022 WL 4387796, at *4 (E.D. Cal. Sept. 22, 2022), the court reasoned "absent intervening California authority, the Court declines to question the Supreme Court's interpretation on this issue." In Huell v. Bevmo Holdings, LLC, 2023 WL 1823611, at *1 n.3 (E.D. Cal. Feb. 8, 2023), the court hedged its decision to dismiss the representative PAGA claim, acknowledging the pendency of Adolph. And in Thistlewaite v. United Parcel Service, Inc., 2022 WL 17578868, at *3 n.1 (C.D. Cal. Dec. 7, 2022), the court simply had that the plaintiff had waived the stay argument with respect to Adolph by only mentioning it in a passing statement.

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION
OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA
CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA
CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM

Finally, Defendants argue that the representative portion of Plaintiff's PAGA claim should be dismissed, because allowing that claim to proceed before this Court while his individual claim proceeds in arbitration would constitute impermissible claims splitting. However, the Court of Appeal in <u>Galarsa</u> rejected this argument. <u>See Galarsa</u>, 2023 WL 2212196, at *8-9. The Court explained that this situation would not constitute claim-splitting under California law.[8] Moreover, <u>Galarsa</u> reached this result because "it is the interpretation of PAGA that best effectuates the statute's purpose, which is 'to ensure effective code enforcement." <u>Id.</u> (quoting <u>Kim</u>, 9 Cal. 5th at 87). Again, this Court must follow California law on this state law issue. <u>See Shams</u>, 2022 WL 3453068, at *3.

At bottom, the arbitration agreement does not purport to encompass PAGA claims. But even if it did, the representative portion of Plaintiff's PAGA claim could not be compelled to arbitration (which would constitute a waiver, which is not allowed under California law).[9]

---

[8]     The Court in <u>Galarsa</u> explained that the California rule against splitting a cause of action is that "a 'cause of action' is comprised of a 'primary right' of the plaintiff," and "the violation of a single primary right gives rise to but a single cause of action." <u>Id.</u> at *8 (quoting <u>Crowley v. Katleman</u>, 8 Cal. 4th 666, 681 (1994)). The Court went on to explain that courts invoke the rule against claim splitting "when a plaintiff attempts to divide a primary right and enforce it in two suits," <u>id.</u> (quoting <u>Crowley</u>, 8 Cal. 4th at 682)), but individual and representative PAGA claims are not based on the same "primary right." <u>See id.</u> at *9. Instead, the Court concluded, the individual portion of the PAGA claim is "based on Labor Code violations suffered by the plaintiff employee," and the representative portion of the PAGA claim is "based on Labor Code violations suffered by employees other than the plaintiff." <u>Id.</u> Thus, "the difference in the harms underlying each type of claim means different primary rights are involved." <u>Id.</u> "Consequently, notwithstanding the complaint's reference to one cause of action for civil penalties under PAGA, there is no single cause of action being split when [individual PAGA claims] are pursed in arbitration and civil penalties for violations suffered by other employees are pursued in court." <u>Id.</u>

[9]     Defendants rely on two Supreme Court cases that have nothing to do with PAGA. <u>See, e.g.</u>, <u>Montana v. U.S.</u>, 440 U.S. 147, 153-54 (1979) (holding that the United States was collaterally estopped from pursuing a tax case in federal court because the Montana Supreme Court had already determined the issue); <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980) (holding that the doctrine of collateral estoppel applied in a § 1983 case based on a Fourth Amendment violation, where the court hearing the plaintiff's criminal trial had previously declined to suppress evidence based on his Fourth Amendment argument).
        Defendants also cite California cases that are easily distinguishable. For example, in <u>Robinson v. S. Counties Oil Co.</u>, 53 Cal. App. 5th 476, 481-82 (2020), the question concerned whether the claim preclusion doctrine prevented a plaintiff from pursuing the same PAGA violation that another plaintiff had already asserted in a previous suit. The <u>Robinson</u> plaintiff opted out of a class settlement of the initial suit and attempted to relitigate the claim that had

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Twitter Should Not Be Permitted to Compel Arbitration of Plaintiff's Claims if It is Does Not Actually Intend to Arbitrate These Claims

In response to Defendants' initial motions to compel arbitration (Dkts. 23 and 24), Plaintiff pointed out that Twitter's conduct to this point with respect to more than 1,000 other arbitration demands filed by Twitter's former employees who are represented by the undersigned counsel demonstrates that Twitter (and presumably Magnit, which is acting in concert with Twitter, and served as the payroll company for many of Twitter's employees) does not genuinely intend to participate in the arbitration process with its employees in good faith. See Plaintiff's Opposition at pp. 7-11, Dkt. 35. Although counsel began filing these claims in December, Twitter has declined to allow arbitrations to proceed where Claimants cannot produce their own signed copy of Twitter's arbitration agreement, and Twitter has yet to agree to a single arbitrator for the cases of employees whose arbitration agreements requires the parties to agree on an arbitrator (rather than providing for an arbitration service to be used).

If Twitter will not participate fully in the arbitration process, it should not be permitted to compel more plaintiffs to arbitration. Courts recognize that parties may waive their right to arbitration by acting "inconsistent[ly] with its arbitration rights." Hill v. Xerox Business Services, LLC, 59 F.4th 457, 471 (9th Cir. 2023). If Twitter simply has sought arbitration of these numerous claims in the hope that the claims will just disappear, it is mistaken. In order to avail itself of the arbitral forum, Twitter will need to cooperate fully in ensuring that employees who want to pursue their claims will be able to vindicate their rights in that forum. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (arbitration may be used as an alternative to court for employment claims, but only if employees can actually pursue their claims there).

---

already been settled. See id. The court noted that "there is no mechanism for opting out of the judgment entered on the PAGA claim." Id. Defendants also cite Villacres v. ABM Industries Inc., 189 Cal. App. 4th 562, 575 (2010), but in that case, the court held that a plaintiff could not assert a PAGA claim where he had previously been a class member in a case that settled the Labor Code claims that formed the basis for the PAGA claims that he later tried to assert in a new action. Id. at 582-83 ("As an alternative to objecting or intervening in Augustus, Villacres could have easily preserved his PAGA claims by opting out of the class. Yet, he took no action in response to the Notice. He remained silent, stayed in the class, accepted the benefits of the settlement, and filed a PAGA suite as soon as August was dismissed."). None of these cases are on all-fours with this matter.

So long as Twitter does not cooperate in arbitrating the claims of the 1,600+ employees who have already attempted to vindicate their rights in arbitration, the Court should not grant this request to compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to compel Plaintiff's PAGA claim to arbitration.

Respectfully submitted,

FRANCISCO RODRIGUEZ, on behalf of himself and all others similarly situated,

By his attorneys,

_/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com; tfowler@llrlaw.com

Dated:        March 21, 2023

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendants Pro Unlimited, Inc. and Twitter, Inc. via the CM/ECF system on March 21, 2023.


Dated: March 21, 2023


By:    <u>/s/ Shannon Liss-Riordan</u>
Shannon Liss-Riordan

PLAINTIFF'S OPPOSITION TO (1) TWITTER'S SUPPLEMENTAL MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS PLAINTIFF'S REPRESENTATIVE PAGA CLAIM; AND (2) MAGNIT'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL PAGA CLAIM AND DISMISS REPRESENTATIVE PAGA CLAIM
