UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGUEZ,<br><br>   Plaintiff,<br><br>   v.<br><br>TWITTER, INC., et al.,<br><br>   Defendants. | Case No. 3:22-cv-07222-JD<br><br>**ORDER RE ARBITRATION** |

Named plaintiff Francisco Rodriguez sued defendants Twitter, Inc. and Magnit, LLC f/k/a PRO Unlimited, Inc. (Magnit), on behalf of himself and a putative class of other employees who were employed by Twitter through Magnit, a payroll administration company. Dkt. No. 1 (original complaint); Dkt. No. 41 (amended complaint). Rodriguez alleges that recent layoffs by Twitter violated federal and state laws. He also seeks to recover civil penalties on behalf of California for California Labor Code violations suffered by himself and other employees under California's Private Attorneys General Act (PAGA), Cal. Lab. Code § 2698 *et seq. See* Dkt. No. 41 at 6-7. Twitter and Magnit ask for an order compelling Rodriguez's individual claims to arbitration pursuant to the parties' arbitration agreement and the Federal Arbitration Act (FAA). Dkt. Nos. 26, 27, 42, 43. Rodriguez filed oppositions. Dkt. Nos. 35, 44. Arbitration is granted.

**BACKGROUND**

The salient facts are undisputed. In November 2021, as a condition of his employment with Magnit, Rodriguez signed an arbitration agreement. *See* Dkt. No. 26-1, Ex. A. The agreement states that it is governed by the FAA. *See id.* ¶ 4. It commits the parties "to the resolution by binding arbitration of all claims or causes of action that [Rodriguez] may have against [Magnit] or any of its clients for whom [Rodriguez] performed work." *Id.* ¶ 2. The agreement includes a third-party beneficiary clause that explicitly states that it "is intended to also

inure to the benefit of [Magnit's] clients for whom [Rodriguez] performed work to the extent an employment dispute arises between [Rodriguez] and such client and involves claims covered by this Agreement." *Id.* ¶ 7.  Twitter is a client of Magnit, *see* Dkt. No. 26-1 ¶ 2 (Arruda declaration), and Rodriguez performed work for Twitter that was "indistinguishable" from the work done by "employees who were employed directly by Twitter," Dkt. No. 41 ¶ 2.

The arbitration agreement encompasses claims "for violation of any law, statute, regulation, ordinance or common law, including, but not limited to, all claims arising under . . . the California Labor Code."  Dkt. No. 26-1, Ex. A ¶ 2.  But it "does not cover claims . . . found not subject to a mandatory pre-dispute arbitration agreement by governing law."  *Id.* ¶ 3.  "Such claims include claims brought under California's Private Attorneys General Act, to the extent required by governing law."  *Id.*  The agreement includes a class action waiver, which denies Rodriguez the right to "file or participate in a representative or collective capacity or as a member of any class of claimants in an action in a court of law pertaining to any claims encompassed by this Agreement."  *Id.* ¶ 4.  The agreement also precludes the arbitrator from "presid[ing] over any form of a class, collective, or representative proceeding, unless agreed to in writing by all Parties in a specific dispute."  *Id.*

Disputes concerning the validity or enforceability of the arbitration agreement (including the class action waiver), as well as disputes over the arbitrability of any particular claim, "shall be resolved by a court of law."  *Id.*  The agreement contains a severability clause providing that to the extent that there is a judicial determination that any "portion" of the arbitration agreement is unenforceable, the parties "intend for the remainder of that provision and the Agreement as a whole to be enforced to the full extent permitted by law."  *Id.*

## LEGAL STANDARDS

The arbitration demand is governed by the FAA.  The Court has discussed the governing standards in several prior orders, which are incorporated here.  *See Louis v. Healthsource Glob. Staffing, Inc.*, No. 22-cv-02436-JD, 2022 WL 4960666 (N.D. Cal. Oct. 3, 2022); *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233 (N.D. Cal. 2019).  In pertinent part, the FAA's "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as to

2

facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Under Section 4 of the FAA, the Court's role "is limited to determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If the party seeking to compel arbitration establishes both factors, the district court "must order the parties to proceed to arbitration only in accordance with the terms of their agreement." *Id.* "Any doubts about the scope of arbitrable issues should be decided in favor of arbitration." *Williams*, 417 F. Supp. 3d at 1239; *see also Louis*, 2022 WL 4960666, at *2.

