# Exhibit A

2023 WL 4553702
Only the Westlaw citation is currently available.
Supreme Court of California.

Erik ADOLPH, Plaintiff and Respondent,

v.

UBER TECHNOLOGIES,

INC., Defendant and Appellant.

S274671
|
July 17, 2023

**Synopsis**
**Background:** Former food delivery driver brought putative class action against delivery service under the Private Attorneys General Act (PAGA), alleging that service misclassified him and other drivers as independent contractors rather than employees and, as a result, wrongfully failed to reimburse them for necessary business expenses in violation of the Labor Code. The Superior Court, Orange County, No. 30-2019-01103801, Kirk H. Nakamura, J., granted driver's request for preliminary injunction preventing arbitration of his individual claims and denied service's petition to compel arbitration of issue of driver's independent contractor status and enforceability of parties' arbitration agreement. Service filed separate appeals of the injunction and denial of its motion to compel arbitration, and the two appeals were consolidated. The Fourth District Court of Appeal, O'Leary, P.J., 2022 WL 1073583, affirmed. Service filed petition for review.

**Holdings:** The Supreme Court, Liu, J., held that:

driver was an "aggrieved employee" who continued to have standing to pursue non-individual PAGA claims in court even though he was compelled to arbitrate his individual PAGA claims, and

where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court.

Reversed and remanded.

**Procedural Posture(s):** Petition for Discretionary Review; On Appeal; Petition to Compel Arbitration; Motion to Stay Proceedings.

Fourth Appellate District, Division Three, G059860 and G060198, Orange County Superior Court, 30-2019-01103801, Kirk H. Nakamura, Judge

**Attorneys and Law Firms**

Littler Mendelson, Anthony G. Ly, Los Angeles, Sophia B. Collins, Andrew M. Spurchise; Gibson, Dunn & Crutcher, Theane D. Evangelis, Blaine H. Evanson, Irvine, and Bradley J. Hamburger, Los Angeles, for Defendant and Appellant.

Elizabeth Milito, Rob Smith; Benbrook Law Group, Bradley A. Benbrook, Sacramento, and Stephen M. Duvernay for National Federation of Independent Business Small Business Legal Center as Amicus Curiae on behalf of Defendant and Appellant.

Fisher & Phillips, Alden J. Parker, Sacramento, Erin J. Price; and Angelo I. Amador for Restaurant Law Center and California Restaurant Association as Amici Curiae on behalf of Defendant and Appellant.

Akin Gump Strauss Hauer & Feld, Jonathan P. Slowik, Los Angeles, Aileen M. McGrath, San Francisco, and Rachel O. Kane for Retail Litigation Center, Inc., and the National Retail Federation as Amici Curiae on behalf of Defendant and Appellant.

Manatt, Phelps & Phillips, Benjamin G. Shatz, Los Angeles; and Fred J. Hiestand, Sacramento, for Civil Justice Association of California as Amicus Curiae on behalf of Defendant and Appellant.

Greines, Martin, Stein & Richland and Jeffrey E. Raskin, Los Angeles, for Californians for Fair Pay and Employer Accountability as Amicus Curiae on behalf of Defendant and Appellant.

O'Melveny & Myers, Anton Metlitsky, Apalla U. Chopra, Adam J. Karr and Jason Zarrow, Los Angeles, for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Appellant.

Mayer Brown, Andrew J. Pincus, Kevin Ranlett, Carmen Longoria-Green and Archis A. Parasharami for the Chamber of Commerce of the United States of America as Amicus Curie on behalf of Defendant and Appellant.

Desai Law Firm, Aashish Y. Desai, Maria Adrianne De Castro; Altshuler Berzon, Michael Rubin, Robin S. Tholin; Goldstein, Borgen, Dardarian & Ho, Andrew P. Lee, David Borgen, Oakland, and Mengfei Sun for Plaintiff and Respondent.

Rob Bonta, Attorney General, Michael J. Mongan, State Solicitor General, Janill L. Richards, Principal Deputy State Solicitor General, and Nichole Welindt, Associate Deputy State Solicitor General, for the Attorney General of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Soderstrom Law and Jamin S. Soderstrom for Lionel Harper as Amicus Curiae on behalf of Plaintiff and Respondent.

Cynthia L. Rice, Oakland, Reina Canale, Corrie Meals, Sandra Aguila; and Verónica Meléndez for California Rural Legal Assistance, Inc., and California Rural Legal Assistance Foundation as Amici Curiae on behalf of Plaintiff and Respondent.

**Opinion**

Opinion of the Court by Liu, J.

**\*1** This case concerns a question of standing under the Private Attorneys General Act of 2004 (PAGA). (Lab. Code, § 2698 et seq.; all undesignated statutory references are to this code.) Informed by findings of pervasive underenforcement of many Labor Code provisions and "a shortage of government resources to pursue enforcement," the Legislature enacted PAGA to create new civil penalties for Labor Code violations and " 'to allow aggrieved employees, acting as private attorneys general, to recover [those] penalties.' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 379, 173 Cal.Rptr.3d 289, 327 P.3d 129 (*Iskanian*).) Specifically, PAGA authorizes "an aggrieved employee," acting as a proxy or agent of the state Labor and Workforce Development Agency (LWDA), to bring a civil action against an employer "on behalf of himself or herself and other current or former employees" to recover civil penalties for Labor Code violations they have sustained. (§ 2699, subd. (a); see *Iskanian*, at p. 380, 173 Cal.Rptr.3d 289, 327 P.3d 129.)