Unless the parties provide otherwise, the validity and scope of an agreement to arbitrate are determined by the Court. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013); *Alonso v. AuPairCare, Inc.*, No. 3:18-cv-00970-JD, 2018 WL 4027834, at *1 (N.D. Cal. Aug. 23, 2018). The validity inquiry usually involves a determination of whether the arbitration agreement is unenforceable because it is unconscionable. *See Concepcion*, 563 U.S. at 339.

Like other contractual rights, the right to arbitration can be waived. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Waiver of an arbitration agreement governed by the FAA is evaluated under federal rather than state law. *See Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002); *see also Abary v. BMW of N. Am., LLC*, No. 19-cv-00087-JD, 2020 WL 5798377, at *1 (N.D. Cal. Sept. 29, 2020). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) acts inconsistent with that existing right." *McBurnie v. Acceptance Now, LLC*, --- F. Supp. 3d ----, 2022 WL 17342195, at *2 (N.D. Cal. Nov. 30, 2022) (cleaned up).

**DISCUSSION**

**A.     Waiver**

Rodriguez suggests that Twitter has waived its right to compel arbitration due to its conduct in a related case, *Cornet v. Twitter, Inc. See* Dkt. No. 35 at 7. *Cornet* also involves claims stemming from Twitter's mass layoffs, but the plaintiffs were directly employed by Twitter. This Court ordered the claims of five named plaintiffs to arbitration on an individual basis. *See Cornet v. Twitter, Inc.*, No. 3:22-cv-06857-JD, 2023 WL 187498, at *3 (N.D. Cal. Jan.

3

1   13, 2023). Rodriguez says that Twitter "does not genuinely intend to participate in the arbitration
2   process with its employees in good faith," alleging that Twitter has delayed paying arbitration
3   filing fees for some of the *Cornet* named plaintiffs and has refused to arbitrate similarly situated
4   employees' claims unless those employees come forward with their signed arbitration agreements.
5   Dkt. No. 35 at 7-8. Twitter says that it "has acted in complete good faith and adhered fully to the
6   terms of the arbitration agreements that govern those proceedings, the JAMS rules (to the extent
7   applicable), and statutory authority." Dkt. No. 46 at 10.

8   Even assuming for present purposes that Twitter is dragging its feet in arbitration of the
9   *Cornet* claims, which is not a question actually before the Court, that is not a waiver of Twitter's
10  right to compel arbitration of Rodriguez's claims. To be sure, "when an employer enters into an
11  agreement requiring its employees to arbitrate, it must participate in the process or lose its right to
12  arbitrate." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1013 (9th Cir. 2005). If the record indicates
13  that such conduct has occurred here, the plaintiffs whose arbitrations have been unduly delayed
14  may have some recourse. But Rodriguez himself is not in that situation. Nothing in *Brown*
15  indicates that the proper remedy for an employer's refusal to arbitrate with employee A results in
16  waiving arbitration with respect to differently situated employee B. And Rodriguez cites no
17  authority, binding on this Court, for the proposition that he may establish a waiver under the
18  circumstances here.

19  **B.   Scope and Enforceability of the Arbitration Agreement**

20  Turning to the arbitration agreement itself, Rodriguez does not raise any contract formation
21  issues. Magnit and Twitter provided a signed copy of Rodriguez's agreement, which is clear and
22  straightforward. *See generally* Dkt. No. 26-1, Ex. A. Nor does Rodriguez raise any
23  unconscionability issues.