In *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. ––––– [142 S.Ct. 1906], 213 L.Ed.2d 179 (*Viking River*), the United States Supreme Court considered a predispute employment contract with an arbitration provision specifying that "in any arbitral proceeding, the parties could not bring any dispute as a class, collective, or representative PAGA action. It also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Id.* at p. –––– [142 S.Ct. at p. 1916].) In light of our state law rule prohibiting wholesale waiver of PAGA claims (*Iskanian*, *supra*, 59 Cal.4th at p. 383, 173 Cal.Rptr.3d 289, 327 P.3d 129), the high court construed the severability clause to reflect the parties' agreement to arbitrate any alleged Labor Code violations personally sustained by a PAGA plaintiff — so-called "individual" claims — and held that the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) compels enforcement of this agreement. (*Viking River*, at pp. ––––– – ––––– [142 S.Ct. at pp. 1922–1925].) In so holding, the high court declared that the FAA "preempted" a separate state law rule that "PAGA actions cannot be divided into individual and non-individual claims" where the parties have agreed to arbitrate individual claims. (*Viking River*, at p. –––– [142 S.Ct. at p. 1913].) For consistency, we use the terms "individual" and "non-individual" claims in accordance with the high court's usage in *Viking River*.

The question here is whether an aggrieved employee who has been compelled to arbitrate claims under PAGA that are "premised on Labor Code violations actually sustained by" the plaintiff (*Viking River*, *supra*, 596 U.S. at p. –––– [142 S.Ct. at p. 1916]; see §§ 2698, 2699, subd. (a)) maintains statutory standing to pursue "PAGA claims arising out of events involving other employees" (*Viking River*, at p. –––– [142 S.Ct. at p. 1916]) in court. We hold that the answer is yes. To have PAGA standing, a plaintiff must be an "aggrieved employee" — that is, (1) "someone 'who was employed by the alleged violator' " and (2) " 'against whom one or more of the alleged violations was committed.' " (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 83, 84, 259 Cal.Rptr.3d 769, 459 P.3d 1123 (*Kim*), quoting § 2699, subd. (c).) Where a plaintiff has brought a PAGA action comprising individual and non-individual claims, an order compelling arbitration of the individual claims does not strip the plaintiff of standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA.

**I.**

**\*2** Plaintiff Erik Adolph worked as a driver for defendant Uber Technologies, Inc. (Uber), delivering food to customers

through the company's Uber Eats platform. As a condition of his employment, Adolph was required to accept the technology services agreement, and because he did not timely opt out, he became bound by the arbitration provision in that agreement. The arbitration provision requires Adolph to arbitrate, on an individual basis only, almost all work-related claims he might have against Uber.

With regard to PAGA actions, the agreement says: "To the extent permitted by law, you and Company agree not to bring a representative action on behalf of others under the [PAGA] in any court or in arbitration. This waiver shall be referred to as the 'PAGA Waiver.' " The agreement also includes a severability clause: "If the PAGA Waiver is found to be unenforceable or unlawful for any reason, (1) the unenforceable provision shall be severed from this Arbitration Provision; (2) severance of the unenforceable provision shall have no impact whatsoever on the Arbitration Provision or the Parties' attempts to arbitrate any remaining claims on an individual basis pursuant to the Arbitration Provision; and (3) any representative actions brought under the PAGA must be litigated in a civil court of competent jurisdiction ...."

In October 2019, Adolph sued Uber in superior court, alleging individual and class claims for relief under Labor Code section 2802 and the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.). Adolph claimed that Uber misclassified him and other delivery drivers as independent contractors rather than as employees and, as a result, wrongfully failed to reimburse them for necessary business expenses. In February 2020, Adolph amended his complaint to add a claim for civil penalties under PAGA based on the same theory of misclassification. In July 2020, the trial court granted a motion by Uber to compel arbitration of Adolph's individual Labor Code claims and dismissed Adolph's class action claims.

Subsequently, with the trial court's permission, Adolph filed his operative second amended complaint, which eliminated his individual Labor Code claims and class claims and retained only his PAGA claim for civil penalties. The trial court granted Adolph's request for a preliminary injunction, preventing arbitration from proceeding. Uber filed a second motion to compel arbitration of Adolph's independent contractor status and the enforceability of the arbitration agreement. The trial court denied the motion. Uber filed separate appeals of the injunction and the denial of the second motion to compel arbitration.

The two appeals were consolidated, and the Court of Appeal affirmed. (*Adolph v. Uber Technologies, Inc.* (Apr. 11, 2022, G059860, G060198), 2022 WL 1073583 [nonpub. opn.] (*Adolph*).) Citing *Iskanian*, the Court of Appeal held that the trial court properly found that PAGA claims are not subject to arbitration, that an agreement waiving the right to bring a claim on behalf of other employees under PAGA violates public policy and is unenforceable, and that "California case law is clear that the threshold issue of whether a plaintiff is an aggrieved employee in a PAGA case is not subject to arbitration." (*Adolph*, supra, G059860, G060198.)

In May 2022, Uber filed a petition for review. Before Adolph could file an answer, the United States Supreme Court decided *Viking River*, which abrogated in part our decision in *Iskanian*, as discussed further below. (*Viking River*, supra, 596 U.S. at pp. –––– – –––– [142 S.Ct. at pp. 1923–1925].) *Viking River* also considered the standing question at issue in this case. (*Id.* at p. –––– [142 S.Ct. at p. 1925].) We granted review to provide guidance on statutory standing under PAGA.