24  Rodriguez does not present any arguments pertaining to his non-PAGA individual claims,
25  which are ordered to arbitration, or his putative class claims, which he has waived the ability to
26  pursue through his arbitration agreement. Instead, Rodriguez's main objections are that (i) his
27  PAGA claims fall outside the scope of claims covered by the arbitration agreement, and (ii) the
28  arbitration agreement cannot waive his representative standing to pursue a PAGA action in any

4

1  forum and consequently the representative portion of his claims should be permitted to proceed in
2  court. *See* Dkt. No. 35 at 4-5; Dkt. No. 44 at 5-6.
3        The threshold question raised by Rodriguez's objections is whether the arbitration
4  agreement excludes PAGA claims from the scope of covered claims. Rodriguez says that PAGA
5  claims are not mentioned in paragraph 2 of the arbitration agreement, governing "Claims Covered
6  by this Agreement," *see* Dkt. No. 35 at 5, and that paragraph 3 excludes from the scope of covered
7  claims those "'claims brought under [PAGA], to the extent required by governing law,'" *id.* at 4
8  (quoting Dkt. No. 26-1, Ex. A ¶ 3). In his view, "[i]t would be manifestly wrong . . . to construe
9  this arbitration agreement to encompass PAGA claims where the only mention of PAGA was in
10 the subsection listing claims not covered." *Id.* at 5 (emphasis omitted).
11       The point is not well taken. To start, while PAGA is not specifically called out by name in
12 paragraph 2, the agreement explicitly encompasses claims for violations of the California Labor
13 Code. And PAGA "allows private citizens to recover civil penalties on behalf of themselves 'and
14 other current or former employees' for violations of the California Labor Code." *Saucillo v. Peck*,
15 25 F.4th 1118, 1122 (9th Cir. 2022) (quoting Cal. Lab. Code § 2699(a)). The exclusion in
16 paragraph 3 does not change the equation. It excludes "claims found not subject to a mandatory
17 pre-dispute arbitration agreement by governing law," including PAGA claims "to the extent
18 required by governing law." Dkt. No. 26-1, Ex. A ¶ 3. But governing law -- the FAA -- does not
19 require that PAGA claims be exempted from a mandatory pre-dispute arbitration agreement. *See*
20 *Concepcion*, 563 U.S. at 341 ("When state law prohibits outright the arbitration of a particular
21 type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *see*
22 *also Perry v. Thomas*, 482 U.S. 483, 491 (1987) (finding that "California's [Labor Code Section]
23 229 requirement that litigants be provided a judicial forum for resolving wage disputes" was "in
24 unmistakable conflict" with Section 2 of the FAA). Consequently, Rodriguez's PAGA claims are
25 plainly within the scope of covered claims.
26       Given that the PAGA claims are within the scope of covered claims, the parties do not
27 dispute that Rodriguez's individual PAGA claims for California Labor Code violations that he
28 suffered can be compelled to arbitration. *See* Dkt. No. 44 at 7; Dkt. No. 45 at 3; Dkt. No. 46 at 3.

There is also no dispute that the arbitration agreement would be invalid to the extent that it waived Rodriguez's "*representative standing* to bring PAGA claims in a judicial or arbitral forum." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1916 (2022) (emphasis in original). Because "compelling the representative portion of [Rodriguez's] PAGA claim to arbitration would be tantamount to waiver,"[1] Dkt. No. 44 at 6, the parties converge on the same conclusion: Rodriguez's representative PAGA claims cannot be compelled to arbitration.[2]

The procedural fate of Rodriguez's representative PAGA claims is the remaining point of contention. Twitter and Magnit say that once Rodriguez's individual PAGA claims are sent to arbitration, the representative claims should be dismissed for lack of statutory standing. *See* Dkt. No. 45 at 5; Dkt. No. 46 at 4. They rely mainly on the United States Supreme Court's analysis of California law in *Viking River*, which was embraced by five justices:

> PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See Cal. Lab. Code Ann. §§ 2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit.