## II.

**\*3** The Legislature enacted PAGA almost two decades ago in response to widespread violations of the Labor Code and significant underenforcement of those laws. (See *Arias v. Superior Ct.* (2009) 46 Cal.4th 969, 980, 95 Cal.Rptr.3d 588, 209 P.3d 923 (*Arias*); Assem. Com. on Labor & Employment, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended July 2, 2003, p. 3 (Assembly Labor Committee Analysis).) Before PAGA's enactment, tools for enforcing the Labor Code were limited. Some statutes allowed employees to sue their employers for damages resulting from Labor Code violations such as unpaid wages. (*Kim*, supra, 9 Cal.5th at p. 80, 259 Cal.Rptr.3d 769, 459 P.3d 1123; *Iskanian*, supra, 59 Cal.4th at p. 381, 173 Cal.Rptr.3d 289, 327 P.3d 129.) Other Labor Code violations were punishable only as criminal misdemeanors, which local prosecutors tended not to prioritize. (*Iskanian*, at p. 379, 173 Cal.Rptr.3d 289, 327 P.3d 129.) Additionally, several statutes provided civil penalties for Labor Code violations, but only state labor law enforcement agencies could bring an action for civil penalties and those agencies lacked sufficient enforcement resources. (*Ibid.*; Assembly Labor Committee Analysis, at pp. 3–4.)

To address these shortcomings, the Legislature enacted PAGA to create new civil penalties for various Labor Code violations

and " 'to allow aggrieved employees, acting as private attorneys general, to recover [those] penalties.' " (*Iskanian*, *supra*, 59 Cal.4th at p. 379, 173 Cal.Rptr.3d 289, 327 P.3d 129.) An employee who brings a PAGA action to recover civil penalties acts " 'as the proxy or agent' " of the state. (*Iskanian*, at p. 380, 173 Cal.Rptr.3d 289, 327 P.3d 129; see § 2699, subd. (a).) "PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim*, *supra*, 9 Cal.5th at p. 81, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) Penalties recovered are dedicated largely "to public use ... instead of being awarded entirely to a private plaintiff." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended May 12, 2003, p. 5 (Assembly Judiciary Committee Analysis); see § 2699, subd. (i) [75% of civil penalties go to the LWDA, 25% go to aggrieved employees].)

To have standing to bring a PAGA action, a plaintiff must be an "aggrieved employee," which the statute defines as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (§ 2699, subd. (c).) An aggrieved employee becomes deputized to prosecute Labor Code violations once he or she has complied with PAGA's notice requirements. (§ 2699.3, subd. (a).) Before filing suit, the aggrieved employee "must notify the employer and the [LWDA] of the specific labor violations alleged, along with the facts and theories supporting the claim." (*Kim*, *supra*, 9 Cal.5th at p. 81, 259 Cal.Rptr.3d 769, 459 P.3d 1123, citing § 2699.3, subd. (a)(1)(A).) "If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue." (*Kim*, at p. 81, 259 Cal.Rptr.3d 769, 459 P.3d 1123, citing § 2699.3, subd. (a)(2).) "The notice requirement allows the relevant state agency 'to decide whether to allocate scarce resources to an investigation' " (*Kim*, at p. 81, 259 Cal.Rptr.3d 769, 459 P.3d 1123) or instead to deputize the aggrieved employee to pursue sanctions on the state's behalf. Once deputized, the aggrieved employee has authority to "seek any civil penalties the state can." (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185, 252 Cal.Rptr.3d 228, 448 P.3d 239 (*ZB*).)

A PAGA claim for civil penalties " ' "is fundamentally a law enforcement action." ' " (*ZB*, *supra*, 8 Cal.5th at p. 185, 252 Cal.Rptr.3d 228, 448 P.3d 239.) "The 'government entity on whose behalf the plaintiff files suit is ... the real party in interest.' " (*Kim*, *supra*, 9 Cal.5th at p. 81, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) PAGA's default civil penalties are thus calculated " 'to punish the employer' for wrongdoing" (*ZB*, at p. 185, 252 Cal.Rptr.3d 228, 448 P.3d 239) and " 'to deter violations' " (*Iskanian*, *supra*, 59 Cal.4th at p. 379, 173 Cal.Rptr.3d 289, 327 P.3d 129) rather than "compensate employees for actual losses incurred" (*ZB*, at p. 186, 252 Cal.Rptr.3d 228, 448 P.3d 239). PAGA claims are subject to a one-year statute of limitations. (Code Civ. Proc., § 340, subd. (a).) The LWDA must be provided with prior notice of any proposed settlement, and any final settlement requires approval by the trial court. (§ 2699, subd. (*l*)(2).) "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." (*Arias*, *supra*, 46 Cal.4th at p. 986, 95 Cal.Rptr.3d 588, 209 P.3d 923.)

**\*4** In *Iskanian*, we held that a predispute categorical waiver of the right to bring a PAGA action is unenforceable (*Iskanian*, *supra*, 59 Cal.4th at pp. 382–383, 173 Cal.Rptr.3d 289, 327 P.3d 129) — a rule that *Viking River* left undisturbed (see *Viking River*, *supra*, 596 U.S. at pp. —— – ——, —— – —— [142 S.Ct. at pp. 1922–1923, 1924–1925] [the FAA does not preempt this rule]). We explained that such waivers violate California public policy and Civil Code sections 1668 and 3513. (*Iskanian*, at pp. 383–384, 173 Cal.Rptr.3d 289, 327 P.3d 129, quoting Civ. Code, § 1668 [prohibiting contractual waivers, whether "direct[ ] or indirect[ ]," that "exempt any one from responsibility for his own ... violation of law"] and Civ. Code, § 3513 ["a law established for a public reason cannot be contravened by a private agreement"].)