*Viking River*, 142 S. Ct. at 1925. One of the five justices to join this part of the Court's opinion authored a concurring opinion to emphasize that "if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." *Id.* (Sotomayor, J., concurring).

---

[1] The class action waiver bars Rodriguez from "fil[ing] or participat[ing] in a representative or collective capacity . . . in an action in a court of law pertaining to any claims encompassed by this Agreement." Dkt. No. 26-1 ¶ 4. And the default in the agreement is that the arbitrator "may not . . . preside over any form of a class, collective, or representative proceeding." *Id.* As a result, compelling the representative portion of Rodriguez's PAGA claims to arbitration would amount to waiving his ability to bring those claims in any forum, and the parties have not argued otherwise.

[2] For the present purposes, it makes no difference whether the arbitration agreement actually demands wholesale waiver, or whether it would avoid this result because the class and collective action waiver only applies "to the extent permitted by law." *Id.* In the former situation, the severability clause would limit the invalidity of the arbitration agreement; Twitter and Magnit would be "entitled to enforce the agreement insofar as it mandated arbitration of [Rodriguez's] individual PAGA claim." *Viking River*, 142 S. Ct. at 1925; *see* Dkt. No. 26-1, Ex. A ¶ 4.

Rodriguez suggests that California courts have already had the last word. He cites three recent decisions of the California Courts of Appeal that have squarely confronted this PAGA standing issue in light of *Viking River* and concluded that plaintiffs whose individual PAGA claims are sent to arbitration nonetheless maintain their statutory standing to pursue representative PAGA claims. *See* Dkt. No. 44 at 7-8 (citing *Galarsa v. Dolgen Cal., LLC*, 88 Cal. App. 5th 639 (2023); *Piplack v. In-N-Out Burgers*, 88 Cal. App. 5th 1281 (2023)); Dkt. No. 48 at 1 (citing *Seifu v. Lyft, Inc.*, No. B301774, 2023 WL 2705285 (Cal. Ct. App. Mar. 30, 2023)). Rodriguez also notes that this precise issue has been teed up before the California Supreme Court in *Adolph v. Uber Technologies*, No. S274671, *see* Dkt. No. 44 at 9 n.4, where it has been fully briefed.[3]

In light of these developments, prudence and federalism counsel in favor of waiting on a decision in *Adolph*. There is no need or particular value in a federal court speaking first on a critical issue pending before the California Supreme Court. This is all the more true here in that the court decisions so far have not been harmonious. Before the California Courts of Appeal weighed in, the Court would have been bound to follow *Viking River*'s construction of California law, just as it is bound to follow the Ninth Circuit's interpretation of state law absent "any subsequent indication from the [state] courts that [its] interpretation was incorrect." *See Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 884 n.7 (9th Cir. 2000) (internal quotations and citation omitted). Now that California's intermediate appellate courts have issued three decisions that conflict with the United States Supreme Court's interpretation, the issue is murkier. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ("[W]hen the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises.") (internal quotations and citation omitted). A decision by the California Supreme Court, one way or the other, will bring clarity to the situation. *See Riley v. Kennedy*, 553 U.S. 406, 425 (2008) ("A State's highest court is unquestionably the ultimate expositor of state law.") (cleaned up).

---

[3] The California Supreme Court docket for *Adolph v. Uber Technologies* is available at: https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2383459&doc_no=S274671&request_token=NiIwLSEmLkw7WzBdSCI9UE9IIDw0UDxTJCNeXz1TICAgCg%3D%3D (last accessed April 28, 2023).

7

Consequently, Rodriguez's representative PAGA claims are stayed pending the disposition in *Adolph*. Further proceedings will be ordered as circumstances warrant.

## CONCLUSION

The claims of plaintiff Rodriguez are ordered to arbitration on an individual basis, as stated in this order. Rodriguez's sole remaining representative PAGA claims are stayed pending further order. The parties are directed to provide a joint status report every 90 days on *Adolph*.

**IT IS SO ORDERED.**

Dated: April 28, 2023

JAMES DONATO
United States District Judge