In addition, *Iskanian* held unenforceable an agreement that, while providing for arbitration of alleged Labor Code violations sustained by the plaintiff employee (what *Viking River* called individual claims), compels waiver of claims on behalf of other employees (i.e., non-individual claims). (*Iskanian*, *supra*, 59 Cal.4th at p. 384, 173 Cal.Rptr.3d 289, 327 P.3d 129; see *Viking River*, *supra*, 596 U.S. at p. —— [142 S.Ct. at p. 1916].) We explained that "whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* [i.e., non-individual] claims frustrates the PAGA's objectives." (*Iskanian*, at p. 384, 173 Cal.Rptr.3d 289, 327 P.3d 129; see *ibid.* ["[W]here ... an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law."].) *Viking River* also left this rule intact. (*Viking River*, at p. —— [142 S.Ct. at p. 1925] ["Under our holding in this case [requiring enforcement of agreements to arbitrate individual claims,

Moriana's non-individual] claims may not be dismissed simply because they are 'representative.' *Iskanian*'s rule remains valid to that extent."]; see *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 306 Cal.Rptr.3d 835 (*Nickson*) [*Viking River* did not disturb *Iskanian*'s rule that an arbitration agreement purporting to waive an employee's non-individual claims is unenforceable as a matter of state law]; *Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1139, 306 Cal.Rptr.3d 641 (*Seifu*) [same]; *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1288, 305 Cal.Rptr.3d 405 (*Piplack*) [same]; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 797, 306 Cal.Rptr.3d 332 (*Gregg*) [same]; *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035, 1062–1064, 300 Cal.Rptr.3d 833 [same].)

Following our decision in *Iskanian*, various courts held that employers may not require employees to "split" PAGA actions in a manner that puts individual and non-individual components of a PAGA claim into bifurcated proceedings. (See, e.g., *Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 420–421, 207 Cal.Rptr.3d 605; *Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649, 188 Cal.Rptr.3d 83.) *Viking River* held that "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River*, *supra*, 596 U.S. at p. —— [142 S.Ct. at p. 1924].) "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742.) The high court explained that an anti-splitting rule "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.' " (*Viking River*, at p. —— [142 S.Ct. at p. 1923].) Requiring parties to adjudicate a PAGA action entirely in one proceeding, the high court said, "compels parties to either go along with an arbitration in which the range of issues under consideration is determined by coercion rather than consent, or else forgo arbitration altogether. Either way, the parties are coerced into giving up a right they enjoy under the FAA." (*Viking River*, at p. —— [142 S.Ct. at p. 1924].) Thus, *Viking River* requires enforcement of agreements to arbitrate a PAGA plaintiff's individual claims if the agreement is covered by the FAA.

### III.

**\*5** Against this backdrop, we consider whether an aggrieved employee who has been compelled to arbitrate individual claims "premised on Labor Code violations actually sustained by" the plaintiff (*Viking River*, *supra*, 596 U.S. at p. —— [142 S.Ct. at p. 1916]; see Lab. Code, § 2699, subd. (a)) maintains statutory standing to pursue non-individual "PAGA claims arising out of events involving other employees" (*Viking River*, at p. —— [142 S.Ct. at p. 1916]) in court.

The high court concluded that a PAGA plaintiff loses standing in this situation: "[A]s we see it, PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding. Under PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. See Cal. Lab. Code Ann. §§ 2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit. See *Kim*, 9 Cal.5th at 90, 259 Cal.Rptr.3d 769, 459 P.3d 1123 ('PAGA's standing requirement was meant to be a departure from the "general public" ... standing originally allowed' under other California statutes). As a result, Moriana lacks statutory standing to continue to maintain her non-individual claims in court, and the correct course is to dismiss her remaining claims." (*Viking River*, *supra*, 596 U.S. at p. —— [142 S.Ct. at p. 1925].)

Because "[t]he highest court of each State ... remains 'the final arbiter of what is state law' " (*Montana v. Wyoming* (2011) 563 U.S. 368, 378, fn. 5, 131 S.Ct. 1765, 179 L.Ed.2d 799), we are not bound by the high court's interpretation of California law. (See *Viking River*, *supra*, 596 U.S. at pp. —— – —— [142 S.Ct. at p. 1925] (conc. opn. of Sotomayor, J.) ["Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word."].) And although the high court's interpretations may serve as persuasive authority in cases involving a parallel federal constitutional provision or statutory scheme (cf., e.g., *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 353, 276 Cal.Rptr. 326, 801 P.2d 1077; *People v. Teresinski* (1982) 30 Cal.3d 822, 835–836, 180 Cal.Rptr. 617, 640 P.2d 753), *Viking River* does not interpret any federal provision or statute similar to PAGA.

Where, as here, a cause of action is based on a state statute, standing is a matter of statutory interpretation. (*Kim*, *supra*, 9 Cal.5th at p. 83, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) "We review questions of statutory construction de novo." (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041, 232 Cal.Rptr.3d 64, 416 P.3d 53.)

### A.

"In construing a statute, our task is to ascertain the intent of the Legislature so as to effectuate the purpose of the enactment." (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487, 30 Cal.Rptr.3d 823, 115 P.3d 98.) We look first to "the words of the statute, which are the most reliable indications of the Legislature's intent." (*Ibid.*) As noted, section 2699, subdivision (c) defines "aggrieved employee," and we have explained that "[t]he plain language of section 2699(c) has only two requirements for PAGA standing." (*Kim*, *supra*, 9 Cal.5th at p. 83, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) The plaintiff must allege that he or she is (1) "someone 'who was employed by the alleged violator' " and (2) someone " 'against whom one or more of the alleged violations was committed.' " (*Id.* at pp. 83–84, 259 Cal.Rptr.3d 769, 459 P.3d 1123, quoting § 2699, subd. (c).)

**\*6** In *Kim*, we declined to impose additional requirements not found in the statute. (*Kim*, *supra*, 9 Cal.5th at pp. 84–91, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) The plaintiff, Kim, sued his employer, alleging individual claims for damages and a PAGA claim for civil penalties. (*Kim*, at p. 82, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) Kim settled and dismissed the individual claims for damages, proceeding only with the PAGA claim. (*Kim*, at p. 82, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) The employer conceded that Kim had PAGA standing when he filed suit but argued that Kim's "standing somehow ended" once his individual claims settled. (*Kim*, at p. 84, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) According to the employer, PAGA standing is premised on an unredressed injury, and because Kim received compensation for his injury, he no longer had the status of an "aggrieved employee." (*Kim*, at p. 84, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)

We rejected this argument, finding it inconsistent with the statutory language in several respects. (*Kim*, *supra*, 9 Cal.5th at pp. 83–86, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) First, "[t]he Legislature defined PAGA standing in terms of violations .... Kim became an aggrieved employee, and had PAGA standing, when one or more Labor Code violations were committed against him," and "[s]ettlement did not nullify these violations. The *remedy* for a Labor Code violation, through settlement or other means, is distinct from the *fact* of the violation itself," and only the latter is required for PAGA standing. (*Kim*, at p. 84, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) Second, nothing in the text of the statute requires the plaintiff to have an unredressed injury; reading such a requirement into the statute would be "at odds with the statutory definition." (*Id.* at p. 85, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) Third, allowing post-violation events to strip an aggrieved employee of the ability to pursue a PAGA claim "would add an expiration element to the statutory definition of standing." (*Kim*, at p. 85, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) Although Uber says *Kim* is distinguishable because the plaintiff had settled only individual claims for damages and not any claim for civil penalties under PAGA, this circumstance played no role in *Kim*'s reasoning. *Kim* made clear that only the fact of a violation is required to confer standing.

The Court of Appeal in *Johnson v. Maxim Healthcare Services, Inc.* (2021) 66 Cal.App.5th 924, 281 Cal.Rptr.3d 478 (*Johnson*) similarly declined to read into the statute a standing requirement not supported by its language. There, a company required its workers to sign unlawful noncompete agreements. (*Id.* at p. 927, 281 Cal.Rptr.3d 478.) The Labor Code violations sustained by the plaintiff were time-barred, and the employer argued that the plaintiff therefore did not have PAGA standing. (*Johnson*, at p. 929, 281 Cal.Rptr.3d 478.) Relying on *Kim*, the court rejected this argument and held that the plaintiff had standing to pursue her PAGA claim because she satisfied the statutory definition of an " 'aggrieved employee.' " (*Johnson*, at p. 930, 281 Cal.Rptr.3d 478.) The fact that the plaintiff's "individual claim may be time-barred does not nullify the alleged Labor Code violations nor strip [the plaintiff] of her standing to pursue PAGA remedies." (*Johnson*, at p. 930, 281 Cal.Rptr.3d 478.)

As *Kim* and *Johnson* make clear, a worker becomes an "aggrieved employee" with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by his or her employer. (See *Kim*, *supra*, 9 Cal.5th at pp. 84–85, 259 Cal.Rptr.3d 769, 459 P.3d 1123; *Johnson*, *supra*, 66 Cal.App.5th at p. 930, 281 Cal.Rptr.3d 478; § 2699, subd. (c).) Standing under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum. Arbitrating a PAGA plaintiff's individual claim does not nullify the fact of

the violation or extinguish the plaintiff's status as an aggrieved employee, any more than the time-barring of remedies did in *Johnson* or the settlement of the individual damages claims did in *Kim*. (See *Kim*, at pp. 84–85, 259 Cal.Rptr.3d 769, 459 P.3d 1123; *Johnson*, at p. 930, 281 Cal.Rptr.3d 478.) The operative complaint alleges that Adolph experienced Labor Code violations while driving for Uber. Under *Kim*, Adolph's allegations that Labor Code violations were committed against him while he was employed by Uber suffice to confer standing to bring a PAGA action.

### B.

**\*7** Five recent Court of Appeal opinions have reached the same conclusion. (*Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 653, 305 Cal.Rptr.3d 15 (*Galarsa*) ["[A] plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an arbitration agreement."]; *Seifu*, *supra*, 89 Cal.App.5th at p. 1134, 306 Cal.Rptr.3d 641 ["[A] plaintiff is not stripped of standing to pursue nonindividual PAGA claims simply because his or her individual PAGA claim is compelled to arbitration."]; *Piplack*, *supra*, 88 Cal.App.5th at p. 1291, 305 Cal.Rptr.3d 405 ["[P]aring away the plaintiff's individual claims does not deprive the plaintiff of standing to pursue representative claims under PAGA ...."]; *Gregg*, *supra*, 89 Cal.App.5th at p. 792, 306 Cal.Rptr.3d 332 ["[U]nder California law, Gregg is not stripped of standing to pursue his nonindividual claims in court simply because his individual claim must be arbitrated."]; *Nickson*, *supra*, 90 Cal.App.5th at pp. 134–135, 306 Cal.Rptr.3d 835 ["Nickson has standing to litigate nonindividual PAGA claims in the superior court notwithstanding his agreement to arbitrate individual PAGA claims."].) This unanimity is unsurprising because our reading of PAGA's standing requirements not only follows from the statute's text but also aligns with its purpose and legislative history.

"The Legislature's sole purpose in enacting PAGA was 'to augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the Agency.' " (*Kim*, *supra*, 9 Cal.5th at p. 86, 259 Cal.Rptr.3d 769, 459 P.3d 1123, quoting *Iskanian*, *supra*, 59 Cal.4th at p. 383, 173 Cal.Rptr.3d 289, 327 P.3d 129.) To this end, "the Legislature conferred fairly broad standing on all plaintiffs who were employed by the violator and subjected to at least one alleged violation." (*Kim*, at p. 91, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) A narrower construction of PAGA standing would "thwart the Legislature's clear intent to deputize employees to pursue sanctions on the state's behalf." (*Kim*, at p. 91, 259 Cal.Rptr.3d 769, 459 P.3d 1123; see *Williams v. Superior Court* (2017) 3 Cal.5th 531, 548, 220 Cal.Rptr.3d 472, 398 P.3d 69 ["Hurdles that impede the effective prosecution of representative PAGA actions undermine the Legislature's objectives."]; *Galarsa*, *supra*, 88 Cal.App.5th at p. 653, 305 Cal.Rptr.3d 15 ["Revoking an employee's standing as to [non-individual] claims would 'severely curtail[ ] PAGA's availability to police Labor Code violations.' [(*Kim*, at p. 91, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)]"]; see also *Kim*, at p. 83, 259 Cal.Rptr.3d 769, 459 P.3d 1123 ["Considering the remedial nature of legislation meant to protect employees, we construe PAGA's provisions broadly, in favor of this protection."].)

The centerpiece of PAGA's enforcement scheme is the ability of a plaintiff employee to prosecute numerous Labor Code violations committed by an employer and to seek civil penalties corresponding to those violations. (*Iskanian*, *supra*, 59 Cal.4th at p. 384, 173 Cal.Rptr.3d 289, 327 P.3d 129; Assembly Judiciary Committee Analysis, *supra*, at p. 4.) The Legislature enacted PAGA on the premise that Labor Code violations sustained by the plaintiff employee are often only a fraction of the violations committed by an employer that is engaged in unlawful workplace practices. (*Iskanian*, at p. 384, 173 Cal.Rptr.3d 289, 327 P.3d 129.) As we explained in *Kim*, "PAGA standing is not inextricably linked to the plaintiff's own injury. Employees who were subjected to at least one unlawful practice have standing to serve as PAGA representatives even if they did not personally experience each and every alleged violation. (§ 2699(c).) This expansive approach to standing serves the state's interest in vigorous enforcement." (*Kim*, *supra*, 9 Cal.5th at p. 85, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) An interpretation of the statute that impedes an employee's ability to prosecute his or her employer's violations committed against other employees would undermine PAGA's purpose of augmenting enforcement of the Labor Code. (*Kim*, at p. 86, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)

In enacting PAGA, the Legislature also expressed an intent to remedy the LWDA's long-standing funding deficiencies. (See, e.g., Assembly Judiciary Committee Analysis, *supra*, at p. 4 [" 'SB 796 helps generate revenues to the state at a time when we need them.' "].) Seventy-five percent of civil penalties recovered in PAGA actions are statutorily allocated to the state to help fund the LWDA in carrying out its regulatory responsibilities related to covered employers,

without passing those costs on to taxpayers or diverting funds from other priorities. (§ 2699, subd. (i).) Narrowing PAGA standing in the manner Uber urges would likely reduce state revenues and increase state costs of enforcement.

**\*8** In sum, where a plaintiff has filed a PAGA action comprised of individual and non-individual claims, an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court. This "is the interpretation of PAGA that best effectuates the statute's purpose, which is 'to ensure effective code enforcement.' " (*Galarsa*, *supra*, 88 Cal.App.5th at p. 654, 305 Cal.Rptr.3d 15, quoting *Kim*, *supra*, 9 Cal.5th at p. 87, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)

### IV.

Uber makes several arguments in urging that a PAGA plaintiff loses standing to litigate non-individual claims in court when the plaintiff's individual claims are subject to arbitration. None is persuasive.

### A.

First, Uber contends that unless Adolph's non-individual claims are dismissed, his PAGA action will run afoul of *Viking River* because he will be permitted to relitigate whether he is an aggrieved employee in court to establish standing even if he has agreed to resolve that issue in arbitration as part of his individual PAGA claim.

In response, Adolph explains that his PAGA action could proceed in the following manner if he were ordered to arbitrate his individual PAGA claim: First, the trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure. Following the arbitrator's decision, any party may petition the court to confirm or vacate the arbitration award under section 1285 of the Code of Civil Procedure. If the arbitrator determines that Adolph is an aggrieved employee in the process of adjudicating his individual PAGA claim, that determination, if confirmed and reduced to a final judgment (Code Civ. Proc., § 1287.4), would be binding on the court, and Adolph would continue to have standing to litigate his nonindividual claims. If the arbitrator determines that Adolph is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and Adolph could no longer prosecute his non-individual claims due to lack of standing. (See *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 76–82, 304 Cal.Rptr.3d 587.)

Uber makes no convincing argument why this manner of proceeding would be impractical or would require relitigating Adolph's status as an aggrieved employee in the context of his non-individual claims, and we see no basis for Uber's concern. In any event, *Viking River* makes clear that in cases where the FAA applies, no such relitigation may occur. (*Viking River*, *supra*, 596 U.S. at pp. —— – —— [142 S.Ct. at pp. 1923–1925].)

### B.

Next, Uber contends that bifurcating individual and nonindividual components of a PAGA claim into arbitration and court proceedings has the effect of severing the two components into separate and distinct actions, and each of the resulting two actions must independently satisfy PAGA's standing requirements. Because the plaintiff's standalone action for nonindividual claims no longer seeks penalties for Labor Code violations sustained by the plaintiff, Uber says, the plaintiff cannot satisfy PAGA's standing requirements.

In urging this view, Uber relies on cases interpreting a long-superseded statute, the pre-1971 version of section 1048 of the Code of Civil Procedure, which provided that "[a]n action may be severed ... in the discretion of the court, whenever it can be done without prejudice to a substantial right." Uber does not explain why pursuing some remedies in arbitration and others in court requires the PAGA action to be treated like an action severed under that statute. Moreover, because former section 1048 does not authorize severance that would result in "prejudice to a substantial right," it is doubtful the statute would apply here.

**\*9** Nothing in PAGA or any other relevant statute suggests that arbitrating individual claims effects a severance. When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action. Code of Civil Procedure section 1281.4 states that upon "order[ing] arbitration of a controversy which is an issue involved in an action," the court should "stay the action." It further provides that "[i]f the issue which is the controversy subject to arbitration is severable, the stay

may be with respect to that issue only." Section 1281.4 does not contemplate that the compelled arbitration of an issue in controversy in the action is a separate action. The statute makes clear that the cause remains one action, parts of which may be stayed pending completion of the arbitration. (See *Cuevas v. Truline Corp.* (2004) 118 Cal.App.4th 56, 61, 12 Cal.Rptr.3d 706 [citing Code Civ. Proc., § 1281.4 in holding that plaintiffs did not "split a cause of action into multiple lawsuits" by "fil[ing] one complaint in which they sued everyone they believed responsible for the traffic accident" and then "arbitrat[ing] their claims against some, but not all, of the defendants"].)

Indeed, it is a regular and accepted feature of litigation governed by the FAA that the arbitration of some issues does not sever those issues from the remainder of the lawsuit. The high court has long recognized that the FAA "*requires* piecemeal resolution [of related disputes in different forums] when necessary to give effect to an arbitration agreement." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765.) In *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158, the high court held that the FAA requires arbitrable claims to be compelled to arbitration "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Viking River* reiterated that parties may opt for arbitration procedures that depart from standard liberal rules of claim joinder, "[a]nd that is true even if bifurcated proceedings are an inevitable result." (*Viking River*, supra, 596 U.S. at p. —— [142 S.Ct. at p. 1923] [citing *Dean Witter* and *Moses H. Cone Hospital*].) When an action includes arbitrable and nonarbitrable components, the resulting bifurcated proceedings are not severed from one another; rather, the court may "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (9 U.S.C. § 3; see Code Civ. Proc., § 1281.4.) In *McGill v Citibank, N.A.* (2017) 2 Cal.5th 945, 966, 216 Cal.Rptr.3d 627, 393 P.3d 85, we explained that this principle extends to "piecemeal litigation of 'arbitrable and inarbitrable remedies derived from the same statutory claim.' "

Further, Uber's interpretation runs counter to the statutory scheme. (*Kim*, supra, 9 Cal.5th at p. 87, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) PAGA was designed to authorize aggrieved employees to pursue enforcement actions on behalf of themselves and their current and former coworkers. (§ 2699, subd. (a).) Under Uber's reading, any time an aggrieved employee has signed a predispute agreement to arbitrate individual claims, he or she would no longer be able to bring suit "on behalf of himself or herself *and* other current or former employees." (*Ibid.*, italics added.) Not only is this interpretation at odds with the language and purpose of the statute, but it would also seriously impair the state's ability to collect and distribute civil penalties under the provisions of the statute. (See § 2699, subds. (i), (f)(2) [employers are penalized per violation for each aggrieved employee, and most of the penalties go to the state].) As noted, *Viking River* left intact *Iskanian*'s rule against agreements that compel waiver of non-individual claims. (*Viking River*, at p. —— [142 S.Ct. at p. 1925]; see *Iskanian*, supra, 59 Cal.4th at p. 384, 173 Cal.Rptr.3d 289, 327 P.3d 129.)

### C.

Uber also argues that PAGA contains a third standing requirement — the action must "be ... brought by an aggrieved employee on behalf of himself or herself and other current or former employees" (§ 2699, subd. (a)) — and that Adolph cannot satisfy this requirement with respect to non-individual claims upon being compelled to arbitrate individual claims.

**\*10** But even if we were to agree with Uber's reading of the statute, Adolph would have standing. Adolph filed a PAGA complaint seeking recovery "on behalf of himself ... and other current or former employees." (§ 2699, subd. (a).) "Even though *Viking* [*River*] requires the trial court to bifurcate and order individual PAGA claims to arbitration when an appropriate arbitration agreement exists, the individual PAGA claims in arbitration remain part of the same lawsuit as the representative claims remaining in court. Thus, plaintiffs are pursuing a single PAGA action 'on behalf of [themselves] and other current or former employees,' albeit across two fora." (*Piplack*, supra, 88 Cal.App.5th at p. 1292, 305 Cal.Rptr.3d 405.)

### D.

Next, Uber contends that a PAGA plaintiff must have a "financial stake in the outcome of the case" and that if an arbitrator grants an award to the plaintiff based on his or her personally sustained violations, the plaintiff loses standing to litigate non-individual claims because he or she has no financial stake in those claims.

For purposes of standing, however, the statute does not require a PAGA plaintiff who has alleged one or more personally sustained violations to seek civil penalties for those violations in the same forum as the litigation of non-individual claims. As the Attorney General observes in his amicus curiae brief, "it is not the promise of economic recovery — in court or elsewhere — that gives an aggrieved employee standing to pursue PAGA claims based on violations committed against other workers." We agree with Adolph that "it is plaintiff's status as an aggrieved employee, not the redressability of any injury the plaintiff may have suffered, that determines the availability of PAGA standing." The Legislature clearly delineated PAGA's standing requirements, and " ' " '[w]here the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " ' " (*Kim*, *supra*, 9 Cal.5th at p. 85, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)

We also note that a PAGA plaintiff compelled to arbitrate individual claims may have a personal stake in the litigation of non-individual claims. For instance, PAGA has a provision for recovery of attorney's fees and costs. (§ 2699, subd. (g)(1).) This provision may help plaintiffs secure representation by enticing attorneys to take cases they might not have if limited to recovering fees and costs for individual claims alone.

### E.

Uber further argues that a PAGA plaintiff, upon arbitrating personally sustained Labor Code violations, stands in no different position than a member of the general public with regard to non-individual claims. "General public" standing once existed under the UCL and allowed individuals with no ties to the unlawful conduct to bring suit. (*Kim*, *supra*, 9 Cal.5th at p. 90, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) In order to curb abusive litigation, the Legislature designed PAGA standing to be narrower than general public standing. (*Kim*, at p. 90, 259 Cal.Rptr.3d 769, 459 P.3d 1123.) An "aggrieved employee" under PAGA is not merely a member of the general public; an "aggrieved employee" is an individual who worked for the alleged violator and personally sustained at least one Labor Code violation. (§ 2699, subd. (c); see *Kim*, at p. 90, 259 Cal.Rptr.3d 769, 459 P.3d 1123, quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 796 (2003–2004 Reg. Sess.) as amended Apr. 22, 2003, p. 7.) An employee who has met these requirements upon bringing a PAGA action does not lose standing to litigate non-individual claims by virtue of being compelled to arbitrate individual claims. This is true even if the employee obtains redress for individual claims in arbitration. (See *Kim*, at p. 84, 259 Cal.Rptr.3d 769, 459 P.3d 1123.)

### F.

**\*11** Uber also cites a number of authorities, but none supports its position. In *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1005, 95 Cal.Rptr.3d 605, 209 P.3d 937, we held that unions do not have standing under PAGA because they are "not employees" and therefore "cannot satisfy the express standing requirements of [PAGA]." Our rejection of associational standing under PAGA has no bearing on the question here. In *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 267 Cal.Rptr.3d 633, the court held that a plaintiff did not have standing when he brought a PAGA action "based on violations alleged to have occurred after ... [he] was no longer employed by [the defendant]." (*Id.* at p. 484, 267 Cal.Rptr.3d 633.) There, the plaintiff "was not affected by any of the alleged violations" at issue in the case. (*Ibid.*) In this case, the operative complaint alleges that Adolph was employed by Uber and personally sustained one or more Labor Code violations committed by Uber during the time period applicable to his PAGA action.

Uber also relies on *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 46 Cal.Rptr.3d 57, 138 P.3d 207, where we said that "[f]or a lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed." (*Id.* at pp. 232–233, 46 Cal.Rptr.3d 57, 138 P.3d 207.) Our holding today is consistent with *Mervyn's*. As we explained in *Kim*, the question of standing is governed by the terms of PAGA. Because a single action may still be maintained when issues comprising the action have been bifurcated into judicial and arbitral forums, the relevant statutory standing requirements are met "on the date the complaint is filed" and thereafter, regardless of whether an aggrieved employee's individual claims have been sent to arbitration. (*Mervyn's*, at p. 233, 46 Cal.Rptr.3d 57, 138 P.3d 207.)

### G.

Finally, Uber and amicus curiae United States Chamber of Commerce suggest that a PAGA plaintiff subject to an arbitration agreement breaches that agreement by filing suit in court. But if a defendant believes arbitration is required, it is "[t]he party seeking arbitration [that] bears the burden of proving the existence of an arbitration agreement" in court. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236, 145 Cal.Rptr.3d 514, 282 P.3d 1217.) And even where a plaintiff concedes the applicability of an arbitration agreement, the plaintiff does not breach the agreement by alleging in a complaint that one or more violations were committed against the plaintiff for the purpose of meeting PAGA's standing requirements.

Several amici curiae have also argued that we should narrow the statute's standing requirements in order to curb alleged abuses of PAGA. These arguments are best directed to the Legislature, which may amend the statute to limit PAGA enforcement if it chooses. Our task is to give effect to the statute as we find it. Under the statute, a plaintiff who files a PAGA action with individual and non-individual claims does not lose standing to litigate the non-individual claims in court simply because the individual claims have been ordered to arbitration.

## CONCLUSION

We reverse the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion. We limited our review to the question of PAGA standing and express no view on the parties' arguments regarding the proper interpretation of the arbitration agreement.

We Concur:

GUERRERO, C. J.

CORRIGAN, J.

KRUGER, J.

GROBAN, J.

JENKINS, J.

EVANS, J.

**All Citations**

--- P.3d ----, 2023 WL 4553702

---

End of Document © 2023 Thomson Reuters. No claim to original U.S. Government Works.